**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

|  |  |
|---|---|
| ResMan, LLC, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIVIL ACTION NO. |
| ) | |
| Karya Property Management, LLC, and Scarlet ) | **JURY TRIAL** |
| InfoTech, Inc. d/b/a Expedien, Inc., ) | |
| ) | |
| Defendants. ) | |
| ) | |
| ) | |

## PLAINTIFF'S FIRST AMENDED COMPLAINT

1.      Plaintiff ResMan, LLC ("ResMan"), a property management software company, brings this action for breach of contract, tortious interference with contract, violations of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030(a) ("CFAA"), violations of the Defend Trade Secrets Act, 18 U.S.C. § 1839 ("DTSA"), violations of the Texas Uniform Trade Secrets Act, Tex. Civ. Prac. & Rem. Code § 134A.001 ("TUTSA"), and for a declaratory judgment to address the egregious conduct of its customer, Karya Property Management, LLC ("Karya"), and its third party software consultant, Scarlet InfoTech, Inc. d/b/a Expedien, Inc. ("Expedien").

2.      Karya, in breach of numerous express contractual obligations to ResMan, provided Expedien with extensive unauthorized access to ResMan's proprietary and trade secret software platform (as defined in Paragraphs 19-25 below, the "ResMan Platform") for the express purposes of usurping and unfairly building upon ResMan's investments in the ResMan Platform, and improperly copying the ResMan Platform, to create a directly competitive software product. Expedien actively encouraged these breaches, and itself willfully and intentionally committed many of these breaches on behalf of itself and Karya.  Further, Karya and Expedien have improperly disclosed ResMan User IDs and information to further individuals and entities in at

9436819v1

least the United States and India.  ResMan is entitled to, among other things, temporary and permanent injunctive relief, damages and recovery of its attorneys' fees.

3.      The ResMan Platform provides property managers, such as Karya, with a complex, expansive and unique suite of tools specially designed to help manage virtually every aspect of their property management business, including tenant intake, rent collection, accounting, unit maintenance, utility maintenance, budgeting and leasing.  It is comprised of several hundred distinct screens and allows property managers the ability to perform numerous tasks that are critical and helpful to their business in an efficient manner, including the ability to print hundreds of distinct reports.  The ResMan Platform was developed, improved and refined based upon millions of dollars of investments and years of experience working with property managers to determine optimal functionality and complex features.  It constitutes and contains trade secrets and is confidential and proprietary to ResMan.

4.      ResMan makes its Platform available to customers only pursuant to a Master Subscription Agreement ("MSA") that imposes strict use restrictions and confidentiality obligations.  The MSA expressly prohibits access to the ResMan Platform by third parties, and/or for the purposes of analyzing the platform or developing a competing software product.  Karya agreed to these provisions in numerous purchase orders that expressly incorporate the MSA.

5.      Unbeknownst to ResMan, Karya surreptitiously provided three non-transferable User IDs and passwords to the ResMan Platform to a third party software consultant, Expedien, more than a year ago so Expedien could fully analyze the ResMan Platform and develop a software product to replace and ultimately compete with ResMan in the market.  ResMan's recent investigation revealed that Expedien improperly accessed ResMan's Platform on at least *195 separate days,* from multiple locations in both Texas and India, over the past year.  Further, Expedien accessed and studied an inordinately large percentage (if not all) of the unique functionality, organizational structure and screens that make the ResMan Platform an industry leading product, including parts of the ResMan Platform not generally accessed by Karya.

9436819v1

6.     Karya has admitted to providing the User IDs to Expedien in order to create its own competitive software product.  Yet Karya has refused to cease development of its product despite the fact that it improperly and intentionally developed and derived this product based upon improper access to the ResMan Platform in clear violation of terms of the MSA.

## PARTIES

7.     Plaintiff ResMan, LLC is a property management software company organized under the laws of Utah with a principal place of business in 2901 Dallas Parkway, Suite 200, Plano, Texas 75093.  ResMan's primary product and service offering is the ResMan Platform.

8.     Defendant Karya Property Management, LLC is a privately held property management company whose portfolio includes properties in Texas and other states.  Upon information and belief, Karya manages properties in the Eastern District of Texas.  Karya is organized under the laws of Texas with a principal place of business at 8901 Gaylord Drive, Suite 100, Houston, Texas 77024.

9.     Defendant Scarlet Infotech, Inc. d/b/a Expedien, Inc. is a software and IT services corporation organized under the laws of Delaware with a principal place of business at 13710 Slate Creek Lane, Houston, Texas, 77077.  Expedien also reports business addresses on its website at 5100 Westheimer Road, Suite 200, Houston, Texas 77056, and at Le Meridien Commercial Tower, 6th Floor, Gate 4, Raisina Road, New Delhi, India 11001.

## JURISDICTION AND VENUE

10.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331, and original jurisdiction under the Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. § 1030.  This Court has supplemental jurisdiction over Plaintiff's state law claims because they arise out of the same transactions and occurrences and are within the same case or controversy pursuant to 28 U.S.C. § 1367.

11.     Defendants all have principal places of business in the State of Texas and otherwise have substantial contacts both with the State of Texas generally, and with events in Texas specific to Plaintiff's claims, sufficient for both general and specific personal jurisdiction.  Further, Section

- 3 -

9436819v1

10.2 of the ResMan/Karya MSA expressly provides that "[t]he Parties hereto consent to the jurisdiction of all federal and state courts in Texas."

12.     Venue lies in this District, and specifically in the Sherman Division in this District, pursuant to 28 U.S.C. § 1391 and the MSA.  Defendants are subject to personal jurisdiction in this District because Section 10.2 of the MSA expressly provides that "venue lies exclusively in Collin County, Texas."  Collin County is part of the Sherman Division and there is no specific federal judicial division for Collin County.  In addition, venue is proper because a substantial part of the events giving rise to Plaintiff's claims occurred in this District.

## FACTUAL BACKGROUND

### *The ResMan Platform And Terms Of The MSA*

13.     ResMan develops and delivers cloud-based property management software and services for multifamily property managers, owners and operators.  ResMan's state-of-the-art, industry leading Platform includes a suite of software with numerous tools to help its customers manage reporting, budgeting, leasing and rent collection, portfolio views, lead management, document storage and text messaging.  Users can also handle maintenance requests, accounting tasks, financial report writing and resident retention tracking.  The resident portal allows renters to check balances, pay rent and fees online, send maintenance requests and receive property alerts. The ResMan Platform is ResMan's primary product.

