# Exhibit 1

# I.    Master Subscription Agreement

THIS MASTER SUBSCRIPTION AGREEMENT (this "**Agreement**") governs your acquisition and use of services. By executing an Order Form that references this Agreement, you are accepting this Agreement and agreeing to the terms and conditions listed herein. Executing an Order Form ("**Order Form**") on behalf of a Company (" **Customer**") or other legal entity, you represent that you have the authority to bind the Customer or legal entity and its affiliates to the terms and conditions of this Agreement.

The Effective Date ("**Effective Date**") of this Agreement is the date the first Order Form the Customer executes with ResMan, LLC, a Utah limited liability company ("**ResMan**"). ResMan and Customer are each a "**Party**" hereto, and collectively, they are the "**Parties**" hereto.

If you are a direct competitor of ResMan, you may not access the Services ("**Services**"), except with ResMan's prior written consent.

**1. DEFINITIONS:** Capitalized terms used but not otherwise defined in this Agreement have the following meanings:

1.  **"Affiliate"** means any corporation or other entity that directly or indirectly controls, is controlled by, or is under the common control with a Party, where

"**control**" means the power, directly or indirectly, to direct, or to cause the direction of, the management and policies of an entity, whether through ownership of voting securities or equity interests, through common directors, trustees or officers, by contract or otherwise.

2. **"Customer Data"** means all data or information submitted, uploaded, imported, processed through, collected from, made available by, produced by or resulting from Customer's use of the Purchased Services.

3. **"Deliverables"** means any copyrightable works, products, discoveries, developments, designs, work-product, deliverables, improvements, inventions, processes, techniques and know-how made, conceived, reduced to practice or learned by ResMan that result from Professional Services, including in any Order Form and/or Statement of Work, and provided to Customer hereunder.

4. **"Go Live Date"** means the date on which the Purchased Services under an Order Form per site are made available for use as its system-of-record by Customer and its Users in accordance with this Agreement.

5. **"Intellectual Property Rights"** means any and all intellectual property rights throughout the world, including, without limitation, any and all patents, copyrights, trademarks, applications for any of the foregoing, trade secret rights, moral rights, unregistered design rights, rights to know-how, inventions, and algorithms, and any and all similar or equivalent rights throughout the world.

6. **"Malicious Code"** means any undocumented malicious data, code, program, or other internal component (e.g., computer worm, computer time bomb or similar component), which could damage, destroy, alter or disrupt any computer program, firmware or hardware, or which could, in any manner, reveal, damage, destroy, alter or disrupt any data or other information accessed through or processed by the Subscription Service or ResMan's computer systems in any manner.

7. **"Order Form"** means (i) the Order Form No. 1 attached hereto as Exhibit A, and (ii) any additional Order Forms that may be entered into from time to time by Customer and ResMan substantially in the form of Order Form No. 1, and all amendments, modifications and supplements thereto, all of which are incorporated herein by this reference.

8. **"Professional Services"** has the meaning specified in Section 2.8.

9. **"Properties"** (or **"Property**," as applicable) means the real property or properties on which Units are located.

10. **"Property Owner"** means the owner of a Property subject to this Agreement.

11. **"Purchased Services"** means one or more Subscription Services Customer purchases pursuant to an Order Form executed by Customer and ResMan.

12.     **"ResMan Technology"** means: (i) ResMan technology, methodologies and intellectual property (including, without limitation, products, software tools, hardware designs, algorithms, software (in source and object code forms), architecture, objects and documentation (both printed and electronic) existing as of the Effective Date or otherwise arising outside of this Agreement; (ii) all derivatives, improvements, enhancements or extensions of any of the foregoing, whether or not conceived, reduced to practice or developed during the term of this Agreement; and (iii) all Intellectual Property Rights relating to any of the foregoing.

13.     **"Statements of Work"** (or **"Statement of Work"**, as applicable) has the meaning specified in Section 2.6.

14.     **"Subscription Services"** (or **"Subscription Service"**, as applicable) means the ResMan® residential property management software application and any other software applications which are made available by ResMan as a software as a service (SaaS) offering via a customer log-in to a web access designated by ResMan.

15.     **"Subscription Term"** means the term of authorized use of the Subscription Service established and governed by the Master Subscription Agreement term. All Subscription Terms, regardless of order execution date, will be eligible for renewal within the dates and term established by the MSA.

16.     **"Units"** (or **"Unit**," as applicable) means the individual multi-family rental dwellings located on a Property owned by Customer or managed by Customer on behalf of the Property Owner thereof.

17.     **"Users"** means individuals who are authorized by Customer to use the Subscription Services, and who have been supplied with user identifications and passwords by Customer (or by ResMan at Customer's request). Users may include Customer's employees and any on-site contract employees who perform services solely under the direction of Customer and solely for or on behalf of Customer from its offices or facilities. Under no circumstances do Users include any consultants, contractors or other personnel of Customer or any third parties.

## 2. PURCHASED SERVICES:

1. **Provision of Purchased Services.** Subject to the terms and conditions of this Agreement and the applicable Order Form, ResMan will make the Purchased Services described in the relevant Order Form available to Customer during the applicable Subscription Term.

