# United States District Court
### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | | |
|---|---|---|
| RESMAN, LLC, | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 4:19-CV-00402 |
| | § | Judge Mazzant |
| KARYA PROPERTY MANAGEMENT, | § | |
| LLC, and SCARLET INFOTECH, INC. | § | |
| D/B/A EXPEDIEN, INC. | § | |
| *Defendants*. | § | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Plaintiff ResMan, LLC's Motion to Strike Expert Testimony of Michael C. Brogioli (Dkt. #131). Having considered the motion and the relevant pleadings, the Court finds that Defendant's motion should be **DENIED.**

### BACKGROUND

This case involves the alleged misuse by Karya Property Management, LLC ("Karya") and Scarlet Infotech, Inc. d/b/a Expedien, Inc. ("Expedien") of ResMan Platform, a property management software owned by Plaintiff ResMan, LLC. Specifically, Plaintiff alleges that Karya and Expedien (collectively, "Defendants") gave third parties access to the ResMan Platform (the "Platform"), aiding in the development of a competing software—Arya (the "Software"). Plaintiff claims that Karya provided Expedien extensive unauthorized access to Plaintiff's proprietary software platform for the express purposes of usurping and unfairly building upon Plaintiff's investments in its platform.

Plaintiff's platform provides property managers with tools designed to help manage virtually every aspect of their property management business. Plaintiff claims its platform is confidential and proprietary. Customers are only able to access the Platform after signing a Master Subscription Agreement ("MSA") that imposes both strict use restrictions and confidentiality obligations on the customer. Plaintiff states that after signing the MSA, Karya provided three non-transferrable User IDs and passwords to the Platform to Expedian for the purpose of Expedian producing a competing software.

On June 2, 2020, Plaintiff filed its Motion to Strike Expert Testimony of Michael C. Brogioli (Dkt. #131). On June 16, 2020, Defendants filed their response (Dkt. #151). On June 23, 2020, Plaintiffs filed a reply (Dkt. #160).

## LEGAL STANDARD

Federal Rule of Evidence 702 provides for the admission of expert testimony that assists the trier of fact to understand the evidence or to determine a fact in issue. FED. R. EVID. 702. In *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, the Supreme Court instructed courts to function as gatekeepers, and determine whether expert testimony should be presented to the jury. *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579, 590–93 (1993). Courts act as gatekeepers of expert testimony "to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kuhmo Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999).

The party offering the expert's testimony has the burden to prove that: (1) the expert is qualified; (2) the testimony is relevant to an issue in the case; and (3) the testimony is reliable. *Daubert*, 509 U.S. at 590–91. A proffered expert witness is qualified to testify by virtue of his or

her "knowledge, skill, experience, training, or education." FED. R. EVID. 702. Moreover, to be admissible, expert testimony must be "not only relevant but reliable." *Daubert*, 509 U.S. at 589. "This gate-keeping obligation applies to all types of expert testimony, not just scientific testimony." *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 244 (5th Cir. 2002) (citing *Kuhmo*, 526 U.S. at 147).

In deciding whether to admit or exclude expert testimony, the Court should consider numerous factors. *Daubert*, 509 U.S. at 594. In *Daubert*, the Supreme Court offered the following, non-exclusive list of factors that courts may use when evaluating the reliability of expert testimony: (1) whether the expert's theory or technique can be or has been tested; (2) whether the theory or technique has been subjected to peer review and publication; (3) the known or potential rate of error of the challenged method; and (4) whether the theory or technique is generally accepted in the relevant scientific community. *Id.* at 593–94; *Pipitone*, 288 F.3d at 244. When evaluating *Daubert* challenges, courts focus "on [the experts'] principles and methodology, not on the conclusions that [the experts] generate." *Daubert*, 509 U.S. at 595.

The *Daubert* factors are not "a definitive checklist or test." *Id.* at 593. As the Supreme Court has emphasized, the *Daubert* framework is "a flexible one." *Id.* at 594. The test for determining reliability can adapt to the particular circumstances underlying the testimony at issue. *Kuhmo*, 526 U.S. at 152. Accordingly, the decision to allow or exclude experts from testifying under *Daubert* is committed to the sound discretion of the district court. *St. Martin v. Mobil Expl. & Producing U.S., Inc.*, 224 F.3d 402, 405 (5th Cir. 2000) (citations omitted).

## ANALYSIS

Plaintiff moves to strike certain opinions in the Expert Report of Michael C. Brogioli, Ph.D., dated April 28, 2020 ("Brogioli Report"). Plaintiff provides four categories of opinions

that it considers to be "unsupported or objectionable" or "simply need to be resolved in a way consistent with the Court's resolution of certain issues raised by Defendant's Motion to Strike Certain Testimony of Dr. Kursh" ("Kursh Motion") (Dkt. #131 at pp. 2–3).

First, Plaintiff challenges the reliability of two statements offered by Dr. Brogioli: (1) "ResMan's alleged confidential and proprietary information was generally known and/or ascertainable by the public," and (2) "there is an abundance of evidence showing independent development of the Arya platform" (Dkt. #131 at p. 3).

