# United States District Court
### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | | |
|---|---|---|
| RESMAN, LLC, | § § § | |
| *Plaintiff*, | § § | |
| v. | § § § | CIVIL ACTION NO. 4:19-CV-00402 JUDGE MAZZANT |
| KARYA PROPERTY MANAGEMENT, LLC, and SCARLET INFOTECH, INC. D/B/A EXPEDIEN, INC. | § § § § | |
| *Defendants*. | | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Defendants' Sealed Motion to Strike Plaintiff's Claim for Lost Profit Damages (Dkt. #185). Having considered the motion and the relevant pleadings, the Court finds that Defendant's motion should be **DENIED**.

### BACKGROUND

This case involves the alleged misuse by Karya Property Management, LLC ("Karya") and Scarlet Infotech, Inc. d/b/a Expedien, Inc. ("Expedien") of ResMan Platform, a property management software owned by Plaintiff ResMan, LLC. Specifically, Plaintiff alleges that Karya and Expedien (collectively, "Defendants") gave third parties access to the ResMan Platform (the "Platform"), aiding in the development of a competing software—Arya (the "Software"). Plaintiff claims that Karya provided Expedien extensive unauthorized access to Plaintiff's proprietary software platform for the express purposes of usurping and unfairly building upon Plaintiff's investments in its platform.

Plaintiff's platform provides property managers with tools designed to help manage virtually every aspect of their property management business. Plaintiff claims its platform is confidential and proprietary. Customers are only able to access the Platform after signing a Master Subscription Agreement ("MSA") that imposes both strict use restrictions and confidentiality obligations on the customer. Plaintiff states that after signing the MSA, Karya provided three non-transferrable User IDs and passwords to the Platform to Expedian for the purpose of Expedian producing a competing software.

Defendants filed the present Motion on August 14, 2020 (Dkt. #185). On August 25, 2020, Plaintiff filed its Response (Dkt. #198). On September 1, 2020, Defendants filed their Reply (Dkt. #205). On September 8, 2020, Plaintiff filed its sur-reply (Dkt. #208).

## ANALYSIS

Defendants ask the Court to: (1) strike Plaintiff's claim for lost profits damages as set forth in the parties' Proposed Joint Pretrial Order; (2) not allow Plaintiff to submit a claim for lost profits to the jury; and (3) grant Defendants such other and further relief to which they may show themselves entitled. In support of their requests, Defendants argue that although Plaintiff claims entitlement to lost profits, it has failed to identify them in initial disclosures or produce relevant documents or information during the discovery process. Further, Defendants contend that Plaintiff has refused to disclose or produce any information or documents to support or elaborate upon its "lost profits" theory despite Defendants' repeated requests and complaints.

Plaintiff asks the Court to deny Defendants' Motion and allow the lost profits claim to go to the jury at trial for a determination. Plaintiff argues that it did provide abundant evidence in support of its claim for lost profits damages. Plaintiff also contends that Defendants did not pursue any of the procedural tools available to address alleged discovery or evidentiary deficiencies.

**Nondisclosure Under Rule 26(a)(1)(A)(iii)**

Defendants' first argument revolves around Plaintiff's "deficient" initial disclosure with respect to its lost profits claim. A party's initial disclosure must contain "a computation of each category of damages claimed by the disclosing party." FED. R. CIV. P. 26(a)(1)(A)(iii). Plaintiff's initial disclosure states that "[p]ursuant to Rule 26(a)(1)(A)(iii), [Plaintiff] has prayed for: (i) compensatory, consequential, and/or monetary damages, (ii) pre- and post-judgment interest, and (iii) attorneys' fees, but has not yet calculated or otherwise quantified such damages. [Plaintiff] will supplement this disclosure as allowed and required by the Federal Rules of Civil Procedure."

One proper measure of damages in a trade secret case is the value of the plaintiff's lost profits. *Bohnsack v. Varco, L.P.*, 668 F.3d 262, 280 (5th Cir. 2012) (citing *Jackson v. Fontaine's Clinics, Inc.*, 499 S.W.2d 87, 89–90 (Tex. 1973))[1]. While some claims, such as breach of contract and violations under the Texas Deceptive Trade Secrets Act, incorporate lost profits as a subcategory of consequential damages, the Court is unaware of any precedent applying this standard to trade secret cases.[2] The Plaintiff's initial disclosure only states that it seeks "(1) compensatory, consequential, and/or monetary damages, (ii) pre- and post-judgment interest, and (iii) attorneys' fees," but the disclosure does not state that Plaintiff prays for lost profits.

Due to the lack of specifically including lost profits in its initial disclosures, the Court determines that Rule 37(c) applies. However, the Plaintiff's non-disclosure may not be fatal if the failure was substantially justified or is harmless. *See* FED. R. CIV. P. 37(c).

---

[1] Plaintiffs bring claims under both federal and Texas Trade Secrets Acts. Both statutes are modeled after the Uniform Trade Secrets Act and have substantially similar language. The Court will therefore apply the same standard to both claims.
[2] Further, Plaintiff's do not contend that lost profits are included under consequential damages.

**Rule 37(c) Analysis**

No facts indicate that the non-disclosure was substantially justified.  Plaintiff has offered no evidence that it was unable to make the disclosure.  Further, Plaintiff has not offered evidence that explains why the disclosure was not made.  Rather, Plaintiff relies on its pleading of lost revenues, its answers to Defendants' interrogatories, its production of financial documents supporting its lost profits claims, various witness testimony as to lost profits, and Defendants' inaction with the Court's procedural mechanisms to compel discovery or dismiss the claims for lost profits to support the claim's viability.  The Court therefore considers Plaintiff's contentions to fall under the harmless analysis, though not labeled as such.

Courts typically apply four factors whether a "violation of Rule 26 requiring disclosure…is harmless, such that the evidence may be used at trial despite non-disclosure, the trial court's discretion is to be guided by the consideration of four factors: (1) the importance of the evidence or witness' testimony; (2) the prejudice to the opposing party of allowing the evidence in; (3) the possibility of curing such prejudice by granting a continuance; and (4) the explanation, if any, for the party's failure to identify the witness or evidence." *Texas Instruments, Inc. v. Hyundai Elec's. Industries, Co., Ltd.*, 190 F.R.D. 413, 416 (E.D. Tex. Feb. 23, 1999).  The Court notes that the factors relate to witnesses and evidence—not pleadings, claims, or violations of Rule 26(a)(1)(A)(iii).  The Court does find the factors persuasive, however, and will apply a modified version to Plaintiff's claim.

No dispute exists as to the importance of the claim.  If this Court strikes Plaintiff's claim for lost profit damages, Plaintiff cannot recover that amount.  The claim is essential to allowing the jury to consider evidence and award an amount reasonable for the harm suffered by Plaintiff.  The Court finds this favor weighs heavily in favor of considering the nondisclosure harmless.

Further, no party seeks a continuance in this case.  The case was filed on June 3, 2018.  The final pretrial conference is approximately one month away—October 23, 2020.  Trial is thereafter set for November 2, 2020.  In fact, Defendants have argued the prejudice that results from being sent information so close to the date of trial with no apparent plea for a continuance.  The impending trial date, and impracticality of continuing the case at this late in the game, requires the Court to determine that the availability of a continuance is non-existent.  Thus, this factor weighs in favor of striking the lost profits claim.

Plaintiff gave no explanation for its reasoning behind the nondisclosure under Rule 26(a)(1)(A)(iii).  Rather, Plaintiff insists that the lost profits claim was, in fact, disclosed and supported.  While Plaintiff gives no explanation, Defendants do not argue what that explanation might be either.  The lack of evidence as to this factor, in conjunction with the Plaintiff offering no explanation, tilts this factor in favor of striking the lost profits claim.

The Court now analyzes the only disputed factor—the amount of resulting prejudice to Defendants if the Court allows the claim to continue to trial.  Defendants argue that they will have no opportunity to examine and test Plaintiff's lost profits theory or the underlying data, despite repeating requests.  Plaintiff argues that it has made clear from the very start of this case that the damages sought include lost profits.

In Plaintiff's First Amended Complaint, Plaintiff did plead that damages sought for Defendants' violation of both federal and Texas trade secrets law included lost profits.  In Plaintiff's Objections and Second Supplemental Responses to Defendants' First Set of Interrogatories, Plaintiff indicated that it was seeking, among other damages, "to the extent Arya launches in the market, [Plaintiff]'s lost profits or Defendants' profits" (Dkt. #198, Exhibit 1 at pp. 18–19).  Plaintiff also submitted other financial documents, although partially redacted, to

Defendants. In fact, Defendants used some of the financial documents received for its Trial Exhibit List. Further, Plaintiff provided detailed interrogatories relevant to lost profits well before discovery ended. Plaintiff also presented multiple witnesses capable of testifying as to lost profits.

The parties vigorously contest whether Defendants should have utilized the procedural tools available to address alleged discovery or evidentiary deficiencies. Plaintiff claims that Defendants' could have pursued the discovery received concerning lost profits further if they were unsatisfied with Plaintiff's production. Further, Plaintiff alleges that Defendants could have raised deficiency allegations with the Court or filed a properly timed motion for summary judgment. Defendants contend that they are not responsible for Plaintiff's failure to satisfy its evidentiary burden in seeking lost profits or its obligation to comply with the Federal Rules.

While nothing requires a defendant to go through the Court, a defendant's failure to do so will be considered. *See Meaux Surface Protection, Inc.*, 607 F.3d 161, 167–8 (5th Cir. 2010) (affirming the district court's decision to allow a plaintiff to amend his pleadings at trial to expressly include lost profits). Defendants in this case requested certain discovery pertaining to damages. Plaintiff supplied documentation supporting its claim for lost profits. Defendants had constructive, if not actual, knowledge of the lost profits claim. It is clearly possible that Defendants found the pleadings, interrogatory answers, documents, and witness testimony deficient. However, Defendants chose not to pursue any further relief until the filing of this motion to strike all lost profit damages. Defendants did not seek to teleconference with the Court concerning the discovery dispute, Defendants did not seek to have the Court compel production, and despite claiming no or insufficient evidence, the Defendants did not file a summary judgment motion. The lack of Defendants to seek less dramatic remedies prior to the filing of the present motion to strike,

despite having knowledge of the lost profits claim, heavily tilts in favor of allowing the claim to proceed.

Defendants rely on one statement made in by Plaintiff in Plaintiff's Response to Summary Judgment to support its contention that Plaintiff expressly disclaimed a lost profits remedy. However, the language of the sentence itself, that "[Plaintiff], however, does not seek future lost profits from lost business in its Motion, but rather an injunction." The Court is not convinced that this statement, when considering the context and language, "expressly disclaims" the claim to lost profits. First, the statement comes in Plaintiff's Reply Brief in Further Support of its Motion for Summary Judgment. It does not appear in any amended pleading, in any interrogatories, any requests for admission, or any other discovery tool. Further, the language itself merely states that Plaintiff is not seeking any "future lost profits." The language is ambiguous as to when "future" begins—future could mean after the misappropriation occurred, after the suit was filed, or even after judgment is entered in the case. Without that degree of certainty, the Court does not feel that striking the lost profits claim is appropriate.

Two factors fall in favor of striking the lost profits claim. Two factors fall in favor of holding the claim harmless and allowing it to proceed. After reviewing the analysis and strength of the factors, one falls heavily in favor of allowing the claim to proceed, one falls in favor of allowing the claim to proceed, and two fall in favor of striking the claim. Though the numbers for and against are equal, the strength of the factors fall more heavily in favor of allowing the claims to proceed to trial.

## CONCLUSION

It is therefore **ORDERED** that the Defendant's Sealed Motion to Strike Plaintiff's Claims for Lost Profit Damages (Dkt. #185) is hereby **DENIED**.

**SIGNED this 1st day of October, 2020.**

_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE