# EXHIBIT 2

```
                    UNITED STATES DISTRICT COURT
                     EASTERN DISTRICT OF TEXAS
                         SHERMAN DIVISION

 RESMAN, LLC                              | DOCKET 4:19CV402
                                          |
 VS.                                      | MARCH 8, 2021
                                          |
 KARYA PROPERTY MANAGEMENT, LLC           | 10:02 A.M.
 AND SCARLET INFOTECH, INC.               |
 D/B/A EXPEDIEN, INC.                     | SHERMAN, TEXAS
```

---

REPORTER'S TRANSCRIPT OF JURY TRIAL

MORNING SESSION

BEFORE THE HONORABLE AMOS L. MAZZANT, III
UNITED STATES DISTRICT JUDGE, AND A JURY

---

APPEARANCES:

FOR THE PLAINTIFF:       MARIA WYCKOFF BOYCE
                         CRISTINA ESPINOSA RODRIGUEZ
                         JILLIAN C. BECK
                         HOGAN LOVELLS US LLP
                         609 MAIN STREET, SUITE 4200
                         HOUSTON, TEXAS 77002

                         MIKE E. JONES
                         POTTER MINTON
                         110 N. COLLEGE, SUITE 500
                         TYLER, TEXAS 75702


FOR THE DEFENDANTS:      MICHAEL E. RICHARDSON
                         HILLIARD MARTINEZ GONZALES LLP
                         719 S. SHORELINE BOULEVARD
                         CORPUS CHRISTI, TEXAS  78401

                         SEEPAN PARSEGHIAN
                         BECK REDDEN, LLP
                         1221 MCKINNEY, SUITE 4500
                         HOUSTON, TEXAS  77010

1          Karya cut off Expedien's access of using passwords
2    and user IDs, but ResMan terminated the contract with my
3    client and brought this suit.
4          Now, importantly, there have been no damages.  The
5    program, Arya, is not being used internally or externally
6    to this very day.  There is no completion of the Arya
7    program to this day.  Not one customer has been lost by
8    ResMan.  And the Court has entered an injunction -- we will
9    submit to those that hear the case -- by agreement.  There
10   is a dispute about whether it was agreed to or not.  But
11   the point is the Court controls whether the Arya program
12   can be further developed and ever used.
13         ResMan has done well.  I commend them for it.
14   Their revenues are up every year.  They have done well, and
15   they have not been harmed.
16             THE COURT:  Thank you, Mr. Sayles.
17         So you can see, ladies and gentlemen, there is a
18   dispute among the parties.  Many of these issues are very
19   contested.  So...
20         Now, we're beginning a process called "*voir dire*."
21   It's a French term that means to speak the truth.  This
22   process enables the Court and the parties to determine
23   which of you would make the best prospective juror for this
24   particular case.  This will allow the parties to ask you
25   questions.  The process works best, as the questions are

1           Now, one of those is the law here on three claims
2    that are made.  Judge Mazzant will give it to you.
3           Would you show 8004, Mr. Glass?
4           There are three claims here.  And Judge Mazzant
5    will instruct you on the law.  And we know that he's going
6    to instruct you, as I have on this board, breach of
7    contract has four elements; tortious interference with
8    contract, it has three elements; misappropriation of trade
9    secrets, and it has three elements.
10          Now, you see that there is a commonality in that
11   each claim the plaintiff makes and must prove requires
12   proof of damages or loss, in each claim.
13          Is there anybody that feels that, well, if -- on
14   breach of contract, if there is a valid contract,
15   performance has been tendered and there is a breach, well,
16   you must owe something, without proof?  Anybody feel that
17   way?  Because the law requires that fourth element of
18   damages.
19          Anybody that can't follow that?
20          Over here on this side, same thing.
21          You will hear in this case that Karya did indeed
22   give passwords and user IDs to Expedien to build this
23   product.  They did.
24          Now, if you decide that that is a material breach
25   of the contract by the defendant to find for the plaintiff,

1   you still must find that fourth element, damages sustained
2   by the plaintiff as a result of the breach.
3           I'm going to ask it one more time because this is
4   so important to us.  Is there anyone who cannot do that and
5   hold the plaintiff to the proof of all the elements that
6   Judge Mazzant will lay out?  Anybody cannot do that?
7           Looking over here on the other side of the
8   courtroom.
9           All right.  Now, one thing I want to mention to
10  you is that in our country the courthouse doors in a civil
11  case are open to everyone.  I personally -- even though my
12  client has been sued here, I personally -- philosophically,
13  I agree with that.  And this is a civil case where money
14  damages are being sought.  It is not a criminal case.  No
15  one's liberty is at stake.  It's about money damages
16  between businesses.
17          And under the law, if you feel you have been
18  aggrieved, you can file a lawsuit and get into court just
19  as we are here.
20          On the criminal side -- which this is not -- there
21  is a grand jury that screens cases and there has been a
22  determination of probable cause in a criminal case.  Not so
23  in a civil case.  The courthouse doors are open to anyone
24  who wants to file.
25          Now, here is my question:  Is there anyone who

1                PROSPECTIVE JUROR:  Let me clarify.
2                MR. SAYLES:  Yes.
3                PROSPECTIVE JUROR:  I would share it with my
4    wife --
5                THE COURT:  Wait, wait.  One second.
6                And just stand and say your juror number.
7                PROSPECTIVE JUROR:  14.  I would share it with my
8    wife but nobody else.
9                MR. SAYLES:  All right, sir.  Thank you.
10               Now, you've heard me say, I think at least twice
11   now, that the defense in this case has serious issues with
12   whether ResMan has suffered any damage or harm.  Now, you
13   haven't heard the evidence yet, and we look forward to it
14   when you do, but you know what we believe the evidence is
15   going to show because I've said so.
16               And what I'm wondering is if all of you would be
17   willing to accept that the elements of a breach of contract
18   could be found but except for that last one -- without harm
19   or financial damages, kind of like a no harm, no foul, to
20   put it in plain language.
21               If so, are you open to the suggestion that there
22   could be a breach of the contract without any harm or
23   monetary damages?
24               If you're open to that, raise your hand.
25               Okay.  If you're open to there could be a breach

1  but no damages -- if you're open to that, raise your hand.
2           1, 2, 4, 6, 7, 9, 13, 15, 14, 16, 17, 2 -- did I
3  say 2?
4           Okay.  All right.  Over here, I'm going to repeat
5  it.  If you are open to considering whether there could be
6  a breach of the contract but without any harm or monetary
7  damages, if you're willing and open to considering it,
8  raise your hand.
9           Number 21, 24, 28, 26, 31 --
10          PROSPECTIVE JUROR:  30.
11          MR. SAYLES:  30, sorry.  29, 32 -- 3, 32.
12          All right.  Okay.  This is the same question but
13 it's asked in the opposite way and I'm going to ask it in
14 the opposite way.  If you're thinking, Mr. Sayles, if your
15 client breached the contract, no matter whether there was
16 any damage that they prove or not, you owe money, period?
17          Anybody feel that way, this side?
18          Number 14.
19          Let me move over here to the right.
20          PROSPECTIVE JUROR:  23.
21          MR. SAYLES:  23.
22          All right.  Anybody else?
23          You see, what we are asking is that those of you
24 who are seated on the jury, you follow the instructions of
25 the Judge and require the proof of every element.

1  thousands.  And even then -- this is Dr. Kursh's own
2  document -- he takes a process flow, and then he puts a red
3  box around the part that he says is the same or similar.
4       So here he's got eight out of thousands.  And even
5  on this one, he's got less than a quarter that he even says
6  is the same or similar.
7       Here's another one, less than half.
8       Here's another one, about half.
9       And so we believe when you listen to Dr. Kursh,
10 they are not going to be able to meet their burden.
11      Reports.  He identified three reports that he
12 analyzed and he said were the same between ResMan and
13 Karya.
14      This aged receivables report, I believe that looks
15 like a standard business report that I might see in my law
16 firm.  I think this is the one you're also going to see
17 that RealPage has in its possession and they always ask
18 ResMan customers to get a copy of.
19      Bank deposit detail, nothing unique there.
20      Gross potential rent.  Again, this has got basic
21 information.  There's not anything unique about it.
22      ==Started here.==  ==Still under development.==  ==It's not==
23 ==being used internally, not being sold.==
24      ==And you heard a little bit about this when==
25 ==Mr. Sayles talked to you.==  ==As soon as this lawsuit was==

1  filed, ResMan asked the Court to get a preliminary
2  injunction.
3              THE COURTROOM DEPUTY:  You have three minutes.
4              MR. RICHARDSON:  I'm sorry?
5              THE COURTROOM DEPUTY:  You have three minutes.
6              MR. RICHARDSON:  Thank you.
7           My clients agreed to enter -- the Court entering a
8  preliminary injunction.  And they didn't think they had
9  done anything wrong, but they wanted to make sure they
10 hadn't done anything wrong.  And they wanted either the
11 Court or a jury to look at everything and decide.
12          So they entered into an injunction.  And you're
13 going to hear there were a few disputes about the exact
14 wording of the injunction, but it was mostly agreed.  And
15 the Court's injunction, until he orders further, we cannot
16 use it commercially or disseminate it, i.e., sell it.  So
17 that, ladies and gentlemen, means there are no damages.  As
18 I told you, we haven't made one dollar off the product; and
19 ResMan hasn't lost one dollar.
20          This is just a copy of the letter that I sent to
21 ResMan's lawyer saying, hey, we agreed to your proposed
22 TRO; and you're going to see we agreed to everything he was
23 asking except one thing.  And when the Court had to rule on
24 that issue, they ruled in our favor.  And then we had a
25 dispute about some more words.  Bottom line, though, an

1  "Through the above stipulation, the defendants have agreed
2  to plaintiff's proposed TRO terms except part (c) with an
3  exception for allowing Karya to access its own data from
4  the ResMan software."
5           And I'm going to stop right there.  When that was
6  raised Mr. Winston agreed they could have their data,
7  didn't he?
8  A.  Yes.  It's their data.
9  Q.  Okay.  And it goes on to say "and part (d) except for
10 the phrase 'to develop.'  You indicated that the proposed
11 revision to part (c) should not be a problem.  With respect
12 to part (d), the Arya software will not be completed until
13 December 2019 at the earliest, and the defendants are
14 stipulating that even if the software is finished sooner,
15 it will not be disseminated to any third party absent
16 agreement of ResMan or dissolution of the TRO."
17          Do you see that?
18 A.  Yeah.  Remember, we wanted the development to stop as
19 well because of the --
20 Q.  Right.
21 A.  -- because of the impact on our IP -- potential impact
22 on our IP.
23 Q.  All right.
24 A.  Yeah.
25 Q.  And so it is fair to say that Karya and Expedien agreed

1  to everything ResMan was requesting with two exceptions,
2  and ResMan even agreed with one of those exceptions; is
3  that right?
4  A.  Yeah.  We're not going to tell a customer that they
5  can't have their data, but we wanted them to stop
6  developing the application and the product and the software
7  because of the, you know, potential infringement that we
8  believed had happened on our IP.  But you're correct.
9  Q.  Now, if we look at -- so the only dispute we had was
10 whether ResMan could continue to develop Arya internally.
11 Everything else was agreed to; is that right?
12 A.  It was Karya to continue to develop.  You said ResMan.
13 Q.  Did I say it wrong?
14 A.  Yeah, you did.  Yeah.
15 Q.  Okay.
16 A.  Not a problem.
17 Q.  All right.  And the Court entered an injunction
18 pursuant to the agreement, which is DX-330.
19          And if we look at this injunction -- by the way,
20 have you re-read it lately?  I don't want to give you a
21 quiz on it if you haven't.
22 A.  Not lately.  I'll be honest with you, I read it when it
23 first was entered into but not really much.
24 Q.  All right.  But you do know that this injunction
25 remains in place to this very day?

1  A.  I believe so, yes.
2  Q.  Okay.  Now let's look at Item D.
3      And do you see that the way the order was entered
4  by the Court, it does not prohibit Karya from developing
5  the product internally; it only prevents taking further
6  action to use commercially or disseminate?  Do you see
7  that?
8  A.  Correct.  That's what I mentioned earlier, yeah.
9  Q.  And you do understand now that Karya has ceased
10 development of Arya?
11 A.  I don't know that.
12 Q.  Okay.  Now, I'm going to switch subjects now to the
13 valuation issue for just a moment.  And, again, I'm not
14 criticizing you, but you indicated that you don't have a
15 college degree?
16 A.  That's correct.
17 Q.  You're not an accountant?
18 A.  That's correct.
19 Q.  You are not an economist?
20 A.  Yeah, that's correct.
21 Q.  And you don't have any type of valuation certification
22 that you've ever obtained, do you?
23 A.  That's correct.
24 Q.  And there is no way that you can tell the jury how much
25 that ResMan has spent developing a particular function of

1  convey to the jury as to that's not entirely true?

2          I mean, the jury could find certain causes of
3  action that would allow an injunction to be done after the
4  fact in terms of being made permanent.  So their liability
5  findings do determine whether or not this Court does
6  anything more permanent on the injunction, and that's
7  something that would be decided.  Of course, I'm not saying
8  that I would grant a permanent injunction; I'm just saying
9  that's the only way the Court could consider that remedy,
10 is if they find liability.

11          ==But the defense has introduced this in a way that==
12 ==says, well, there's no damages to them; and because the==
13 ==Court is holding this up, it's up to the Court.==

14          That technically is true.  You didn't -- that's
15 not a misrepresentation.

16          But just something to think about.  I'm not sure
17 how I address it so -- in the Court's instructions about
18 the issue of the injunction or whether there's ever a
19 future injunction.

20          Do you have any thoughts on that?

21          MR. RICHARDSON:  I do not, but I guess I -- just
22 to protect the record, I take issue with us having
23 introduced that because if you will recall, we filed a
24 *motion in limine* to exclude it.  The Plaintiffs, at the
25 last trial, thought that Mr. Sayles had said something

1        THE COURT:  Okay.  Okay.  That's why I was just
2   curious, because you made it seem like y'all had agreed.
3   Just because it is on an exhibit list -- there are many
4   exhibits on an list that may or may not be used.  And under
5   my rules, unless it is utilized, it is not part of the
6   record.
7        Okay.  Yeah, because I'm just trying to figure out
8   again how to address this.  This issue was raised -- it
9   became part of this trial because of the defendants'
10  actions, so I'm just still trying to figure out what the
11  appropriate response is.  It's clear by your brief the
12  defendant is using this as kind of a bar to damages.  And
13  that's my problem, is that it gives a false sense.
14       And I understand in your brief you think that it
15  is something that could just be done with argument.  The
16  problem with that is that -- how does a jury fully
17  understand that it's really not a bar to damages?  That's
18  why I asked the question whether or not you were going to
19  pursue Arya if you would win.  And so I don't see how you
20  can use it as a shield, which is to the disadvantage of the
21  plaintiff, when the reality is you have full expectation,
22  if you win the lawsuit, to ask the injunction be dissolved
23  and proceed to use it and compete with them.  So --
24       MR. RICHARDSON:  Our answer to that, Judge, is
25  it's a piece of evidence, like 500 other pieces of evidence