14.     The ResMan Platform contains several hundred distinct screens that can be navigated and manipulated by an end user to complete a virtually endless number of tasks.  It also allows a user to generate, review, and print hundreds of distinct reports.  The ResMan Platform has been developed, enhanced and refined over the course of nearly a decade at considerable time and expense.  It constitutes and contains trade secrets, is proprietary and confidential, and was developed based upon years of experience working with property managers to determine optimal functionality and complex features.  For example, since 2011, ResMan has spent more than $10 million on research and development alone, which does not include the resources spent in marketing the platform and promoting the ResMan brand.

9436819v1

15.     In order to access the ResMan Platform, ResMan's customers must execute a purchase order with ResMan, agree to the terms of ResMan's Master Subscription Agreement ("MSA") (a true and correct copy of which is attached hereto as Exhibit 1), and enter user-specific IDs and passwords to access the confidential system.   ResMan's customers are expressly prohibited from providing any third party with access to the ResMan Platform, from disclosing the contents of the ResMan Platform, or from analyzing or using the software system to create a competitive product, as described further below.

16.     Between July 20, 2017 and February 11, 2019, Karya entered into no less than fourteen separate purchase order forms with ResMan, which collectively cover 26 large multi-unit properties (6,226 total units) managed by Karya (true and correct copies are attached hereto as Exhibit 2).   The order forms and MSA allow Karya to use the ResMan Platform for the sole purposes of managing those specific properties.   ResMan has provided Karya with access to the ResMan Platform and related services and fully complied with its contractual obligations to Karya. Karya has never provided notice of breach or indicated that ResMan has failed to comply with its contractual obligations under the MSA.

17.     Each order form entered into between ResMan and Karya expressly incorporates the terms of ResMan's MSA.   Each order form states:   "By signing this order form, you agree to the terms of ResMan's Master Subscription Agreement (MSA), available online at the following link:   https://myresman.com/master-subscription-agreement/."   Ex. 2.

18.     The MSA provides that (i) it is governed by Texas law, (ii) the Parties consent to the jurisdiction of all federal and state courts in Texas, and (iii) the Parties agree that venue lies exclusively in Collin County, Texas.   MSA ¶ 10.2.

19.     The MSA establishes that ResMan maintains ownership of all aspects of its software Platform, including its Subscription Services, ResMan Technology, all Deliverables and the Intellectual Property Rights therein (collectively, the "ResMan Platform"):

> The Parties agree that ResMan owns all right, title, and interest and any and all Intellectual Property Rights in and to the Subscription Services and the ResMan

9436819v1

Technology.  Except as expressly provided in this Agreement, ResMan does not grant (and expressly reserves) any right, expressed or implied, or ownership in or to the Subscription Services and the ResMan Technology.  MSA ¶ 5.1.

20.     The MSA defines "Subscription Services" as "the ResMan® residential property management software application and any other software applications which are made available by ResMan as a software as a service (SaaS) offering via a customer log-in to a web access designated by ResMan."  MSA ¶ 1.14.

21.     The MSA defines "ResMan Technology" as:

(i) ***ResMan technology, methodologies***, and intellectual property (including, without limitation, ***products, software tools***, hardware designs, algorithms, software (in source and object code forms), ***architecture, objects and documentation (both printed and electronic***) existing as of the Effective Date or otherwise arising outside of this Agreement; (ii) all derivatives, improvements, enhancements or extensions of any of the foregoing, whether or not conceived, reduced to practice or developed during the term of this Agreement; and (iii) all Intellectual Property Rights relating to any of the foregoing.

MSA ¶ 1.12 (emphasis added).

22.     The MSA defines "Deliverables" as "any copyrightable works, products, discoveries, developments, designs, work-product, deliverables, improvements, inventions, processes, techniques and know-how made, conceived, reduced to practice or learned by ResMan that result from Professional Services, including in any Order Form and/or Statement of Work, and provided to Customer hereunder."  MSA ¶ 1.3.

23.     The MSA defines "Intellectual Property Rights" as "[a]ny and all intellectual property rights throughout the world, including, without limitation, any and all patents, copyrights, trademarks, applications for any of the foregoing, trade secret rights, moral rights, unregistered design rights, rights to know-how, inventions, and algorithms, and any and all similar or equivalent rights throughout the world.  MSA ¶ 1.5.

24.     Section 2.7 of the MSA also references Terms and Conditions (available only at https://myresman.com/terms-conditions) that govern the relationship between ResMan and Karya (a true and correct copy is attached as Exhibit 3).  The Terms and Conditions further establish the scope of the ResMan Platform owned by ResMan and provided to Karya:  "[a]ll Subscription

design, text, graphics, interfaces, and images (and the selection and arrangements thereof), and software, hypertext markup language, scripts, active server pages, and other content and software used in the Subscription are hereby reserved by [ResMan]."  Ex. 3 ¶ 9.

25. Finally, to the extent ResMan provides professional services, such as implementation, training, consulting, or customized reports, "ResMan retains all ownership rights to any and all Deliverables, excluding any pre-existing materials and Confidential Information supplied by [Karya] for incorporation into the deliverable."  MSA ¶ 2.8.

26. Under the MSA, ResMan granted Karya only a limited right to use various aspects of the ResMan Platform, for Karya's internal business purposes only:

> Subject to the terms and conditions of this Agreement and the applicable Order Form(s), ResMan hereby grants to [Karya] (and only for the specific Units located at the physical Property address or addresses specified in the Order Form(s)), *for its internal business purposes and for no other purposes*, a non-exclusive, non-transferable right during the Subscription Term to access and use the Subscription Service specified in the Order Form(s) for the number of Units specified in such Order Form(s).

MSA ¶ 3.1 (emphasis added).

27. The MSA provides numerous express restrictions in order to safeguard the confidential and proprietary nature of the ResMan Platform.  Section 3.5 of the MSA requires Karya to, among other things:

- "Protect[] the names and passwords of the Users of the Subscription Service";
- "Prevent[], and . . . promptly notify[] ResMan of, any unauthorized access to or use of the Subscription Service";
- Ensure "[e]ach User's compliance with the terms and conditions of this Agreement and the Order Form(s) and each User's acts and omissions";
- "Us[e] the Subscription Service within the permitted scope and limitations and only in accordance with this Agreement and the Order Form(s), and any guidelines communicated by ResMan to [Karya]"; and
- "Us[e] the Subscription Service in accordance with applicable laws."

MSA ¶ 3.5(iii)-(iv), (vi)-(vii), (x).

28.     In turn, the MSA defines permitted "Users," and expressly states that under no circumstances do permitted users include consultants, contractors or other third parties:

> Individuals who are authorized by [Karya] to use the Subscription Services, and who have been supplied with user identifications and passwords by [Karya] (or by ResMan at [Karya's] request).  Users may include [Karya's] employees and any on-site contract employees who perform services solely under the direction of [Karya] and solely for or on behalf of [Karya] from its offices or facilities.  ***Under no circumstances do Users include any consultants, contractors or other personnel of [Karya] or any third parties.***

MSA ¶ 1.17 (emphasis added).

29.     Section 3.6 of the MSA contains further express restrictions, including further specific prohibitions against providing access to third parties, and/or from using the ResMan Platform to create a competing product or service:

> ***[Karya] shall not release to any third party the results of any evaluation of the Subscription Service performed by or on behalf of [Karya] for the purposes of monitoring its availability, performance or functionality, or for any other benchmarking or competitive purposes*** without the prior written approval of ResMan.  ***[Karya] shall not (and shall not permit others to):*** (i) license, sub-license, sell, re-sell, rent, lease, transfer, distribute or time share the Subscription Service, or ***make it available for access by third parties***, including, without limitation, in the manner of a service bureau or hosted application; (ii) ***create derivative works based on or otherwise modify the Subscription Service***; (iii) ***disassemble, reverse engineer or decompile the Subscription Service or the ResMan Technolog***y; (iv) ***access the Subscription Service or information related to the Subscription Service in order to develop a competing product or service***; (v) use the Subscription Service to provide a service for others; . . . [or] (xi) violate any law or regulation of the United States, any state thereof or other governmental authority.

MSA ¶ 3.6 (emphasis added).

30.     The MSA also expressly defines the ResMan Platform to be Confidential, and restricts Karya from disclosing any of ResMan's Confidential Information:

> [T]he term 'Confidential Information' … includes … (b) ***with respect to ResMan, the Purchased Services***, all pricing and pricing proposals presented to [Karya] by ResMan, ***the ResMan Technology***, and the terms and conditions of this Agreement and the Order Forms and Statements of Work; (c) with respect to each Party, its businesses and marketing plans, ***technology and technical information, product plans and designs***, and business processes disclosed by such party; and (d) all

- 8 -

reports, analyses, compilations, studies, or other documents prepared by a Party or its Representatives which contain or otherwise reflect any Confidential Information of the other Party.

MSA ¶¶ 7.1(b) (emphasis added).

> ***The Receiving Party agrees not to use any Confidential Information of the Disclosing Party for any purpose whatsoever except to the extent necessary in order to perform its obligations or exercise its rights under this Agreement*** . . .

> ***The Receiving Party shall*** (i) hold the Disclosing Party's Confidential Information in strict confidence and treat such Confidential Information with at least the degree of care that it treats its own similar information but no less than a reasonable degree of care; and (ii) ***not disclose such Confidential Information to any other person or entity*** ….

MSA ¶¶ 7.2. 7.3 (emphasis added).

31.     Section 10.3 of the MSA provides that "the prevailing party in any action or proceeding to enforce this Agreement . . . is entitled to recover from the other party its costs and attorneys' fees in addition to any damages available to such party."  MSA ¶ 10.3.

32.     Section 10.4 of the MSA states that Karya consents to the issuance of injunctive relief in the event of a breach, and that any unauthorized use or disclosure of Confidential Information will result in irreparable harm to ResMan:

> [Karya] acknowledges that a breach of this Agreement cannot be adequately compensated for by money damages, and agrees that specific performance is an appropriate remedy for any breach or threatened breach hereof.   [Karya] acknowledges that compliance with the provisions of this Agreement is necessary in order to protect the proprietary rights of ResMan. [Karya] further acknowledges that any unauthorized use or disclosure of Confidential Information of ResMan to any third party in breach of this Agreement will result in irreparable and continuing damage to ResMan.  Accordingly, [Karya] hereby: (i) consents to the issuance of any injunctive relief or the enforcement of other equitable remedies against it at the suit of ResMan, without bond or other security, to compel performance of any of the terms of this Agreement; and (ii) waives any defenses thereto, including, without limitation, the defenses of failure of consideration, breach of any other provision of this Agreement, and availability of relief in damages.

MSA ¶ 10.4.

33.     Section 8.2 of the MSA states that Karya agrees to "defend, indemnify and hold harmless ResMan and its officers, directors, employees, and agents . . . against any and all Claims

arising from or related, directly or indirectly to . . . [Karya's] use of the Purchased Services in violation of the restrictions in this Agreement."  MSA ¶ 8.2.

### *ResMan Learns Of Karya's Competing Software Product And Its Disclosure Of ResMan User ID And Passwords To Expedien*

34.     On February 11, 2019, ResMan contacted Karya through business channels to discuss a future Karya software product, called "Arya 1.0," that Karya had recently announced on the internet.  Karya had not previously offered or participated in the property management software business, or any other software business, and ResMan was concerned that Karya would develop Arya 1.0 based on its access to the ResMan Platform or in a way that would otherwise violate the MSA.  Karya ignored ResMan's inquiry.

35.     On February 21, 2019, ResMan's counsel sent a letter to Karya reminding Karya of its numerous contractual duties under the MSA and asking for clarification about Karya's development of Arya 1.0 (a true and correct copy of which is attached hereto as Exhibit 4).  Karya's outside counsel subsequently contacted ResMan's counsel.  The parties then spent several weeks attempting to set up a time and parameters for a meeting to discuss Karya's planned development work on Arya 1.0 in view of the restrictions in the MSA.

36.     On March 26, 2019, the parties finally spoke.  ResMan was informed by representatives of Karya that Karya had retained an unnamed third party software consultant, which had no previous property management software experience, to create Arya 1.0.  Karya's representatives then admitted, upon questioning, that Karya had provided several ResMan User IDs and passwords to the software consultant to allow it remote access to the ResMan Platform, including to review in detail its functionality and features and create the Arya 1.0 product.

37.     Karya's representatives stated that Karya intended to roll-out the Arya 1.0 product for internal Karya use by the end of 2019, and possibly thereafter externally as a Karya product to compete in the market (i.e., against ResMan).  The representatives stated that Karya had no plans to discontinue the development of Arya 1.0, despite the Defendants' improper access to, and use of, the ResMan Platform.

9436819v1

38.     Despite repeated requests for information about the consultant and its access to, and use of, the Platform, Karya initially refused to identify the third party consultant.  On April 8, 2019, however, Karya finally identified the software consultant as "Expedien, Inc.," which it said was an IT services and strategy consulting firm located in Houston, Texas.

39.     Karya's representatives also admitted on April 8, 2019, that Karya had provided three User IDs to Expedien:  "jagrwal," "eteam" and "nvarshney."  Karya stated that the User IDs had recently been disabled.  Despite ResMan's requests, however, Karya refused to disclose either the number of Expedien employees who had accessed the ResMan Platform or the date(s) the user IDs were first provided to Expedien.

40.     On April 15, 2011, in response to ResMan's requests for Expedien contact information, Karya disclosed that its contact at Expedien was named Jitendra Agarwal.

### ResMan's Investigation Of The Improper Use Of The User IDs And Passwords

41.     Following Karya's identification of the third-party consultant and the specific User IDs, ResMan investigated both Expedien and its use of the three User IDs.  Through this investigation, ResMan learned that the access by Expedien was extensive and extraordinary:  it lasted for over a year, was performed by multiple Expedien employees from multiple locations in at least two different countries, was performed largely internationally from India, and comprised a detailed review of essentially the entire ResMan Platform continuously over a long period of time.  Further, ResMan has discovered that Karya and Expedien have disclosed ResMan User IDs and information to further individuals and entities.

42.     Further, ResMan learned that that Karya's stated contact at Expedien, Jitendra Agarwal, who formed Expedien in 2002 and is the designated Director, Vice President and Registered Agent of Expedien, has stated in federal filings that at least as of November 2017 *he was also an "employee" and "owner" of "Karya*."  Mr. Agarwal apparently began designating his business as "Expedien" on such federal filings beginning in late 2018, but upon information and belief also remains an employee and/or owner of Karya.  (True and correct copies of the Texas Application for Certificate of Authority, Assumed Name Certificate, and 2018 Franchise Tax

- 11 -

Report for Expedien (Scarlet InfoTech, Inc.) are attached hereto as Exhibits 5, 6 and 7 respectively. True and correct copies of Federal Election Commission records and forms for Jiten Agarwal for 2017 and 2018 are attached hereto as Exhibit 8.)

43. At least through Mr. Agarwal's common ownership in, and employment by, both Karya and Expedien during Karya's use of the ResMan Platform, Expedien had direct knowledge of Karya's contracts with ResMan including the restrictive terms of the MSA.  Moreover, even after Expedien was made aware of ResMan's inquiries and Karya's admission to facts that clearly violate the terms of the MSA, both Defendants refused to cease development on Arya 1.0.  Instead, Expedien ignored ResMan's communications and continued work on the project, presumably motivated by the substantial fees paid by Karya and/or other benefits it stands to gain by completing its software development work and launching the product internally for Karya and externally to the broader property management marketplace.

44. Further, Expedien purports to be a software consulting firm with extensive experience and clients (see www.Expedien.net).  Expedien therefore would clearly have understood, particularly based on the facts and circumstances summarized herein, that ResMan, as a software company, would not provide access to its password-protected Platform without first entering into agreements with its customers containing confidentiality and use restrictions prohibiting the customer from providing carte blanche access to that Platform to third parties, particularly for the purpose of developing a completing product.

45. Moreover, ResMan just recently learned that Expedien submitted a job posting in or around February 2018, shortly before it began improperly using the ResMan User IDs, specifically seeking and targeting an employee with experience "designing and developing Enterprise Resource Planning" applications and highlighting that "[a]ny experience with Property Management Software like ResMan will be a BIG PLUS."  (*See* https://www.ziprecruiter.com/c/Expedien/Job/ERP-Business-Analyst-Property-Management-Solution/-in-Houston,TX, a true and correct copy of which is attached hereto as Exhibit 9.)

- 12 -

ResMan Platform technical employees notably sign stringent non-disclosure agreements that prohibit the disclosure of information about the ResMan Platform, which survive post-employment and which also include one-year non-competition clauses.   And, as stated above, ResMan customers agree to stringent confidentiality and use terms in the MSA that would prohibit disclosing such information about the ResMan Platform.

46.     Thus, in addition to improperly accessing the ResMan Platform continuously for over a year as set forth further below, by as early as February 2018 Expedien was already making active efforts to find a developer or developers with confidential knowledge of the ResMan Platform that, upon information and belief, would help it copy and/or develop a competing platform in a more efficient and effective manner.

47.     Starting in or around February 2018, upon and information and belief, Expedien then actively encouraged Karya to breach its MSA with ResMan by providing Expedien with several ResMan User IDs so that Expedien could improperly access the ResMan Platform directly thereafter in order to create a competitive system more efficiently and effectively and at a cheaper cost for both itself and Karya.   As set forth below, Expedien then accomplished, induced and committed Karya's breaches of the MSA by actively and improperly accessing the ResMan Platform using the improperly obtained User IDs repeatedly and continuously over the next year.

48.     Through its subsequent investigation of the User IDs provided to Expedien, and first identified by Karya on April 11, 2019, ResMan discovered that Karya and Expedien created a "team" ResMan User ID on March 1, 2018, and that Expedien has been accessing the ResMan Platform almost continuously since at least April 2018.   The User ID entitled "eteam" was first registered and granted "Manager" security access to the ResMan Platform on March 1, 2018, under the full name "Expedien Team" (hereinafter the "eteam" or "Expedien Team" User ID).

49.     Expedien Team first accessed the ResMan Platform on April 29, 2018.  Expedien Team subsequently accessed the ResMan Platform on 195 separate days, before it was disabled on March 8, 2019 (i.e., Expedien Team accessed the ResMan system on almost every business day during those ten months).  However, Expedien Team has never submitted a lease, or conducted an actual business or data transaction on the Platform, such as would be performed by a normal Karya employee in the performance of his/her duties managing properties for Karya.

50.     Instead, upon information and belief, Expedien Team has used its access to the system for the sole purpose of conducting a painstakingly detailed analysis and review of the many aspects of the ResMan Platform, including its proprietary review tools, screens, data flows, organizational structure, and system layouts, etc.  These include hundreds of unique proprietary screens and work flows and features to help users manage reporting, budgeting, leasing and rent collection, portfolio views, lead management, maintenance requests, accounting tasks, financial report writing and resident retention tracking.

51.     ResMan further discovered that Expedien Team accessed an extremely large number (if not all) of the hundreds of screens in the ResMan Platform.  These included screens in many parts of the ResMan Platform, such as inventory, change distributions, management fees, non-residents, owners, projects, utility billing, waiting list, budget, accounting trees, company communication, vendor payment templates and forms, not generally used or accessed by Karya at all and/or in a manner wholly atypical of normal customer usage.  This usage strongly suggests that Expedien Team was improperly accessing the system to study and/or copy the extensive features, design layout and organizational format and visual display of the entire ResMan Platform.

52.     Expedien Team also registered a total of 115 hours of "active" usage on the ResMan Platform—equivalent to roughly three full 40-hour work weeks—spread out over those 195 days.  Significantly, this "active" usage only tracks periods of significant user activity, such as when a user changes screens, types, or moves the cursor sufficiently frequently.  "Active" usage does not track static usage, such as when screens are visible but user actions are sporadic.  Similarly, "active usage" does not track time spent on the ResMan Platform tutorials.  Thus, while Expedien spent

- 14 -

almost three full work weeks actively moving between screens and operating functionality, it could have spent an untold amount of additional hours during those 195 days simply reviewing screens.

53.     The ResMan Platform also allows a user to print hundreds of detailed, proprietary reports, which Expedien Team had the ability to print and review off-line.  ResMan does not provide the ability to track the extent to which a specific User ID prints reports, but Expedien Team could have printed most or all of the hundreds of ResMan reports for review and analysis offline and incorporation into the competing Arya 1.0 product.  Similarly, ResMan does not track whether a User ID captured or printed confidential and proprietary screen images, mapped out work flows, catalogued ResMan capabilities, interrogated or queried ResMan Integration APIs, or accessed tutorials in the ResMan "Knowledge Base," which is a separate, untracked application.  It is also possible Expedien engaged in reverse engineering of the source code underlying the ResMan Platform.

54.     Expedien Team accessed the ResMan Platform from numerous separate locations in and around the Expedien offices, and primarily from India, based upon IP location data from the logins of the Expedien Team users.  This data also indicates both that multiple Expedien personnel were using the Expedien Team ID, and that ResMan's proprietary information had been disclosed to unauthorized persons outside of the United States.  ResMan determined the above-described information because the ResMan Platform logs every user login along with the associated IP address.  Using the IP address and an IP geolocation service, ResMan was able to correlate a user login with its corresponding approximate geographic location.  Based on the IP location data from the login of the "eteam" users, the majority of logins were determined to have come from in and around New Delhi, India, where Expedien has an office.

55.     Moreover, ResMan studied the variance in the login IP addresses for Expedien Team over short periods of time, and noticed that, in many cases, the IP addresses were served by different Internet service providers, indicating that there were multiple users concurrently using the ResMan Platform from different locations.

9436819v1

56.     Thus, contrary to Karya's statement on April 8, 2019, that its third-party software consultant was located in Houston, Texas, a significant portion of the access appears to have occurred from multiple Expedien employees located in India.

57.     ResMan also uncovered that the User ID "jagarwal," another User ID Karya provided to Expedien, accessed the ResMan Platform from Texas and India over the last year. Upon information and belief, "jagarwal" refers to Jitendra Agarwal, who is an employee and owner of both Karya and Expedien.  Thus, Mr. Jagarwal, the founder, owner and director of Expedien, used his own Karya User ID to access the ResMan Platform on behalf of Expedien.

58.     ResMan has also just recently found online information indicating that Karya and Expedien have distributed ResMan User IDs and information to further individuals and entities. For example, ResMan has located online code snippets (https://github.com/Saurabh0707/portfolio.github.io/blob/master/index.html) indicating that an additional company based in India called RMgX (https:www.rmgx.in/) has been working jointly with Expedien on its new property management software project starting in March 2018.  RMgX has common employees with Expedien (e.g., Vishal Agarwal, Partner & Head of Systems Development at Expedien's India Office, and also Partner and Business Head at RMgX), and one RMgx employee (Nishant Varshney, Partner and Technology Lead at RMgX), upon information and belief, is represented by the ResMan User ID "nvarshney" Karya provided to Expedien.  (True and correct copies of the online code snippets from Github.com, and the LinkedIn Pages of Vishal Agarwal and Nishant Varshney, are attached as Exhibits 10, 11 and 12 respectively.)

59.     Karya has also continued to publicly announce its intention to continue to develop Arya 1.0, stating that Arya 1.0 will be a "game changer" in the market.  Specifically, Karya's CEO, Swapnil Agarwal, posted a promotion video on March 22, 2019 in which the narrator states, "A couple of years ago, they [Karya] decided to build their own property management software, Arya 1.0, which is expected to a game changer in the industry.  In this landmark development, India's IT Power came in handy."  The scene then cuts to Mr. Swapnil Agarwal, who states:  "Indian

minds, they are on another level . . . . We have a whole team in Gurgaon that is working on property management software that we are building." (See https://www.youtube.com/watch?v=_6EAJBX2Ktc, at minute 17:00-17:40). He does not mention that his team has built that system based on unlawful and continuous review of the ResMan proprietary and confidential Platform.

60.     As a direct result of Defendants' contractual and induced breaches and unlawful behavior, ResMan has already incurred substantial in-house labor and other costs and fees in an effort to investigate and quantify the extent of Defendants' improper access through the User IDs improperly provided to and used by Expedien. Taking hours of valuable time away from day-to-day activities, ResMan employees have to date spent over one hundred (100) hours investigating Defendants' access. Based upon lost employee time, ResMan's initial cost of investigating its losses from Defendants' acts far exceeds $5,000. ResMan continues to incur additional investigative costs during the pendency of this suit. ResMan has to date already spent several hundred thousand dollars in attorneys' fees and costs investigating and addressing this matter.

### *Current Status Of The Relationship Between ResMan And Karya/Expedien*

61.     On April 16, 2019, after receiving the name of Karya's contact at Expedien (Jitendra Agarwal), ResMan's counsel sent an email to Expedien (copying Karya, which had received similar communications already) stating that pending an investigation by ResMan:  (i) no further use or dissemination of ResMan information should be made; (ii) all documents, software and information concerning the dispute should be preserved; and (iii) all further work on Arya 1.0 should cease until the matter is resolved.

62.     Karya has not responded further, has not agreed to cease work on development of the tainted Arya 1.0 system, and upon information and belief that work continues. For example,

on May 14, 2019, Karya personnel called ResMan to ask about extracting property, user permission and user access settings from ResMan into an excel spreadsheet.

63.     Expedien likewise ignored ResMan's April 16, 2019, communication, and has never acknowledged or responded to ResMan's attempted communications.

64.     Pursuant to Section 9.3 of the MSA, which provides the right to terminate for any material breach of any of the representations, warranties, covenants or obligations contained therein, ResMan has contemporaneously with the filing of this Complaint provided formal written notice to Karya that it has breached the MSA and the associated order forms, and that it intends to terminate service upon the expiration of the sixty (60) day cure period.

65.     ResMan has already suffered damages as a result of Defendants' actions.  ResMan is at risk of suffering further substantial financial damages and irreparable harm if Karya and/or Expedien and/or other third parties are permitted to continue development and/or launch the tainted Arya 1.0 product.  ResMan has invested years and in excess of $10 million dollars just in research and development on the ResMan Platform.  The ResMan Platform is comprehensive and has been refined over the course of nearly a decade based on extensive feedback from property management companies, including learning what information those companies track, how those companies optimally collect, input, use and review that information, and the preferred functionalities and formats with which to receive, organize and display that information.  Defendants are attempting to usurp and unfairly leverage ResMan's skills, time, expense and investments and confidential know-how, and to build upon and duplicate the ResMan Platform, without expending any of the substantial resources that would -- in the absence of their violation and interference with the contractual obligations of ResMan -- be necessary to develop a similar property management software platform.

66.     Permitting a Karya and Expedien, both with no prior history of developing property management software, to spend a full year studying the ResMan Platform for the purposes of contemporaneously creating a competitive software product provides an unfair advantage and massive cost-savings in creating that new product.  Moreover, it allows Karya and Expedien to

determine specific, detailed features and functionality that the ResMan Platform may or may not have, in order to create a product, and more effectively market that product, to compete with the ResMan Platform in the marketplace.  It is for this reason that ResMan requires its customers to agree to the terms of the MSA, to only access the ResMan Platform using non-transferable user IDs and passwords, to treat information about the ResMan Platform as Confidential Information, and to use the ResMan Platform only for property management purposes and not to analyze or use the ResMan Platform to create a competitive system.  Allowing Defendants to continue with the development and launch of Arya 1.0, which was derived from their improper access to, and use of, the ResMan Platform continuously for almost a year, would provide Defendants with an unfair advantage and would cause great competitive harm to ResMan in the market including loss of customers, loss of business opportunities and loss of reputation and goodwill.

67.     In addition, ResMan needs to ensure that its proprietary, confidential, and trade secret information, which has apparently been reviewed at great length as far away as in India, is properly destroyed and that Expedien no longer has any access to the ResMan Platform itself, or any information derived from it.

### COUNT 1 (Breach of Contract)
### Against Karya

68.     ResMan incorporates by reference all of the allegations in each of the paragraphs above, as if fully set forth herein.

69.     The order forms and MSA constitute a legally binding contract governing the relationship between ResMan and Karya.

70.     At all times material hereto, ResMan has substantially performed its obligations under the order forms and MSA.

71.     As explained above, Karya materially breached its obligations to ResMan, including, but not limited to, multiple obligations in Paragraphs 1.17, 3.1, 3.5, 3.6, 7.2 and 7.3 of the MSA, by, among other things, providing Expedien with its user IDs and passwords and developing a competing software product based on improper access to the ResMan Platform.

72.     By virtue of the foregoing and as a direct and proximate result of Karya's breaches, ResMan has been damaged amounts to be determined at trial, including, but not limited to, lost revenues and investigative costs.  In addition, ResMan has incurred and will continue to incur additional damages, costs, and expenses, as well as attorneys' fees resulting from Karya's breaches that are expressly recoverable under Section 10.3 of the MSA (which includes all attorneys' fees expended to enforce ResMan's claims against Expedien).

73.     By virtue of its conduct, Karya has caused and will continue to cause immediate and irreparable harm to ResMan for which there is no adequate remedy at law.  Significantly, Karya has expressly consented to the issuance of injunctive relief in the event of a breach of the MSA, acknowledged that any unauthorized use or disclosure of ResMan Confidential Information would result in irreparable harm to ResMan, and has waived any defenses to such claims, including the availability of relief in damages.  MSA § 10.4.

## COUNT 2 (Tortious Interference with Contract)
### Against Expedien

74.     ResMan incorporates by reference all of the allegations in each of the paragraphs above, as if fully set forth herein.

75.     The order forms and MSA constitute a valid, existing agreement between ResMan and Karya.

76.     Expedien willfully and intentionally interfered with the known contractual agreements between ResMan and Karya by actively encouraging Karya to provide, and conspiring with Karya to receive and use on a continuing basis, Karya's ResMan Platform User IDs and passwords in violation of the MSA, accessing the ResMan Platform without authorization from ResMan on an ongoing and continual basis, and developing a competing software product derived from their improper access of the ResMan Platform.  At least through Jitendra Agarwal's common ownership of and employment with Karya and Expedien, Expedien had actual knowledge of the existence of the contractual relationship and MSA terms between ResMan and Karya and ResMan's interests in that relationship.  Further, Expedien, as an IT consulting firm, would have,

in any event, understood that ResMan, as a software company, would not provide access to its proprietary software without first entering into agreements with its customers, and that such agreements would prohibit customers from providing access of the ResMan Platform to third parties.  Accordingly, even in the absence of its actual knowledge, Expedien had knowledge of such facts and circumstances that would lead a reasonable person to believe in the existence of the contracts and terms between ResMan and Karya such as in the MSA, and ResMan's interest in them.

77.     By virtue of the foregoing and as a direct result and proximate result of the Expedien's tortious acts, ResMan has been damaged in an amount to be determined at trial, including, but not limited to, lost revenues and investigative costs.  In addition, ResMan has incurred and will continue to incur additional damages and expenses, as well as attorneys' fees.

78.     Further, by virtue of its conduct, Expedien has caused and will continue to cause immediate and irreparable harm to ResMan for which there is no adequate remedy at law.

**COUNT 3 (Violation of Computer Fraud and Abuse Act (CFAA), 18 U.S.C. § 1030(a))**
**Against All Defendants**

79.     ResMan incorporates by reference all of the allegations in each of the paragraphs above, as if fully set forth herein.

80.     The ResMan Platform resides, among other places, on ResMan's computers and on its computer network (including servers) located in Texas, which Defendants accessed from and used in the United States and India.  Such computers, servers and computer networks function with individual data processing devices, are used in or affect interstate and foreign commerce and communication, and are therefore a "protected computer" under 18 U.S.C. § 1030(e)(2).

81.     As explained above, Karya acted without authorization and exceeded the extent of authorized access to the ResMan Platform permitted by the MSA.  Without notice or ResMan's prior written authorization, Karya provided and/or permitted access to the ResMan Platform to Expedien.

82.     As explained above, Expedien intentionally accessed without authorization the ResMan Platform and computers, through their unauthorized use of Karya's user IDs and passwords, when Expedien had no license or software agreement in place with ResMan.  Expedien accessed the ResMan Platform through ResMan's, Karya's and/or Expedien's computers or computer networks.

83.     Through this unauthorized access, Expedien obtained information that is confidential and proprietary, and which provides a competitive advantage to ResMan.  Defendants knowingly and improperly used the ResMan Platform to develop a competing software product.

84.     Defendants knowingly and with intent to defraud, accessed or continue to access the above-described protected software and computers without ResMan's authorization or in excess of any authorization, and by such conduct have furthered and are furthering the intended fraud, and have obtained something of value far exceeding $5,000 in a single calendar year.

85.     As a result of this unauthorized access, ResMan has suffered a loss, consisting of, at least, the costs to investigate and respond to the unauthorized access, which exceed $5,000.

86.     Through these actions, Defendants violated at least 18 U.S.C. § 1030(a)(2) and (a)(4).

87.     Defendants knowingly, and with an intent to defraud, and in a manner that affects interstate commerce, trafficked in passcodes and access codes by providing Expedien with user IDs and passwords that could access the ResMan Platform without notice to ResMan or ResMan's prior written authorization.

88.     Through these actions, Defendants violated 18 U.S.C. § 1030(a)(6).

### COUNT 4 (Declaratory Judgment Pursuant to 28 U.S.C. § 2201)
### Against Karya

89.     ResMan incorporates by reference all of the allegations in each of the preceding paragraphs, as if fully set forth herein.

90.     As described above, Karya breached the MSA.

9436819v1

91.     As a result of Karya's breaches and unlawful conduct, ResMan has suffered and will continue to suffer damages and irreparable harm.

92.     An actual, substantial, justiciable, and continuing controversy exists between ResMan and Karya concerning Karya's breaches and unlawful conduct.

93.     Accordingly, ResMan seeks a judgment declaring the rights and obligations of the parties pursuant to 28 U.S.C. § 2201, including, but not limited to, a declaration that (a) Karya has breached one of more provisions of the MSA, (b) ResMan was entitled to terminate the MSA and Karya's breaches are not subject to cure, (c) the Arya 1.0 product is a derivative, improvement, enhancement and/or extension of ResMan's Platform and confidential and proprietary information, (d) pursuant to the MSA and/or applicable law, including but not limited to under MSA ¶¶ 1.12, 1.5 and 5.1, ResMan is the rightful owner of Arya 1.0 and all related work product, (e) ResMan is entitled to its attorneys' fees and/or (f) any and all other declaratory relief that is appropriate and just in these circumstances.

## COUNT 5 (Violation of the Defend Trade Secrets Act (DTSA), 18 U.S.C. § 1839)
### Against All Defendants

94.     ResMan incorporates by reference all of the allegations in each of the preceding paragraphs, as if fully set forth herein.

95.     The ResMan Platform constitutes and contains trade secrets.

96.     The ResMan platform is used in, or intended for use in, interstate commerce.

97.     ResMan has taken reasonable measures under the circumstances to keep the information in the ResMan Platform secret, including, but not limited to, requiring its customers to sign an MSA containing confidentiality provisions and various access and use restrictions in order to receive access to the ResMan Platform.

98.     ResMan derives economic value from the fact that the contents of the ResMan Platform are not generally known by competitors in the property management software market.

99.     Defendants have disclosed, misappropriated, used and exploited the ResMan Platform and its trade secrets, through interstate commerce, and have used and are using the contents thereof to create a competing property management software product.

100.    Once Karya began developing a competing property management software product, their subsequent access to the ResMan Platform violated the MSA and constituted a breach in Karya's confidential relationship with ResMan.  Any subsequent access, use, or disclosure by Karya constituted access, use, or disclosure through a breach of a confidential relationship and/or other improper means, and Karya knew, or had reason to know, of the same.  Expedien received access to the ResMan Platform through User IDs provided by Karya in violation of the MSA. Accordingly, Expedien received access to, and used the ResMan platform pursuant to, the breach of a confidential relationship and/or other improper means, and Expedien knew, or had reason to know, of the same.

101.    ResMan has suffered damages, and Defendants were unjustly enriched, including but not limited to through relying on the trade secret to assist or accelerate research and development on their product.

102.    Through these actions, Defendants violated 18 U.S.C. § 1839 willfully and maliciously, and ResMan is entitled to injunctive relief and damages, including but not limited any lost profits, unjust enrichment to Defendants, a reasonable royalty, and exemplary (double) damages.

**COUNT 6 (Violation of the Texas Uniform Trade Secrets Act (TUTSA), Tex. Civ. Prac. & Rem. Code § 134A.001)**
**Against All Defendants**

103.    ResMan incorporates by reference all of the allegations in each of the preceding paragraphs, as if fully set forth herein.

104.    The ResMan Platform constitutes and contains trade secrets.

105.    The ResMan platform is used in, or intended for use in, interstate commerce.

106.    ResMan has taken reasonable measures under the circumstances to keep the information contained in the ResMan Platform secret, including, but not limited to, requiring its customers to sign an MSA containing confidentiality provisions and various access and use restrictions in order to receive access to the ResMan Platform.

107.    The ResMan Platform derives independent economic value from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information.

108.    Defendants have disclosed, misappropriated, used and exploited the ResMan Platform and its trade secrets, through interstate commerce, and have used and are using the contents thereof to create a competing property management software product.

109.    Once Karya began developing a competing property management software product, their subsequent access to the ResMan Platform violated the MSA and constituted a breach in Karya's confidential relationship with ResMan.  Any subsequent access, use, or disclosure by Karya constituted access, use, or disclosure through a breach of a confidential relationship and/or other improper means, and Karya knew, or had reason to know, of the same.  Expedien received access to the ResMan Platform through User IDs provided by Karya in violation of the MSA. Accordingly, Expedien received access to, and used the ResMan platform pursuant to, the breach of a confidential relationship and/or other improper means, and Expedien knew, or had reason to know, of the same.

110.    Defendants used the ResMan Platform without authorization, resulting in damages to ResMan.

111.    ResMan has suffered damages, and Defendants were unjustly enriched, including but not limited to through relying on the trade secret to assist or accelerate research and development on their product.

112.    Through these actions, Defendants have violated Tex. Civ. Prac. & Rem. Code § 134A.001 willfully and maliciously, and ResMan is entitled to injunctive relief and damages,

9436819v1

including but not limited any lost profits, unjust enrichment to Defendants, a reasonable royalty, and exemplary (double) damages.

## INJUNCTIVE RELIEF

113.    ResMan incorporates by reference the allegations in each of the paragraphs above, as if fully set forth herein.  Pursuant to Fed. R. Civ. P. 10(c), ResMan also incorporates by reference its concurrently filed Expedited Motion for Temporary Restraining Order and Proposed Temporary Restraining Order.    ResMan respectfully seeks temporary, preliminary and/or permanent injunction relief against Defendants, their employees, representatives, agents, and all persons or entities acting in concert with them during the pendency of this action, because with respect to one or more of its claims, ResMan has a substantial likelihood of success on the merits, there is a substantial threat that ResMan will suffer irreparable injury if the requested injunctive relief is denied, the threatened injury outweighs any damage that the requested injunctive relief might cause Defendants, and the requested injunctive relief will not disserve the public interest.

## ATTORNEYS' FEES

114.    ResMan respectfully requests that the Court award ResMan's reasonable and necessary attorneys' fees, pursuant to § 10.3 of the MSA and Tex. Civ. Prac. & Rem. Code § 38.001, together with all costs of court.

## JURY DEMAND

ResMan hereby demands trial by jury of all issues.

## PRAYER

WHEREFORE, ResMan respectfully requests that judgment be entered in its favor against the Defendants as follows:

(a) Entering appropriate temporary, preliminary and permanent injunctive relief against all Defendants, their employees, representatives, agents, and all persons or entities acting in concert with them during the pendency of this action, as to be determined by this Court;

- 26 -

9436819v1

(b) Entering judgment declaring that (i) Karya breached one of more provisions of the MSA, (ii) ResMan was entitled to terminate the MSA and Karya's breaches are not subject to cure, (iii) the Arya 1.0 product is a derivative, improvement, enhancement and/or extension of ResMan's Platform and trade secret, confidential and proprietary information, (iv) pursuant to the MSA and/or applicable law, ResMan is the rightful owner of Arya 1.0 and all related work product, (v) ResMan is entitled to its attorneys' fees and/or (f) any and all other declaratory relief that is appropriate and just in these circumstances;

(c) Awarding compensatory, consequential, and/or monetary damages in an amount to be determined at trial, including multiple damages under the DTSA and TUTSA;

(d) Awarding pre-judgment interest and post-judgment interest at the maximum rate permitted by law or equity;

(e) Pursuant to § 10.3 of the MSA and Tex. Civ. Prac. & Rem. Code § 38.001 and/or applicable law, awarding ResMan's reasonable and necessary attorneys' fees and expenses, together with all costs of court and expert fees; and

(f) Granting such other further relief, at law and equity, as this Court deems just and proper.

Respectfully Submitted,

RESMAN, LLC

By its attorneys,


/s/  John M. Jackson

John M. Jackson
Texas State Bar No. 24002340
jjackson@jw.com
JACKSON WALKER L.L.P.
2323 Ross Ave., Suite 600
Dallas, Texas 75201
Telephone:  (214) 953-6000
Facsimile:  (214) 953-5822

Daniel C. Winston (pro hac vice to be submitted)
dwinston@choate.com
G. Mark Edgarton (pro hac vice to be submitted)
gedgarton@choate.com
Robert Z. Shames (pro hac vice to be submitted)
rshames@choate.com
CHOATE, HALL & STEWART LLP
Two International Place
Boston, MA 02110
Tel.: (617) 248-5000
Fax: (617) 248-4000

Date:  October 1, 2019

9436819v1

## **CERTIFICATE OF SERVICE**

I hereby certify that on October 1, 2019, a copy of this document was served via the CM/ECF system to all counsel of record.

*/s/ John M. Jackson*

Attorney for Plaintiff