2. **Order Forms.** From time to time during the term of this Agreement, Customer and ResMan may enter into one or more Order Forms providing for the Subscription Services to be provided by ResMan to Customer under this Agreement. No Order Form will amend, supersede, or negate any provision of

this Agreement unless such Order Form expressly states that it is amending such provision of this Agreement and is mutually executed by authorized representatives of the Parties.

3. **New Orders.** Each order is considered a new subscription and will be priced at the price negotiated, specified on the Order Form, governed by the dates and terms of this Agreement.

4. **Subscription Services; Additional Properties and Units.** Unless otherwise specified in the applicable Order Form, (i) Purchased Services are purchased as Subscription Services and may be accessed by Users to manage no more than the number of Units for each Property specified in the Order Form, (ii) the additional subscription renewals will occur in alignment with the term dates established by Section 9.1 of this Agreement.

5. **Cancellation of Purchased Services.** Customer may terminate one or more Purchased Services on one or more Properties at any time after the Go Live Date providing the Customer provides ninety days prior written notice to ResMan.

6. **Special Exclusion:  Termination for Sale of Asset or Loss of Management.**  In the event of a sale or loss of management of a Property, the Customer may terminate ResMan Purchased Services immediately with written notice if Customer can provide reasonable documentation to support the sale of Property or loss of management, subject to payment terms in Section 4 of this

Agreement. Services will be terminated at the end of the then-current billing period. Customer will retain access to the Purchased Services until the end of the then-current billing period and service fees for the period will be valid.

7. **Support.** Beginning on a Go Live Date and continuing during the Subscription Term, ResMan will provide the support services for the Purchased Services specified in such Order Form in accordance with the Support Terms and Service Level Agreement set forth in ResMan's "Terms & Conditions", available at the following url: https://myresman.com/terms-conditions/

8. **Professional Services.** If professional services (such as implementation, training, consulting, customized reports, etc.) ("Professional Services") are included in any Order Form, in addition to the provisions of any mutually agreed upon statement of work (a "Statement of Work"), the following provisions apply. ResMan retains all ownership rights to any and all Deliverables, excluding any pre-existing materials and Confidential Information supplied by Customer for incorporation into such Deliverable. ResMan grants to Customer a royalty-free, non-exclusive, non-transferable, non-assignable Subscription to use any Deliverable, to the extent necessary to permit Customer to use the Deliverable in connection with the Subscription Services during the Subscription Term. Customer acknowledges that nothing in this Agreement will restrict or limit ResMan from performing similar services for any third party.

9.  **Performance of Professional Services; Subcontractors.** ResMan shall

    perform the Professional Services under the general direction of Customer, but

    ResMan will determine, in consultation with Customer, the manner and means by

    which the Professional Services are accomplished. ResMan may engage the

    services of subcontractors (including, but not limited to, Affiliates of ResMan) to

    perform any of the Professional Services under an Order Form or a Statement of

    Work. In each such instance, ResMan will ensure that its subcontractors are

    bound to confidentiality obligations at least as restrictive as ResMan's

    confidentiality obligations under this Agreement.

### 3. USE OF THE SERVICES:

1.  **Grant of Use Rights.** Subject to the terms and conditions of this Agreement and

    the applicable Order Form(s), ResMan hereby grants to Customer (and only for

    the specific Units located at the physical Property address or addresses specified

    in the Order Form(s)), for its internal business purposes and for no other

    purpose, a non-exclusive, non-transferable right during the Subscription Term to

    access and use the Subscription Service specified in the Order Form(s) for the

    number of Units specified in such Order Form(s).

2.  **Customer Data.** Customer hereby grants to ResMan a non-exclusive, non-

    transferable, worldwide right to use the Customer Data provided by and

specifically pertaining to Customer and its Users that Customer processes using the Subscription Service strictly for the limited purpose of providing the Subscription Service to Customer. ResMan shall not (i) disclose the Customer Data except as compelled by applicable law in accordance with Section 7.3 (Disclosure) or as expressly permitted in writing by Customer, or (ii) access the Customer Data except to provide the Subscription Service to Customer and to prevent or address service or technical problems, or if requested by Customer in connection with customer support matters. In the event of any loss or damage to the Customer Data, as an accommodation to Customer, ResMan will use commercially reasonable efforts to attempt to restore the lost or damaged Customer Data, but ResMan has no liability or obligation to Customer therefor.

3. **Data Security.** ResMan shall maintain appropriate administrative, physical and technical safeguards to protect the security, confidentiality and integrity of the Customer Data. To the extent permitted by applicable law, ResMan shall promptly notify Customer of any actual unauthorized acquisition of Customer Data (a **"Security Incident"**). In the event the Security Incident was directly caused by ResMan's failure to meet or exceed industry standard technical safeguards, ResMan shall use commercially reasonable efforts to identify and remediate the cause of such Security Incident.

4. **Use of De-Identified Data.** Notwithstanding anything to the contrary contained in this Agreement, ResMan has the right, during and after a Subscription Term, to

use, reproduce and distribute aggregate and de-identified data derived from use of the Purchased Services hereunder, for any lawful purpose, including, but not limited to, publication of white papers, industry comparisons, product development and improvement, and benchmarking, provided that ResMan complies with all applicable laws in using such data. Such de-identified data is the sole and exclusive property of ResMan.

5. **Customer Responsibilities.** Customer is responsible for the following: (i) Customer's required participation in the implementation of the Subscription Service; (ii) using the most current licensed versions of an Internet browser in connection with accessing and using the Subscription Service; (iii) protecting the names and passwords of the Users of the Subscription Service; (iv) preventing, and for promptly notifying ResMan of, any unauthorized access to or use of the Subscription Service; (v) the reliability, integrity, accuracy, quality and lawfulness of, and the results obtained from, all Customer Data submitted by Users of the Subscription Service; (vi) each User's compliance with the terms and conditions of this Agreement and the Order Form(s) and each User's acts and omissions; (vii) using the Subscription Service within the permitted scope and limitations and only in accordance with this Agreement and the Order Form(s), and any guidelines communicated by ResMan to Customer; (viii) maintaining archival and backup copies of all Customer Data (and any prior versions thereof) outside of the instance being used by ResMan to provide the Subscription Service; (ix) obtaining, at Customer's sole expense, valid licenses to any and all third party

information, data and/or materials (collectively, **"Third Party Materials"**) that Customer, directly or indirectly, provides or makes available to ResMan or otherwise utilizes within the Subscription Service; and (x) using the Subscription Service in accordance with applicable laws.

6. **Restrictions.** Customer shall not release to any third party the results of any evaluation of the Subscription Service performed by or on behalf of Customer for the purposes of monitoring its availability, performance or functionality, or for any other benchmarking or competitive purposes without the prior written approval of ResMan. Customer shall not (and shall not permit others to): (i) license, sub-license, sell, re-sell, rent, lease, transfer, distribute or time share the Subscription Service, or make it available for access by third parties, including, without limitation, in the manner of a service bureau or hosted application; (ii) create derivative works based on or otherwise modify the Subscription Service; (iii) disassemble, reverse engineer or decompile the Subscription Service or the ResMan Technology; (iv) access the Subscription Service or information related to the Subscription Service in order to develop a competing product or service; (v) use the Subscription Service to provide a service for others; (vi) use, include, store or send Malicious Code from the Subscription Service; (vii) interfere with the integrity of the Subscription Service or its data; (viii) remove or modify a copyright or other proprietary rights notice on or in the Subscription Service; (ix) use the Subscription Service to reproduce, distribute, display, transmit or use material protected by copyright or other Intellectual Property Right (including the

rights of publicity or privacy) without first obtaining the permission of the owner;
(x) use a computer or computer network to cause physical injury to the property
of another; (xi) violate any law or regulation of the United States, any state
thereof or other governmental authority; (xii) disable, hack or otherwise interfere
with any security, digital signing, digital rights management, verification or
authentication mechanisms implemented in or by the Subscription Service; (xiii)
disrupt the integrity of the Subscription Service; or (xiv) alter, disable, or erase
any computer data, computer programs or computer software without
authorization.

7. **Third Party Integration Vendors.** To the extent that Customer elects to utilize
the services of third party vendors to provide additional service functionality that
may integrate with the Subscription Service, Customer acknowledges that it does
so at its own risk and that ResMan has no liability therefor. Customer further
acknowledges that ResMan makes no, and specifically disclaims any and all,
representations, warranties and agreements with respect to such third-party
vendor services.

## 4. FEES AND PAYMENT TERMS:

1. **Fees.** Subject to the terms and conditions of this Agreement and the applicable
Order Form(s) or Statement(s) of Work, Customer shall pay all fees specified in

the applicable Order Forms and Statements of Work. All fees and other payment obligations hereunder are non-cancellable and all amounts paid are nonrefundable. Subscription fees are based on the Purchased Services and the number of Units specified in the applicable Order Form(s) and not actual usage of the Subscription Service. Any Subscriptions for Units added during the course of the Term specified in this Agreement will be invoiced monthly. The subscriptions for the number of Units cannot be decreased during the applicable Subscription Term provided in the Order Form(s). ResMan has the right to audit the number of Units utilized by Customer in connection with any Property specified in an Order Form and, if such actual number exceeds the limitation on the number of Units specified in such Order Form, to invoice Customer for the actual number of Units identified in the ResMan system.

2. **Invoicing and Payment.** Unless otherwise provided in the relevant Order Form or Statement of Work, each invoice submitted to Customer on the 5th business day of each month and will be payable net 25 days after the date of the invoice. ResMan will invoice Customer for the relevant fees on the frequency and in the manner provided herein:

1. **One-Time Fees.** Unless otherwise provided in the applicable Order Form, ResMan will invoice Customer upon the execution of each Order Form for the one-time fees specified therein, including, but not limited to, an implementation fee, training fee, and an initial configuration fee.

2. **Recurring Fees.** Unless otherwise provided in the applicable Order Form, ResMan will invoice Customer in advance for the relevant recurring fees, including but not limited to subscription fees, transactional fees and testing fees provided in the Order Form on or about the fifth day of each month during the Subscription Term for the Purchased Services to be provided.

3. **Professional Fees.** Unless otherwise provided in the applicable Order Form or Statement of Work, ResMan will invoice Customer for any Professional Services as provided in the applicable Order Form or Statement of Work, and Customer agrees to pay ResMan in the manner and on the frequency provided therein.

4. **Usage-Based Transaction Fee.** Transaction Fees will be noted in the Order Form(s), and Customer agrees to pay ResMan in the manner and on the frequency provided therein.

3. **Amounts Payable; Taxes.** All amounts payable under this Agreement and any Order Form or Statement of Work are (i) exclusive of any sales, use, excise, value added, goods and services, and gross receipts taxes, and any and all similar taxes or legally imposed fees, duties or contributions based upon such amounts, this Agreement and any Order Form or Statement of Work, except for franchise or margin taxes, if any, or taxes based upon the net income of ResMan; and (ii) reflect the net cash payable to ResMan, net of any and all such taxes, levies, fees and withholdings of every kind or nature. All such taxes, levies, fees and withholdings and the obligation to pay such amounts to the

appropriate taxing authorities in a timely manner are the sole responsibility of Customer.

4. **Late Payments/No Offset.** Any invoice remaining unpaid with any and all outstanding balance after the due date will be charged a rate equal to the lesser of one and one-half percent (1.5%) or highest rate permitted by law on entire outstanding balance.  Company also reserves the right to charge Customer a collection administration expense fee of $25 per property per month. Customer shall not offset any amounts owed under an Order Form or Statement of Work against any other Order Form or Statement of Work.

5. **Adjustment to Fees.** ResMan reserves the right to increase its fees under an Order Form by providing Customer with written notice of such price increase delivered not less than 90 days prior to the expiration of the initial term or any renewal term as established by Section 9.1 of this Agreement.

6. **Special Exclusion:  Adjustment to Fees Outside of ResMan Control.** From time to time, regulatory, tax, industry-mandated, vendor specific or other charges or fees impacting products and services provided by ResMan may change, requiring ResMan to include new charges or fees in monthly invoices to our Customers in order to continue providing services.  These charges and fees may take place at any time and ResMan reserves the right to pass these fees along to Customer as they occur.  ResMan will make commercially reasonable efforts to communicate fee changes in advance in a timely manner.

7. **Suspension of Services.** Notwithstanding any other provision contained in this Agreement, if Customer fails to pay any amount when due, then in addition to any other rights and remedies available to ResMan hereunder or at law or in equity, ResMan may suspend the Purchased Services and Professional Services under any and all Order Forms and Statements of Work then in effect until all outstanding past due amounts are received by ResMan.  Customer will continue to be charged for monthly subscription, transaction, subscriber and any associated late fees during any period of suspension.Company also reserves the right to impose a service reconnection fee in the amount of $250 per property in the event that any service is suspended and thereafter reactivated.

8. **Means of Payment.** The Customer will provide ResMan with valid and updated credit card or Automated Clearing House (ACH) information as a Means of Payment. If Customer provides credit card information to ResMan, the Customer authorizes ResMan to charge such credit card for all Purchased Services listed in the Order Form(s) unless otherwise canceled with appropriate written notice. If Customer elects to pay with a check, the Customer will be charged a processing fee of forty-five US dollars ($45.00) per check.

**5. OWNERSHIP:**

1. **Ownership of Subscription Services; Customer Feedback.** The Parties agree that ResMan owns all right, title, and interest and any and all Intellectual Property Rights in and to the Subscription Services and the ResMan Technology. Except as expressly provided in this Agreement, ResMan does not grant (and expressly reserves) any rights, expressed or implied, or ownership in or to the Subscription Services and the ResMan Technology. ResMan has a perpetual, irrevocable, royalty-free, worldwide, non-exclusive, transferable, sub-licensable right to make, use, sell, offer for sale, import, or otherwise incorporate into the Subscription Services and/or the ResMan Technology any suggestions, enhancements, recommendations or other feedback provided by Customer and its Users relating to the Subscription Services and/or the ResMan Technology.

2. **Ownership of Customer Data.** Subject to the limited rights granted by Customer to ResMan hereunder, Customer owns all right, title, and interest and any and all Intellectual Property Rights in and to the Customer Data.

**6. WARRANTIES AND DISCLAIMERS:**

1. **By Customer.**

    Customer hereby represents and warrants to ResMan as follows:

1. **Organization and Validity.** Customer is duly organized, validly existing, and in good standing under the laws of the jurisdiction of its organization, and this

Agreement has been duly authorized by all necessary corporate (or other entity) action. This Agreement is the legal, valid, and binding obligation of Customer, enforceable against Customer in accordance with its terms.

2. **Compliance with Laws.** Customer and Customer's Users will comply with all laws, rules, regulations, ordinances, and codes that are applicable to accessing and using the Subscription Services.

3. **Additional Representations.** If Customer is not the Property Owner but manages the Properties on behalf of the Property Owner, then Customer makes the following additional representations and warranties to ResMan:

4. **Authorized Agent.** Customer is the duly authorized agent of the Property Owner for each Property specified in each Order Form and has the authority pursuant to the grant of agency by the Property Owner for each Property to do the following: (1) execute this Agreement, the Order Forms and the Statements of Work, (2) agree to, and to observe and perform, the terms and conditions of this Agreement, the Order Forms and the Statements of Work, and (3) pay any and all fees and other charges under this Agreement, the Order Forms and the Statements of Work.

2. **By ResMan.** ResMan hereby represents and warrants to Customer as follows:

1. **Organization and Validity.** ResMan is duly organized, validly existing, and in good standing under the laws of the State of Texas, and this Agreement has

been duly authorized by all necessary corporate action. This Agreement is the legal, valid, and binding obligation of ResMan, enforceable against ResMan in accordance with its terms.

2. **Compliance with Laws.** ResMan will comply with all laws, rules, regulations, ordinances, and codes that are applicable to providing the Subscription Services.

3. **Limited Subscription Service Warranty.** ResMan warrants that during the Subscription Term the Subscription Service, exclusive of any applications or program code created by or on behalf of Customer, will perform within the terms of this Agreement and the other documentation and specifications provided by ResMan to Customer. If ResMan breaches this warranty, then Customer's sole and exclusive remedy, and ResMan's entire liability, is for ResMan to correct or work around the non-conformity within a reasonable period of time (not less than 60 days) after its receipt during the Subscription Term of written notice from Customer containing a detailed description of the alleged breach. If ResMan is unable to correct or work around the non-conformity as warranted, then Customer may terminate the affected Subscription Service and ResMan will refund any prepaid subscription fees for such Subscription Service for the period covering the remainder of the Subscription Term after the effective date of termination. This Section sets forth Customer's exclusive rights and remedies (and the sole liability of ResMan) in connection with any defect or other failure of

the Subscription Service to perform in accordance with the documentation and specifications.

3. **DISCLAIMER OF WARRANTIES.** EXCEPT FOR THE WARRANTIES EXPRESSLY STATED IN THIS AGREEMENT, RESMAN MAKES NO REPRESENTATIONS, WARRANTIES OR AGREEMENTS WITH RESPECT TO THE PURCHASED SERVICES, AND RESMAN SPECIFICALLY DISCLAIMS AND EXCLUDES, TO THE MAXIMUM EXTENT PERMITTED BY APPLICABLE LAW, ANY AND ALL WARRANTIES OF ANY KIND, INCLUDING, WITHOUT LIMITATION, WARRANTIES ARISING UNDER STATUTE, WARRANTIES OF MERCHANTABILITY, ACCURACY, TITLE, NON-INFRINGEMENT AND FITNESS FOR A PARTICULAR PURPOSE, OR ANY WARRANTIES ARISING FROM USAGE OR TRADE, COURSE OF DEALING OR COURSE OF PERFORMANCE. RESMAN SPECIFICALLY DOES NOT WARRANT THAT THE PURCHASED SERVICES WILL MEET THE REQUIREMENTS OF CUSTOMER OR THAT THEY WILL BE ACCURATE OR OPERATE WITHOUT INTERRUPTION OR ERROR. THE PURCHASED SERVICES AS DELIVERED ARE NOT GUARANTEED TO MEET ALL OF CUSTOMER'S ACTUAL OR STATED REQUIREMENTS AND RESMAN MAKES NO REPRESENTATIONS OR WARRANTIES REGARDING, WITHOUT LIMITATION, THE SECURITY, INTEGRITY, EFFICIENCY OR CAPABILITIES OF THE PURCHASED SERVICES AND CUSTOMER ACKNOWLEDGES THAT CUSTOMER IS SOLELY RESPONSIBLE FOR ALL DECISIONS IT MAKES WITH REGARDS

TO OPERATION OF ITS BUSINESS AND OPERATIONS. CUSTOMER ACKNOWLEDGES THAT IN ENTERING INTO THIS AGREEMENT IT HAS NOT RELIED ON ANY PROMISE, REPRESENTATION OR WARRANTY NOT EXPRESSLY SET FORTH HEREIN.

**7. CONFIDENTIAL INFORMATION:**

1. **Definition; Exclusions.** As used in this Agreement, the term **"Confidential Information"** means all confidential or proprietary information belonging to either Party hereto (the **"Disclosing Party"**) and disclosed or made available to the other Party (the **"Receiving Party"**), whether orally, in writing, by computer memory or other media, that is designated as confidential or that reasonably should be understood to be confidential given the nature of the information and the circumstances of disclosure. Confidential Information includes: (a) with respect to Customer, the Customer Data; (b) with respect to ResMan, the Purchased Services, all pricing and pricing proposals presented to Customer by ResMan, the ResMan Technology, and the terms and conditions of this Agreement and the Order Forms and Statements of Work; (c) with respect to each Party, its business and marketing plans, technology and technical information, product plans and designs, and business processes disclosed by such Party; and (d) all reports, analyses, compilations, studies, or other documents prepared by a Party or its Representatives which contain or otherwise

reflect any Confidential Information of the other Party. Confidential Information does not include information that the Receiving Party can document: (i) is or becomes (through no improper action or inaction by the Receiving Party or any Affiliate, agent, consultant or employee) generally available to the public; (ii) was in its possession or properly known by it, without restriction, prior to receipt from the Disclosing Party; (iii) was rightfully disclosed to it by a third party without restriction; or (iv) is independently developed by the Receiving Party subsequent to such disclosure, by employees without access to, or use of, the Disclosing Party's Confidential Information. The term **"Representatives"** of a Party means any and all officers, directors, employees, consultants, contractors, agents, attorneys, accountants, financial advisors, and other representatives of such Party.

2. **Restrictions on Use.** The Receiving Party agrees not to use any Confidential Information of the Disclosing Party for any purpose whatsoever except to the extent necessary in order to perform its obligations or exercise its rights under this Agreement.

3. **Disclosure.** The Receiving Party shall: (i) hold the Disclosing Party's Confidential Information in strict confidence and treat such Confidential Information with at least the degree of care that it treats its own similar information but no less than a reasonable degree of care; and (ii) not disclose such Confidential Information to any other person or entity or to any of its

Representatives except Representatives who are required to have Confidential Information in connection with such purpose, and then only such Representatives who have signed confidentiality agreements with the Receiving Party or that are subject to professional duties of confidentiality that are no less stringent than those contained herein. Notwithstanding the foregoing, the Receiving Party may disclose Confidential Information to a court or other governmental authority to the extent that such disclosure is required by governmental order, subpoena, or by law, provided that: (a) the Receiving Party notifies the Disclosing Party in writing of such required disclosure as soon as reasonably possible prior to such disclosure and in any event at least five business days prior to such disclosure, specifying in detail the reasons why such disclosure is required; (b) the Receiving Party discloses only that portion of the Confidential Information that it is advised by its counsel that it is legally compelled to disclose; (c) the Receiving Party uses commercially reasonable efforts to cause such disclosed Confidential Information to be treated by such governmental authority as trade secrets and as confidential; and (d) the Receiving Party uses commercially reasonable efforts to obtain such other protective orders and protections with respect thereto as the Disclosing Party may reasonably request.

## 8. INDEMNIFICATION AND LIMITATION OF LIABILITY:

1. **By ResMan.** Except to the extent Customer is responsible for indemnifying ResMan under Section 8.2 or Section 8.3 below and subject to the limitations set forth in Section 8.4 below, ResMan shall defend, indemnify and hold harmless Customer and its officers, directors, employees and agents against any third party claims, suits or actions (a **"Claim"**) that the Purchased Services provided by ResMan infringe any patent, copyright, trademark, trade secret, or other Intellectual Property Right of a third party, provided that Customer: (i) promptly informs and furnishes ResMan with a copy of such Claim; (ii) gives ResMan all relevant evidence in Customer's possession, custody or control; and (iii) gives ResMan reasonable assistance in such Claim, at ResMan's expense, and the sole control of the defense thereof and all negotiations for its compromise or settlement, provided that ResMan shall not compromise or settle any such Claim unless Customer is unconditionally released from all liability.

2. **By Customer.** Customer shall defend, indemnify and hold harmless ResMan and its officers, directors, employees and agents (collectively, the **"ResMan Indemnified Parties"**) against any and all Claims arising from or related, directly or indirectly, to: (a) Customer's use of the Purchased Services in violation of the restrictions in this Agreement; (b) allegations that the Customer Data, third party materials, or Customer's use of the Purchased Services in breach of this Agreement infringes any patent, copyright, trademark, trade secret, or other Intellectual Property Right of a third party or violates any applicable local, state, federal and (if applicable) international laws, regulations and directives; or (c)

Customer's failure to comply with the terms of use of any third party application or service provider used by Customer in conjunction with the Purchased Services, provided that ResMan: (i) promptly informs and furnishes Customer with a copy of such Claim; (ii) gives Customer all relevant evidence in ResMan's possession, custody or control; and (iii) gives Customer reasonable assistance in such Claim, at Customer's expense, and the sole control of the defense thereof and all negotiations for its compromise or settlement, provided that Customer shall not compromise or settle any such Claim unless ResMan is unconditionally released from all liability.

3. **Additional Indemnity by Customer.** If Customer is not the Property Owner but instead is the agent of the Property Owner, Customer shall also defend, indemnify and hold harmless ResMan and the ResMan Indemnified Parties against any and all Claims arising from or related, directly or indirectly, to any misrepresentation regarding the existence and scope of Customer's agency relationship with the Property Owner.

4. **LIMITATION OF LIABILITY.** THE CUMULATIVE, AGGREGATE LIABILITY OF RESMAN TO CUSTOMER FOR ALL CLAIMS ARISING OUT OF OR RELATED TO THIS AGREEMENT AND ALL ORDER FORMS AND STATEMENTS OF WORK HEREUNDER WILL NOT EXCEED THE AMOUNTS PAID OR PAYABLE BY CUSTOMER TO RESMAN HEREUNDER FOR THE TWELVE-MONTH PERIOD IMMEDIATELY PRIOR TO THE EVENT GIVING RISE TO THE CLAIM.

NOTWITHSTANDING THE FOREGOING, IN NO EVENT WILL RESMAN BE LIABLE TO CUSTOMER FOR ANY SPECIAL, INCIDENTAL, CONSEQUENTIAL, INDIRECT OR PUNITIVE DAMAGES ARISING IN ANY WAY OUT OF OR RELATED TO THIS AGREEMENT OR ANY ORDER FORMS HEREUNDER, INCLUDING, WITHOUT LIMITATION, ANY DAMAGES FOR LOSS OF BUSINESS PROFITS, BUSINESS INTERRUPTION, LOST REVENUE, LOSS OF USE, LOSS OF DATA, COSTS OF RECREATING LOST DATA, THE COST OF ANY SUBSTITUTE EQUIPMENT, PROGRAM, OR DATA, OR CLAIMS BY ANY THIRD PARTY. THE EXISTENCE OF MORE THAN ONE CLAIM WILL NOT ENLARGE OR EXTEND THESE LIMITS.

## 9. TERM AND TERMINATION:

1. **Term; Order Form Renewals.** The term of this Agreement commences on the Effective Date for a period of twelve months unless otherwise specified in an applicable Order Form and will automatically renew for successive twelve month periods unless earlier terminated as provided in this Section 9. This Agreement establishes and governs terms of service including but not limited to the annual renewal date for any and all Properties and applicable Services on all Order Forms executed from the Effective Date of this Agreement forward. All Properties and Services are subject to review and potential increases within the terms of

this agreement as of the Effective Date of this Agreement, regardless of the date of any individual Order Form.

2. **Termination of Master Services Agreement.** If there are no Order Forms or Statements of Work then in effect, then either Party may terminate this Master Service Agreement with ten days prior written notice to the other Party. Termination of the Master Services Agreement with ten days' prior written notice applies when the Customer has no active Purchased Services on any Property and Purchased Services cancellations have occurred in accordance with section 2.5 of this Agreement.

3. **Termination for Material Breach.** In the event that: (i) either Party commits any material breach of any of the representations, warranties, covenants, or obligations contained in this Agreement or under an Order Form or Statement of Work; and (ii) such material breach is not cured within 60 days (or within five days with respect to a failure to make any payment required hereunder) after the non-breaching Party gives to the breaching Party written notice of such material breach, then the non-breaching Party will be entitled to terminate this Agreement and/or any Order Form or Statement of Work immediately upon written notice thereof to the breaching Party.

4. **Bankruptcy.** In the event that either Party: (i) voluntarily or involuntarily becomes the subject of a petition in bankruptcy or of any proceeding relating to insolvency, receivership, liquidation, or composition for the benefit of creditors that is not

dismissed or discharged within 60 days after being commenced; (ii) admits in writing its inability to pay its debts generally as they become due (or takes any corporate action tantamount to such admission); (iii) makes an assignment for the benefit of its creditors; or (iv) ceases to do business as a going concern; then in any such instance, the other Party will be entitled to terminate this Agreement immediately upon written notice thereof to the first Party.

5. **Rights and Remedies upon Termination.** In the event of any termination pursuant to either Section 9.3 (Termination for Material Breach) or Section 9.4 (Bankruptcy), then the terminating Party will be entitled to all other rights and remedies which such Party may have under this Agreement and under applicable law.

6. **Data Backup.** ResMan has no obligation to backup or archive any Customer Data. Customer shall at all times, be solely responsible for ensuring that it has a copy of any Customer Data (or portions thereof) that it may need for its ongoing operations outside of the Subscription Services.

7. **Survival.** The rights and obligations contained in Sections 4 (Fees and Payment Terms), 5 (Ownership), 7 (Confidential Information), 8 (Indemnification and Limitation of Liability) and 10 (General Provisions), and all others that by their sense and context are intended to survive the execution, delivery, performance, termination or expiration of this Agreement survive and continue in effect.

**10. GENERAL PROVISIONS:**

1. **Independent Contractors.** The relationship between ResMan and Customer has been and will continue to be that of independent contractors. Neither Party is the legal representative, agent, joint venturer, partner, employee, or employer of the other Party under this Agreement for any purpose whatsoever. Neither Party has any right, power, or authority under this Agreement to assume or create any obligation of any kind or to make any representation or warranty on behalf of the other Party, whether expressed or implied, or to bind the other Party in any respect.

2. **Governing Law, Jurisdiction, and Venue.** This Agreement (and the right and obligations of the Parties with respect to their relationship under this Agreement) are governed by and must be construed and enforced in accordance with the laws of the State of Texas, excluding its conflict of laws rules to the extent such rules would apply the law of another jurisdiction. The Parties hereto consent to the jurisdiction of all federal and state courts in Texas, and agree that venue lies exclusively in Collin County, Texas.

3. **Attorneys' Fees.** The prevailing party in any action or proceeding to enforce this Agreement, including any efforts to collect amounts due under this Agreement by engagement of any attorney, collection agency or otherwise, is entitled to recover

from the other party its costs and attorneys' fees in addition to any damages available to such party.

4. **Specific Performance.** Customer acknowledges that a breach of this Agreement cannot be adequately compensated for by money damages, and agrees that specific performance is an appropriate remedy for any breach or threatened breach hereof. Customer acknowledges that compliance with the provisions of this Agreement is necessary in order to protect the proprietary rights of ResMan. Customer further acknowledges that any unauthorized use or disclosure of Confidential Information of ResMan to any third party in breach of this Agreement will result in irreparable and continuing damage to ResMan. Accordingly, Customer hereby: (i) consents to the issuance of any injunctive relief or the enforcement of other equitable remedies against it at the suit of ResMan, without bond or other security, to compel performance of any of the terms of this Agreement; and (ii) waives any defenses thereto, including, without limitation, the defenses of failure of consideration, breach of any other provision of this Agreement, and availability of relief in damages.

5. **Remedies Cumulative.** Except as otherwise set forth in this Agreement and subject to the terms of this Agreement, including Section 8.4 (Limitation of Liability), all remedies, whether under this Agreement, provided by law, or otherwise, are cumulative and not alternative, may be exercised concurrently or

separately, and the exercise of any one remedy will not be deemed an election of such remedy to the exclusion of the other remedies.

6. **Entire Agreement.** This Agreement (including any exhibits hereto and the Order Forms and Statements of Work which are incorporated herein by this reference) and any other documents expressly contemplated hereby constitute the entire agreement between the Parties with respect to the subject matter hereof. This Agreement supersedes all prior written or oral agreements, communications, and understandings between the Parties with respect to the subject matter hereof. This Agreement is executed in English and no translation of this Agreement will have any effect on the interpretation hereof. In the event of any conflict or inconsistency between this Agreement and any Order Form or Statement of Work, then this Agreement controls and governs over such Order Form or Statement of Work (unless such Order Form or Statement of Work expressly states that it is amending a specific provision of this Agreement, in which case such Order Form or Statement of Work controls and governs over such specific provision).

7. **Amendment.** Neither this Agreement nor any Order Form or Statement of Work may be amended, modified, or supplemented orally. This Agreement and any Order Form or Statement of Work may only be amended, modified, or supplemented by an instrument in writing specifically mentioning this Agreement and signed by both of the Parties.

8.  **Waiver.** No waiver of any provision of this Agreement is effective unless in writing and signed by the Party against whom such waiver is sought to be enforced. No failure or delay by either Party in exercising any right, power, or remedy under this Agreement will operate as a waiver of any such right, power, or remedy. The expressed waiver of any right or default hereunder will be effective only in the instance given and will not operate as or imply a waiver of any similar right or default on any subsequent occasion.

9.  **Notices.** Any notice, demand, request, or other communication required or permitted to be given under this Agreement must be made in writing, properly addressed to the Party to receive notice at the address set forth on the signature page hereof or at such other address for notice as such Party may hereafter designate by written notice to the other Party given in the manner provided herein, and will be deemed given and received: (i) upon receipt if personally delivered; (ii) on the next business day after delivery to a nationally-recognized overnight courier service; (iii) on the third business day after deposit with the U.S. Postal Service if sent by certified or registered mail, return receipt requested, postage prepaid; or (iv) to the extent applicable, by such other method as may be expressly permitted in this Agreement for certain communications.

10.    **Construction.** If any provision of this Agreement is for any reason held to be invalid, illegal, or unenforceable under applicable law in any respect, then: (i) such invalidity, illegality, or unenforceability will not affect the other provisions of

this Agreement; (ii) this Agreement will be construed as if such invalid, illegal, or unenforceable provision were excluded from this Agreement; and (iii) the court in its discretion may substitute for the excluded provision an enforceable provision which in economic substance reasonably approximates the excluded provision. If any provision of this Agreement is for any reason held to be excessively broad as to duration, geographical scope, activity, or subject, then such provision will be construed by limiting and reducing it so as to be enforceable to the extent compatible with the then-applicable law.

11.      **Assignment; Successors and Assigns.** Customer shall not transfer or assign this Agreement or any rights or obligations under this Agreement (whether by operation of law or otherwise) or delegate any duties under this Agreement without the prior written consent of ResMan, which consent may be withheld in its sole discretion, and any purported attempt to do so in violation of this Section will be null and void. Subject to the foregoing, this Agreement is binding upon and inures to the benefit of the Parties hereto and their respective successors and permitted assigns.

12.      **Force Majeure.** If by reason of labor disputes, strikes, lockouts, riots, war, inability to obtain labor or materials, earthquake, fire or other action of the elements, acts of God, accidents, Internet service provider failures or delays, governmental restrictions, appropriations or other causes beyond the reasonable control of a party hereto (each, a **"Force Majeure Event"**), either Party is unable

to perform in whole or in part its obligations as set forth in this Agreement, excluding any obligations to make payments hereunder, then such Party will be relieved of those obligations to the extent it is so unable to perform and such inability to perform will not make such party liable to the other party. Neither Party will be liable for any losses, injury, delay or damages suffered or incurred by the other party due to a Force Majeure Event.

13.  **Counterparts.** This Agreement may be executed in any number of counterparts, each of which is deemed an original, and all of which together constitute one and the same instrument. The Parties agree that a facsimile or pdf of a signed counterpart is as effective and has the same force and effect as the original thereof.