Second, Plaintiff argues Dr. Brogioli lacks the "'specialized knowledge' necessary to qualify him as an expert on barriers to entry in the property management software market" and instead proffers a lay person's reading of the facts. (Dkt. #131 at pp. 8, 12).

Third, Plaintiff argues Dr. Brogioli "inappropriately opines on a purported discovery issue" (Dkt. #131 at p. 3).

Fourth, Plaintiff claims that "Dr. Brogioli offers testimony that is the same as, or similar to, the testimony of Dr. Kursh that Defendants seek to exclude in their Kursh Motion" and that, should the court exclude Dr. Kursh's testimony, it should also "exclude Dr. Brogioli's similar testimony on the same grounds" (Dkt. #131 at p. 3).

The Court has reviewed Dr. Brogioli's approximately three-hundred-page report, along with the related exhibits, and determines that Plaintiff's Motion to Strike should be denied.

**A. Exclusion is an Improper Vehicle for Three of Plaintiff's Challenges.**

Exclusion is not the proper vehicle for the resolution of those of Plaintiff's challenges that ultimately "relat[e] to the bases and sources of an expert's opinion [which] affect the weight to be assigned that opinion rather than its admissibility and should be left for the jury's consideration." *Primrose Operating Co. v. Nat'l Am. Ins. Co.*, 382 F.3d 546, 562 (5th Cir. 2004) (quoting *United*

*States v. 14.38 Acres of Land, More or Less Situated in Leflore County*, 80 F.3d 1074, 1077 (5th Cir. 1996)); *see* Dkt. #131 at pp. 5–8, 13. "It is the role of the adversarial system, not the court, to highlight weak evidence." *Primrose*, 382 F.3d at 562.

Plaintiff contends that Dr. Brogioli reaches impermissibly broad conclusions concerning both the generally known or ascertainable nature of Plaintiff's confidential and propriety information and the amount of evidence showing independent development of the Arya Platform. Plaintiff argues that exclusion of the testimony is proper because Dr. Brogioli's own analyses do not support his conclusions and, in fact, contradict them. A contradiction, or "shaky" argument alone, however, does not warrant exclusion of the otherwise admissible testimony. *See Daubert*, 509 U.S. at 596. Instead, "'[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof' will serve as the proper antidote for attacking these potentially 'shaky' arguments." *Id*. Due to Plaintiff's ability to cross-examine Dr. Brogioli, present him with contrary evidence, and carefully argue the burden of proof to the jury—all ways that the Supreme Court found appropriate in lieu of exclusion—the Court declines to strike this testimony.

Exclusion is also improper for Plaintiff's contention that Dr. Brogioli lacks specialized knowledge necessary to qualify him as an expert on barriers to entry in the property management software market. Due to this lack of specialized knowledge, Plaintiffs argue that Dr. Brogioli's opinion is no more than a lay person's reading of the facts. Further, Plaintiff argues that the opinion offered by Dr. Brogioli on the topic is unreliable. Dr. Brogioli's expertise, while not in property management software or the property management software market, is in the software industry. "An expert witness is not strictly confined to his area of practice but may testify concerning related applications." *U.S. v. Wen Chyu Liu*, 716 F.3d 159, 168-69 (5th Cir. 2013). Dr. Brogioli has credentials in both academic and software industry experience. Further, the Court finds that Dr.

Brogioli's testimony is permissible due to his extensive experience in the software development field.  Additionally, "a lack of specialization does not affect the admissibility of the opinion, but only its weight." *Id*.   Dr. Brogioli's lack of experience in the property management software market does not render him unable to offer expert opinions on that topic, nor does it render his opinions unreliable.  Thus, the Court declines to strike this testimony.

Plaintiff also requests that the Court strike the testimony of Dr. Bogioli that is the same as, or substantially similar to, Dr. Kursh's testimony.  Plaintiff contends that because Defendants sought to strike Dr. Kursh's testimony on these matters, the Court should likewise strike Dr. Brogioli's.  Plaintiff offers no legal authority to support its conclusion.  Defendants argue that the testimony of Dr. Kursh bears no resemblance to Dr. Brogioli's testimony.  Further, while Plaintiff makes arguments in favor of exclusion, and attempts to draw parallels between the two experts, they are different reports. Absent any case law or legal authority supporting Plaintiff's factual theory, the Court declines to strike this testimony.

### B. The parties have resolved a purported discovery issue that the court need not address.

Plaintiff takes issue with Dr. Brogioli's statement that data documenting "Expedien's access to the ResMan Platform" was missing from data shared with the defendant. (Dkt. #131 at pp. 12–13).  Defendant responds, and Plaintiff accepts, that "Dr. Brogioli does not intend to offer any opinion that Plaintiff failed to produce a later set of data." (Dkt. #151 at p. 10; Dkt. #160 at p. 5).  Thus, the Parties appear to have resolved this issue on their own, and the Court does not find reason to address it further.

## CONCLUSION

It is therefore **ORDERED** that Plaintiff ResMan, LLC's Motion to Strike Expert Testimony of Michael C. Brogioli (Dkt. #131) is hereby **DENIED**.

**SIGNED this 1st day of October, 2020.**

_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE