**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION**

| | | |
|---|---|---|
| RESMAN, LLC, | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | Civil Action No. 4:19-cv-00402-ALM |
| | § | |
| | § | |
| KARYA PROPERTY | § | |
| MANAGEMENT, LLC, and | § | |
| SCARLET INFOTECH, INC. D/B/A | § | |
| EXPEDIEN, INC. | § | |
| | § | |
| *Defendants*. | § | |

### RULE 50(a) MOTION FOR JUDGMENT AS A MATTER OF LAW

**BRADLEY ARANT BOULT CUMMINGS LLP**
Richard A. Sayles
State Bar No. 17697500
dsayles@bradley.com
Mark D. Strachan
State Bar. No. 19351500
mstrachan@bradley.com
4400 Renaissance Tower
1201 Elm Street
Dallas, Texas 75270
Telephone No. (214) 939-8700
Facsimile No. (214) 939-8787

**HILLIARD MARTINEZ GONZALES LLP**
Michael E. Richardson
State Bar No. 24002838
mrichardson@beckredden.com
719 S. Shoreline Blvd.
Corpus Christi, Texas 78401
Telephone: (361) 882-1612
Facsimile:  (361) 882-3015

**BECK REDDEN LLP**
Seepan V. Parseghian
State Bar No. 24099767
sparseghian@beckredden.com
1221 McKinney Street, Suite 4500
Houston, TX 77010
Telephone:  (713) 951-3700
Facsimile:  (713) 951-3720

**ATTORNEYS FOR DEFENDANTS KARYA PROPERTY MANAGEMENT, LLC
AND SCARLET INFOTECH, INC.**

## TABLE OF CONTENTS

**Page**

Table of Contents ............................................................................................... i

Table of Authorities ........................................................................................... iii

Introduction ........................................................................................................ 1

I.      Breach of Contract. ................................................................................. 1

        A.      No evidence of breach. ................................................................. 1

        B.      No evidence of performance. ....................................................... 5

        C.      No evidence of causation. ............................................................ 5

        D.      No evidence of damages. .............................................................. 6

                1.      No evidence of lost profits from any breach of contract. .......... 6

                2.      Restitution and disgorgement remedies are not available for
                        breach of contract. ....................................................... 9

II.     Tortious Interference with Contract. ..................................................... 12

        A.      Tortious interference is displaced by TUTSA. ......................... 12

        B.      No evidence of interference. ...................................................... 13

        C.      No evidence of causation. .......................................................... 14

        D.      No evidence of damages. ............................................................ 14

        E.      No evidence to support exemplary damages. ............................ 16

III.    Misappropriation of Trade Secrets ........................................................ 17

        A.      No evidence of "trade secrets." ................................................. 17

        B.      No evidence of misappropriation. .............................................. 23

        C.      No evidence of causation. .......................................................... 25

        D.      No evidence of damages, disgorgement, or royalty. .................. 25

        E.      No evidence of willful and malicious misappropriation for purposes of
                exemplary damages. ................................................................... 28

IV.     Injunctive Relief. ................................................................................... 28

Conclusion ................................................................................................................. 30

Certificate of Service ................................................................................................. 31

## TABLE OF AUTHORITIES

**Case**                                                                                    **Page(s)**

*360 Mortg. Group, LLC v. Homebridge Fin. Servs., Inc.*,
  No. A-14-CA-00847-SS, 2016 WL 900577
  (W.D. Tex. Mar. 2, 2016) ................................................................................16

*Alviar v. Lillard*,
  854 F.3d 286 (5th Cir. 2017) ..........................................................................15

*American Nat'l Petroleum Co.
  v. Transcontinental Gas Pipe Line Corp.*,
  798 S.W.2d 274 (Tex. 1990)............................................................................18

*Amigo Broad., LP v. Spanish Broad. Sys., Inc.*,
  521 F.3d 472 (5th Cir. 2008) ..........................................................................17

*Atlas Copco Tools, Inc. v. Air Power Tool & Hoist, Inc.*,
  131 S.W.3d 203 (Tex. App.—Fort Worth 2004, pet. denied) ..............................10

*Bancservices Group, Inc. v. Strunk & Assoc., L.P.*,
  14-03-00797-CV, 2005 WL 2674985 (Tex. App.—Houston
  [14th Dist.] Oct. 20, 2005, pet. denied) .........................................................13

*Bennett v. Reynolds*,
  315 S.W.3d 867 (Tex. 2010)............................................................................19

*Blase Indus. Corp. v. Anorad Corp.*,
  442 F.3d 235 (5th Cir. 2006) ..........................................................................10

*Brooke Group Ltd. v. Brown & Williamson Tobacco Corp.*,
  509 U.S. 209 (1993)..........................................................................................9

*Brown v. DFS Services, L.L.C.*,
  434 Fed. Appx. 347 (5th Cir. 2011)..................................................................12

*Browning–Ferris, Inc. v. Reyna*,
  865 S.W.2d 925 (Tex. 1993)............................................................................16

*Burlington N. R. Co. v. Sw. Elec. Power Co.*,
  925 S.W.2d 92 (Tex. App.—Texarkana 1996), *aff'd*,
  966 S.W.2d 467 (Tex. 1998)............................................................................14

*Dow Chem. Canada Inc. v. HRD Corp.*,
  909 F. Supp. 2d 340 (D. Del. 2012), *aff'd*,
  587 Fed. Appx. 741 (3d Cir. 2014)...................................................................22

*Hammerly Oaks, Inc. v. Edwards*,
  958 S.W.2d 387 (Tex. 1997)............................................................................19

*Henry v. Masson*,
    333 S.W.3d 825 (Tex. App.—Houston [1st Dist.]
    2010, no pet.) .................................................................................13

*Hoffman v. L & M Arts*,
    838 F.3d 568 (5th Cir. 2016) ........................................11, 12, 13, 14, 18

*Homoki v. Conversion Services, Inc.*,
    717 F.3d 388 (5th Cir. 2013) ........................................................18

*IDX Sys. Corp. v. Epic Sys. Corp.*,
    285 F.3d 581 (7th Cir. 2002) ......................................................22, 24

*Imax Corp. v. Cinema Technologies, Inc.*,
    152 F.3d 1161 (9th Cir. 1998) .......................................................24

*InteliClear, LLC v. ETC Glob. Holdings, Inc.*,
    19-55862, 2020 WL 6072880 (9th Cir. Oct. 15, 2020) .........................22

*John Paul Mitchell Sys. v. Randalls Food Markets, Inc.*,
    17 S.W.3d 721 (Tex. App.—Austin 2000, pet. denied)........................16

*Lakeway Reg'l Med. Ctr., LLC*
    *v. Lake Travis Transitional LTCH, LLC*,
    No. 03-15-00025-CV, 2017 WL 672451
    (Tex. App.—Austin Feb. 17, 2017, pet. denied)............................30, 34

*Language People, Inc. v. Barish*,
    No. 03-18-00538-CV, 2019 WL 5057659
    (Tex. App.—Austin Oct. 9, 2019, no pet.) .......................................13

*Leonardo Worldwide Corp. v. Pegasus Solutions, Inc.*,
    No. 3:14-CV-02660-N, 2016 WL 9282409
    (N.D. Tex. Jul. 28, 2016) ............................................................11

*MAI Sys. Corp. v. Peak Computer, Inc.*,
    991 F.2d 511 (9th Cir. 1993) ........................................................22

*McGowan & Co., Inc. v. Bogan*,
    No. H012-1716, 2015 WL 3422366
    (S.D. Tex. May 27, 2015) ..............................................................8

*MGE UPS Sys., Inc. v. GE Consumer & Indus., Inc.*,
    622 F.3d 361 (5th Cir. 2010) ........................................................33

*Mood v. Kronos Products, Inc.*,
    245 S.W.3d 8 (Tex. App.—Dallas 2007, pet. denied)...........................10

*Nutrasep LLC v. TOPC Tex. LLC*,
    309 Fed. Appx. 789 (5th Cir. 2008)................................................12

iv

*O'Donnell v. Harris County,*
  892 F.3d 147 (5th Cir. 2018) ............................................................35

*OCA-Greater Houston v. Texas,*
  867 F.3d 604 (5th Cir. 2017) ............................................................35

*Pathfinder Oil & Gas, Inc. v. Great W. Drilling, Ltd.,*
  574 S.W.3d 882 (Tex. 2019) ...............................................................1

*Powell Indus., Inc. v. Allen,*
  985 S.W.2d 455 (Tex. 1998) .............................................................15

*Prudential Sec., Inc. v. Haugland,*
  973 S.W.2d 394 (Tex. App.—El Paso 1998, pet. denied) ................6, 12

*RealPage, Inc. v. Enter. Risk Control, LLC,*
  4:16-CV-00737, 2017 WL 3313729 (E.D. Tex. Aug. 3, 2017) ............21

*S. Elec. Servs., Inc. v. City of Houston,*
  355 S.W.3d 319 (Tex. App.—Houston [1st Dist.] 2011,
  pet. denied) ...............................................................................6, 12

*Sit-Up Ltd. v. IAC/InterActive Corp.,*
  No. 05-9292, 2008 WL 463884 (S.D.N.Y. Feb. 20, 2008) .................27

*Southwestern Bell Tele. Co. v. John Carlo Texas, Inc.,*
  843 S.W.2d 470 (Tex. 1992) .............................................................17

*Stelluti Kerr, L.L.C. v. Mapei Corp.,*
  703 Fed. Appx. 214 (5th Cir. 2017) ..................................................10

*Stewart v. Basey,*
  245 S.W.2d 484 (Tex. 1952) .............................................................12

*StoneCoat of Texas, LLC v. ProCal Stone Design, LLC,*
  4:17CV303, 2019 WL 4346538 (E.D. Tex. Sept. 12, 2019) ...............21

*StoneCoat of Texas, LLC v. ProCal Stone Design, LLC,*
  426 F. Supp. 3d 311 (E.D. Tex. 2019) ...............15, 16, 21, 30, 32, 33, 34

*Stoneeagle Serv., Inc. v. Gillman,*
  3:11-CV-2408-P, 2013 WL 12124328 (N.D. Tex. Aug. 19, 2013) ......22

*Sulzer Carbomedics, Inc. v. Oregon Cardio-Devices, Inc.,*
  257 F.3d 449 (5th Cir. 2001) ............................................................18

*Sw. Energy Prod. Co. v. Berry-Helfand,*
  491 S.W.3d 699 (Tex. 2016) ...............................................13, 29, 32

*Szczepanik v. First S. Tr. Co.*,
883 S.W.2d 648 (Tex. 1994)........................................................................10

*Tewari De-Ox Systems, Inc. v. Mountain States/Rosen, L.L.C.*,
537 F.3d 604 (5th Cir. 2011) ......................................................................24

*Texas Capital Bank, N.A. v. Dallas Roadster, Ltd.*,
No. 4:13-cv-625, 2015 WL 13807616 (E.D. Tex. Mar. 31, 2015) .........................11

*Thermotek, Inc. v. Orthoflex, Inc.*,
No. 3:10-CV-2618-D, 2016 WL 4678888
(N.D. Tex. Sept. 7, 2016)...........................................................................11

*Thoroughbred Ventures, LLC v. Disman*,
4:18-CV-00318, 2018 WL 3752852 (E.D. Tex. Aug. 8, 2018)............................28

*TLS Mgmt. & Mktg. Services, LLC v. Rodriguez-Toledo*,
966 F.3d 46 (1st Cir. 2020).......................................................................22

*Transverse, L.L.C. v. Iowa Wireless Serv., L.L.C.*,
617 Fed. Appx. 272 (5th Cir. 2015)...............................................................10

*United Motorcoach Ass'n, Inc. v. City of Austin*,
851 F.3d 489 (5th Cir. 2017) ......................................................................35

*Univ. Computing Co. v. Lykes-Youngstown Corp.*,
504 F.2d 518 (5th Cir. 1974) ...............................................................32, 33

*Vianet Group PLC v. Tap Acquisition, Inc.*,
No. 3:14-CV-3601-B, 2016 WL 4368302
(N.D. Tex. Aug. 16, 2016)..........................................................................23

*Weatherford Int'l, LLC v. Binstock*,
CV H-19-4258, 2020 WL 1692543 (S.D. Tex. Apr. 7, 2020) .............................16

*Weisgram v. Marley Co.*,
528 U.S. 444 (2000)..................................................................................9

*Williams v. Wells Fargo Bank, N.A.*,
884 F.3d 239 (5th Cir. 2018) ........................................................................1

*X Techs., Inc. v. Marvin Test Sys., Inc.*,
719 F.3d 406 (5th Cir. 2013) ........................................................................6

**STATUTES**

18 U.S.C.
§ 1836.......................................................................................21, 30
§ 1839.................................................................................21, 28, 29

Tex. Civ. Prac. & Rem. Code
§ 41.001.........................................................................................................................20
§ 134A.................................................................................................15, 21, 28, 29, 35

**RULES**

Fed. R. Civ. P.
50(a)...............................................................................................................................1
65(d)(1)(B)-(C) .............................................................................................................35

**OTHER AUTHORITIES**

RESTATEMENT (THIRD) OF RESTITUTION
§ 39.......................................................................................................................13, 14
§ 42.............................................................................................................................14

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION**

| | | |
|---|---|---|
| RESMAN, LLC, | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | Civil Action No. 4:19-cv-00402-ALM |
| | § | |
| | § | |
| KARYA PROPERTY | § | |
| MANAGEMENT, LLC, and | § | |
| SCARLET INFOTECH, INC. D/B/A | § | |
| EXPEDIEN, INC. | § | |
| | § | |
| *Defendants*. | § | |

## <u>RULE 50(a) MOTION FOR JUDGMENT AS A MATTER OF LAW</u>

TO THE HONORABLE AMOS MAZZANT, DISTRICT JUDGE:

Judgment as a matter of law is proper whenever "a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue." Fed. R. Civ. P. 50(a). Defendants Karya and Expedien respectfully move for judgment as a matter of law on all of Plaintiff ResMan's claims.

## I.      Breach of Contract.

A plaintiff alleging breach of contract must prove the existence of a contract, that it performed all its obligations, that the defendant failed to materially comply, and that the breach caused damages. *Pathfinder Oil & Gas, Inc. v. Great W. Drilling, Ltd.*, 574 S.W.3d 882, 890 (Tex. 2019); *Williams v. Wells Fargo Bank, N.A.*, 884 F.3d 239, 244 (5th Cir. 2018). There is no evidence of these elements.

### A.      No evidence of breach.

ResMan has alleged violations of numerous different provisions of the MSA, but has offered no legally sufficient evidence to support any of its claims.

1

First, there is no legally sufficient evidence that Karya breached the access restrictions of the MSA (MSA §§ 1.17, 3.5(iii)-(iv), 3.6(i)).  By way of example, and without limiting the scope of this challenge, here are a few specific examples.

As a matter of law, Karya could not have breached Section 1.17 because that provision simply defines the term "Users" to exclude "consultants, contractors, or other personnel of Customer or any third parties."   MSA § 1.17.   It contains no contractual restrictions or requirements that Karya could have violated.

Section 3.5(iii) requires Karya to "protect[] the names and passwords of the Users of the [ResMan Platform]."  MSA § 3.5(iii).  There is neither evidence that Karya failed to comply with this provision nor evidence that any unauthorized persons accessed the ResMan Platform using "the names and passwords of [authorized] Users" based on Karya's failure to protect that information.  *Id.*  Karya's creation of user credentials for new, allegedly unauthorized users does not, as a matter of law, constitute a violation of its duty to protect existing credentials.

Section 3.5(iv) requires ResMan to "prevent[] . . . any unauthorized access to or use of the [ResMan Platform]," and section 3.6 prohibits it from "mak[ing] it available for access by third parties."   MSA §§ 3.5(iv), 3.6(i).   There is no legally sufficient evidence that Karya violated these provisions.

Second, there is no legally sufficient evidence that Karya breached the use restrictions of the MSA.  (MSA ¶ 3, §§ 3.1, 3.5(viii), 3.6(ii)-(iv)). At the very most, the evidence shows that Karya accessed the ResMan Platform to identify Karya's "pain points" and to understand its own business data, user-defined preferences, configurations, settings, and processes.   But merely accessing and using ResMan for these purposes is not a breach of the MSA.  The MSA permits Karya to use the ResMan Platform "for its internal business purposes," MSA § 3.1, and the identification of "pain points" in a vendor's software system and Karya's use of that software to

understand its own data and processes are both legally permissible "internal business purposes" under the MSA.

Furthermore, as a matter of law, Karya did not use ResMan's software to build Arya. Indeed, the evidence introduced at trial conclusively proves otherwise. ResMan only identifies (1) 165 allegedly similar features/functions between the ResMan and Arya system out of thousands of features/functions in both platforms; (2) 8 allegedly similar process/screen flows present in ResMan out of thousands of process/screen flows present in both platforms; and (3) 3 Arya reports that are allegedly similar to ResMan reports out of over 250 reports.

All of the identified features/functions are basic and are present in all the major property management software applications across the industry.  Moreover, the process/screen flows and reports demonstrate significant, material differences.  This is no evidence of any violation of the use restrictions.

Apart from these minimal alleged "similarities," there is no evidence to suggest that Karya used ResMan's software to build Arya.  Work on that software began in February 2018 with weekly telephone conferences, during which Karya corporate staff and property managers would explain Karya's business processes and provide feedback on the initial workflow and requirements documents that Expedien had prepared.  Expedien's Nishant Varshney traveled to Karya's offices, visited Karya properties, interviewed employees at all levels, and learned about the property management business in general and Karya's specific business processes over the course of six weeks.   John Greene and Malik Merchant worked onsite at Karya's offices, gathering requirements, facilitating requirements sessions, and reconfirming requirements with Karya users.  Through these efforts, Expedien created extensive sets of requirements documents, sent them to Karya for review, and then revised them according to Karya's feedback.  Once the requirements and design documents were finalized, Expedien adopted different programming

languages and tools than those ResMan used.  Karya and Expedien spent thousands of hours working on the project, generating hundreds of thousands of pages of documents in the process. This is no evidence of a "use" violation.  Accordingly, the Court should enter judgment as a matter of law on ResMan's claims for breach of the use restrictions in the MSA.

Third, there is no legally sufficient evidence that Karya breached the confidentiality restrictions of the MSA.  (MSA § 7.2–7.3).  These restrictions bar the use of "Confidential Information . . . for any purpose whatsoever except to the extent necessary in order to perform its obligations or exercise its rights under this Agreement."  MSA § 7.2.  "Confidential Information" is defined to exclude "information that . . . is or becomes . . . generally available to the public." *Id.* § 7.1.  As outlined below, the evidence at trial conclusively proves that the alleged "Confidential Information" ResMan identifies has become "generally available to the public." *Id.*  And as outlined above, there is no evidence that Karya used the ResMan Platform—or, by extension, ResMan's "Confidential Information"—for purposes inconsistent with "its rights under this Agreement."  *Id.* § 7.2.

Finally, there is no legally sufficient evidence that Karya breached the legal compliance restrictions of the MSA.  (MSA § 3.5(x), 3.6(xi)).  ResMan alleges violations of § 3.5(x), which requires Karya to use the ResMan Platform "in accordance with applicable laws," and § 3.6(xi), which bars Karya from "violat[ing] any law or regulation of the United States, any state thereof or other governmental authority."  MSA §§ 3.5(x), 3.6(xi).  The only laws ResMan alleges that Karya violated are the Defend Trade Secrets Act and Texas Uniform Trade Secrets Act.  As discussed below, there is no legally sufficient evidence that Karya violated either of these statutes.  Therefore, there is no legally sufficient evidence that Karya breached the legal compliance restrictions of the MSA.

**B.      No evidence of performance.**

There is no legally sufficient evidence that ResMan performed its own obligations under the MSA.

**C.      No evidence of causation.**

There is no legally sufficient evidence that any conduct by Karya caused damages to ResMan.

Causation must be established for each alleged breach; ResMan may not mix-and-match a breach of one contractual provision with causation of damages associated with another provision. *See*, *e.g.*, *X Techs., Inc. v. Marvin Test Sys., Inc.*, 719 F.3d 406, 412 (5th Cir. 2013) ("In a breach of contract case, 'the absence of a causal connection between the alleged breach and the damages sought will preclude recovery.'") (quoting *S. Elec. Servs., Inc. v. City of Houston*, 355 S.W.3d 319, 324 (Tex. App.—Houston [1st Dist.] 2011, pet. denied) ("[T]he absence of a causal connection between the alleged breach and the damages sought will preclude recovery"); *Prudential Sec., Inc. v. Haugland*, 973 S.W.2d 394, 396–97 (Tex. App.—El Paso 1998, pet. denied) (same).

This evidence of a causal connection cannot be conjectural or speculative. *S. Elec. Servs.*, 355 S.W.3d at 324.  Here, there is no evidence of causation associated with any alleged breach—and certainly not evidence that rises above the level of speculation and conjecture.

ResMan alleges that Karya's breach caused it to suffer lost profits—namely, lost revenues from the termination of the contract with Karya and lost customers.  But it is undisputed that ResMan, not Karya, terminated the contractual relationship between the two companies pursuant to Section 9.3 of the MSA, which allows either party to terminate the contract on sixty days' written notice.  Karya, in fact, attempted to extend the sixty-day notice period applicable under Section 9.3 and continue compensating ResMan for an additional 180

days after receiving ResMan's intent to terminate, but ResMan refused.  As a matter of law, therefore, ResMan cannot prove that any alleged breach caused it to sustain damages in the form of lost contract revenues from Karya.

Furthermore, it is undisputed that Karya has not released the Arya platform publicly, sold or licensed it to anyone, or used it internally.  As such, there is no evidence that ResMan has lost any customers or otherwise suffered any harm.

Finally, there is no legally sufficient evidence that any alleged breach of the access restrictions caused ResMan any damages.  As outlined above, there is no legally sufficient evidence that Karya breached the use restrictions of the MSA—but the only damages it alleges stem from alleged breaches of the use restrictions.  To the extent there is some evidence that Karya breached the access restrictions, there is no evidence that such a breach caused any damages.  Put differently, absent a breach of the use restrictions of the MSA, granting Expedien access to the ResMan Platform did not itself cause ResMan any damages.

### D.     No evidence of damages.

There is no legally sufficient evidence to support any monetary remedies.

### 1.     No evidence of lost profits from any breach of contract.

As a general matter, ResMan offered no evidence of recoverable damages—and certainly not damages linked to particular alleged breaches as the law requires.

ResMan's only conceivable damages are lost profits from Karya's alleged breaches of the MSA.[1]  Defendants renew their objection that this lost profits claim and its evidentiary support was not properly disclosed and should not be submitted.  Defendants acknowledge the Court's pretrial ruling to the contrary, Doc. 281 at 7, but respectfully preserve their objection for appeal.  Casting caution to the wind, moreover, ResMan's presentation at trial went even further than its

---

[1] ResMan pleaded it suffered damages in the form of investigative costs, but investigative costs are not "damages." *McGowan & Co., Inc. v. Bogan*, No. H012-1716, 2015 WL 3422366, at *11 (S.D. Tex. May 27, 2015).

pretrial claims.  Its trial evidence was not confined to lost profits associated with its termination

of the Karya contract (the only theory that it had even arguably disclosed before trial), but added

speculative and undisclosed testimony based on projections of revenues (not net profits) over a

period of several years under the assumption that Karya not only would have continued to use

the ResMan software program indefinitely but also would have substituted the ResMan program

for other software packages—despite ResMan's admission that there was no promise, much less

contractual duty, to do so.  This new theory is undisclosed, speculative, and patently unreliable.

This testimony was inadmissible and should have been excluded at trial.  Not only did

ResMan fail to disclose the expert opinions on which it was based, but those expert opinions also

lack a reliable foundation and are based on patently unreliable methodologies.  The testimony is

facially incompetent to satisfy the test governing lost profits, so it cannot be considered in a legal

sufficiency analysis—leaving ResMan without sufficient evidentiary support for its claims of

lost profits.  *See Weisgram v. Marley Co.*, 528 U.S. 444 (2000); *Brooke Group Ltd. v. Brown &*

*Williamson Tobacco Corp.*, 509 U.S. 209, 242 (1993).

To be recovered, lost profits must be proved net of expenses, must be shown with

reasonable certainty, and must be supported by objective facts, figures or data.  Lost profits are

not recoverable if they are dependent upon uncertain or changing market conditions, chancy

business opportunities, promotion of untested products or entry into unknown or unviable

markets, or on the success of a new and unproven enterprise.  There is no evidence to satisfy

these standards in this case.

For one thing, as discussed above, ResMan voluntarily terminated the MSA.  ResMan

cannot recover a loss of contractual profit after its voluntary decision to terminate the contract.[2]

And its claims about future uses of the ResMan program were based on sheer speculation

---

[2] Indeed, after ResMan provided Karya with notice of termination, Karya requested an extension
of service but ResMan denied the request.

without any foundation or contractual obligation.  These undisputed facts foreclose ResMan's lost profits claims as a matter of law.

In addition, lost profits are not recoverable here because they depend on the continuation of terminable relationships.  *See Blase Indus. Corp. v. Anorad Corp.*, 442 F.3d 235, 238–39 (5th Cir. 2006); *Stelluti Kerr, L.L.C. v. Mapei Corp.*, 703 Fed. Appx. 214, 231 (5th Cir. 2017); *Szczepanik v. First S. Tr. Co.*, 883 S.W.2d 648, 649-50 (Tex. 1994); *Mood v. Kronos Products, Inc.*, 245 S.W.3d 8, 13 (Tex. App.—Dallas 2007, pet. denied).  Where a relationship is terminable at the will of one of the parties, the other party cannot assume with reasonable certainty that the relationship will continue indefinitely; reasonable certainty is limited to the period during which the contractual expectation is fixed.  *See id.*

This principle is especially important here because it is undisputed that the relationship was strained and Karya was dissatisfied with ResMan's services.  Because Karya had a right to terminate the contract at any time, ResMan cannot prove with reasonable certainty that it would have profited from the contract for the period of its damage model.  *Transverse, L.L.C. v. Iowa Wireless Serv., L.L.C.*, 617 Fed. Appx. 272, 278–79 (5th Cir. 2015) (citing a "strained business relationship" and the customer's "expressed dissatisfaction" with performance); *Atlas Copco Tools, Inc. v. Air Power Tool & Hoist, Inc.*, 131 S.W.3d 203, 208 (Tex. App.—Fort Worth 2004, pet. denied) (same).  At most, based on these facts, ResMan could only recover future profits for the period within which Karya was obligated to continue the contract after giving notice of termination: 90 days.

Finally, the calculation of lost-profits damages must be based on net profits, not gross revenue or gross profits.  *Texas Capital Bank, N.A. v. Dallas Roadster, Ltd.*, No. 4:13-cv-625, 2015 WL 13807616, at *1-2 (E.D. Tex. Mar. 31, 2015).  Stated differently, "[l]ost profits are damages for the loss of net income and . . . reflect income from lost-business activity, less

expenses that would have been attributable to that activity." *Id.*  ResMan bears the burden of "proving fixed costs to be deducted from gross profits to arrive at lost net profits." *Thermotek, Inc. v. Orthoflex, Inc.*, No. 3:10-CV-2618-D, 2016 WL 4678888, at \*14 (N.D. Tex. Sept. 7, 2016).  Yet ResMan only introduced evidence of lost revenues, without any deductions or allocations for expenses. Thus, there is no legally sufficient evidence to establish lost profits. *See Leonardo Worldwide Corp. v. Pegasus Solutions, Inc.*, No. 3:14-CV-02660-N, 2016 WL 9282409 (N.D. Tex. Jul. 28, 2016).

Independently, the agreed preliminary injunction was admitted in evidence.  The preliminary injunction prevented Defendants from realizing any past profits from their alleged breach of the MSA.  The Arya 1.0 software was still in development when the Court issued the preliminary injunction, and the injunction barred them from releasing the version or otherwise making commercial use of it.  As such, Defendants could not have diverted any revenue stream from ResMan as a result of the alleged breach.  *Cf.* Defs.' Trial Br. Regarding Proposed Jury Instruction on the Parties Agreed Injunction (Doc. 269) at 3.

### 2.    Restitution and disgorgement remedies are not available for breach of contract.

Restitution or disgorgement remedies are not available for breach of contract under Texas law as construed by the Fifth Circuit.  *See Hoffman v. L & M Arts*, 838 F.3d 568, 585 (5th Cir. 2016) (holding that a question measuring damages based on "the value of the benefits that each defendant received" is an improper "disgorgement remedy that the Texas Supreme Court would reject" and constitutes "an unavailable remedy under Texas contract law").  This is not an open question in the Fifth Circuit.  *Hoffman* is binding circuit precedent.  Allowing ResMan to submit a jury question on a restitution or disgorgement theory is just an invitation to secure a jury finding that will have to be disregarded after trial or on appeal.  Rule 50(a) exists for precisely such a situation.

9

"In Texas, '[t]he universal rule for measuring damages for the breach of a contract is just compensation for the loss or damage actually sustained.'"  *Id.* (citation omitted, emphasis in original); *see also Brown v. DFS Services, L.L.C.*, 434 Fed. Appx. 347, 353 (5th Cir. 2011) ("To recover for breach of contract, the plaintiff must prove that he has suffered some monetary loss."); *Nutrasep LLC v. TOPC Tex. LLC*, 309 Fed. Appx. 789, 791 (5th Cir. 2008) ("To win compensatory damages in a breach of contract case under Texas law, a plaintiff must show that he suffered a pecuniary loss as a result of the breach.").

This rule is amply supported in Texas.  It traces back to *Stewart v. Basey*, 245 S.W.2d 484, 486 (Tex. 1952) ("The universal rule for measuring damages for the breach of a contract is just compensation for the loss or damage actually sustained. By the operation of that rule a party generally should be awarded neither less nor more than his actual damages.").  It is followed still by Texas courts today.  *See*, *e.g.*, *S. Elec. Services, Inc. v. City of Houston*, 355 S.W.3d 319, 324 (Tex. App.—Houston [1st Dist.] 2011, pet. denied) ("To recover compensatory damages, the plaintiff must establish that he suffered some pecuniary loss as a result of the breach."); *Prudential Sec., Inc. v. Haugland*, 973 S.W.2d 394, 396–97 (Tex. App.—El Paso 1998, pet. denied) ("In order to recover compensatory damages, the plaintiff must establish that he suffered some pecuniary loss as a result of the breach of the contract.").

Thus, the Fifth Circuit—following Texas law—holds that restitution and disgorgement remedies are not available on a breach-of-contract claim.  *Hoffman*, 838 F.3d at 585; *see also Henry v. Masson*, 333 S.W.3d 825, 849 (Tex. App.—Houston [1st Dist.] 2010, no pet.) ("Disgorgement of profits is not a measure of damages available in a breach of contract action."); *Bancservices Group, Inc. v. Strunk & Assoc., L.P.*, 14-03-00797-CV, 2005 WL 2674985, at *6 (Tex. App.—Houston [14th Dist.] Oct. 20, 2005, pet. denied) ("For a breach of contract action,

10

the measure of damages is not the benefits received by the defendant, but the loss or damage actually sustained by the plaintiff.").

ResMan previously has cited the Restatement (Third) of Restitution § 42, but the Fifth Circuit has held that any restitutionary remedy under contract law must "focus squarely on the plaintiff's actual losses." *Hoffman*, 838 F.3d at 585. And it has rejected efforts to develop a disgorgement-based contract remedy under Texas law by reference to the Restatement of Restitution. *Id.* (rejecting reliance on RESTATEMENT (THIRD) OF RESTITUTION § 39). *Id.*

ResMan has cited *Sw. Energy Prod. Co. v. Berry-Helfand*, 491 S.W.3d 699 (Tex. 2016), but *Hoffman* was decided *after* that case so it cannot be distinguished. Moreover, *Sw. Energy* did *not* hold disgorgement is available as a contract remedy. The other authority cited by ResMan, *Language People, Inc. v. Barish*, No. 03-18-00538-CV, 2019 WL 5057659, at *7 (Tex. App.— Austin Oct. 9, 2019, no pet.), involved a recovery for fraud rather than breach of contract.

Finally, Restatement § 42 is not applicable to recovery on a contract claim; that section concerns statutory protection of intellectual property and trade secrets. *See* RESTATEMENT (THIRD) OF RESTITUTION § 42 cmt. a. The comments note that "the claim to profits derived from misappropriation of a trade secret may be analyzed as a claim to profits from an opportunistic breach of contract. See § 39, Illustration 3." *Id.* But in *Hoffman*, the Fifth Circuit rejected that precise theory: "the Supreme Court of Texas would not follow this approach in a Texas breach-of-contract case, at least absent a fiduciary relationship between the parties." *Hoffman*, 838 F.3d at 585 (rejecting § 39).

In Texas, restitutionary remedies are reserved for "disputes which for one reason or another are not governed by a contract between the contending parties," *Burlington N. R. Co. v. Sw. Elec. Power Co.*, 925 S.W.2d 92, 97 (Tex. App.—Texarkana 1996), *aff'd*, 966 S.W.2d 467 (Tex. 1998), and thus "[a] remedy such as unjust enrichment that is based on quasi-contract or a

contract implied in law is unavailable when a valid, express contract governing the subject matter of the dispute exists." *Id.* That is the case here.

In short, ResMan has no basis to avoid binding Fifth Circuit precedent and there is no reason to waste the jury's time and inject uncertainty by submitting a futile theory of recovery. The Court should enter judgment on the claim for restitution or disgorgement as a matter of law.

## II.    Tortious Interference with Contract.

A plaintiff alleging tortious interference with contract must prove the existence of a contract subject to interference, that the defendant engaged in conduct that caused a breach of that contract, and that the plaintiff suffered damages as a result. *See Alviar v. Lillard*, 854 F.3d 286, 289 (5th Cir. 2017) (citing *Powell Indus., Inc. v. Allen*, 985 S.W.2d 455, 456 (Tex. 1998)). Once again, there is no evidence of these elements. But more important, it is unnecessary even to consider the tortious interference claim because the Texas Legislature has displaced that common-law claim by statute.

### A.    Tortious interference is displaced by TUTSA.

The Texas Uniform Trade Secrets Act ("TUTSA") "displaces conflicting tort, restitutionary, and other law of this state providing civil remedies for misappropriation of a trade secret." Tex. Civ. Prac. & Rem. Code § 134A.007(a). The statute was "intended to prevent inconsistent theories of relief for the same underlying harm by eliminating alternative theories of common law recovery which are premised on the misappropriation of a trade secret." *StoneCoat of Texas, LLC v. ProCal Stone Design, LLC*, 426 F. Supp. 3d 311, 333 (E.D. Tex. 2019) (Mazzant, J.). This statutory displacement "encompasses all claims based on the alleged improper taking of confidential business information," *id.*, whether or not the information qualifies as a trade secret.

For purposes of displacement, the critical inquiry is whether the tort claim "is based on the same facts as those underlying [the] claim for misappropriation of trade secrets." *360 Mortg. Group, LLC v. Homebridge Fin. Servs., Inc.*, No. A-14-CA-00847-SS, 2016 WL 900577, at *8 (W.D. Tex. Mar. 2, 2016).  In this case, ResMan's tortious interference claim is based on the alleged taking of ResMan's purported trade secrets, so it is "preempted by the TUTSA, which preempts all claims based on the alleged improper taking of trade secret and confidential business information." *StoneCoat*, 426 F. Supp. 3d at 339.  Again, ResMan has no viable basis to avoid this statutory displacement, so there is no reason to waste the jury's time and inject uncertainty by submitting a futile theory of recovery.

### B.  No evidence of interference.

Even if the tortious interference claim were viable, there is no evidence that Expedien willfully and intentionally interfered with the MSA.

First, as noted above, there is no evidence of any breach of the MSA, so it necessarily follows that Expedien did not interfere with the MSA.  *See* § I.A.

Second, there is no evidence that Expedien knowingly induced Karya to breach the MSA or knowingly made the MSA more difficult to fulfill.  *John Paul Mitchell Sys. v. Randalls Food Markets, Inc.*, 17 S.W.3d 721, 730 (Tex. App.—Austin 2000, pet. denied) (citing *Browning–Ferris, Inc. v. Reyna*, 865 S.W.2d 925 (Tex. 1993); *Weatherford Int'l, LLC v. Binstock*, CV H-19-4258, 2020 WL 1692543, at *9 (S.D. Tex. Apr. 7, 2020).

ResMan had a burden to prove Expedien "took an active part in persuading" Karya to breach the MSA, *Amigo Broad., LP v. Spanish Broad. Sys., Inc.*, 521 F.3d 472, 493 (5th Cir. 2008), and that it acted with the intent to interfere and not just to do the particular acts done. *Southwestern Bell Tele. Co. v. John Carlo Texas, Inc.*, 843 S.W.2d 470, 472 (Tex. 1992). Merely entering into a relationship with Karya is not evidence of intentional interference.  *See*

*Amigo Broad.*, 521 F.3d at 493 ("Merely entering into a contract with a party with the knowledge of that party's contractual obligations to someone else is not the same as inducing a breach."). Yet that is all ResMan has proved.  There is no evidence of intentional interference as a matter of law.

### C.    No evidence of causation.

There is no evidence that Expedien's conduct proximately caused damages. As noted above, there is no evidence that any damages were caused by breach of the MSA, so it follows that Expedien did not cause ResMan damages.  *See* § I.C.

### D.    No evidence of damages.

There is no evidence that ResMan suffered any actual damage or loss.

First, as noted above, there is no evidence of damages suffered by ResMan.  *See* § I.D.

Second, restitution or disgorgement remedies are no more recoverable for tortious interference claims than for breach-of-contract claims under Texas law.  This conclusion is so because "[i]n Texas, tortious interference with contract and breach of contract typically share the same measure of damages: to place the injured party in the position he would have been had the contract been performed." *Homoki v. Conversion Services, Inc.*, 717 F.3d 388, 398 (5th Cir. 2013); *see also American Nat'l Petroleum Co. v. Transcontinental Gas Pipe Line Corp.*, 798 S.W.2d 274, 278 (Tex. 1990) ("The basic measure of actual damages for tortious interference with contract is the same as the measure of damages for breach of the contract interfered with, to put the plaintiff in the same economic position he would have been in had the contract interfered with been actually performed.").  Therefore, the same authorities that foreclose restitution or disgorgement remedies for breach of contract dictate the same result for tortious interference.

ResMan has cited *Sulzer Carbomedics, Inc. v. Oregon Cardio-Devices, Inc.*, 257 F.3d 449, 455–56 (5th Cir. 2001), for the idea that the measure of damages is "not necessarily the

same," but the issue in that case was whether a non-party could assert a contractual limitation on damages.  That is not the issue in this case.  *Sulzer* offers no reason to believe the Fifth Circuit would allow such a recovery against a non-party to the contract when *Hoffman v. L & M Arts*, 838 F.3d 568, 585 (5th Cir. 2016), holds that these remedies are not available to a contracting party.  ResMan cites no authority that can evade *Hoffman* and *Homoki*.

Finally, even if restitution or disgorgement were viable remedies in theory, there is no evidence that Expedien received any benefit from ResMan that could be subject to disgorgement or a basis for restitution.  There is no proof Expedien received anything of value from ResMan, and indeed, it is conclusively established by the evidence at trial that Expedien received nothing from ResMan.  Nor is there any evidence that Expedien is in possession of any monetary benefit, net profit, or other quantifiable value that is subject to disgorgement; any supposed benefit from the conduct in question accrued to Karya and not to Expedien.  Speculation about future benefits Expedien might realize in the future is not evidence of a present benefit subject to disgorgement. *See Tex. Carpenters Health Ben. Fund v. Philip Morris, Inc.*, 21 F. Supp. 2d 664, 678 (E.D. Tex. 1998) (dismissing claim of unjust enrichment where alleged benefit was "too indirect, remote and speculative to support recovery under this theory").

"At its heart," an unjust enrichment claim "contemplates that the defendant must have *actually received and retained a benefit*, which must be disgorged in order to prevent the defendant from being unjustly enriched."  *Armendariz v. Hudgens*, 08-17-00231-CV, 2020 WL 4282050, at *12 (Tex. App.—El Paso July 27, 2020, no pet.) (citing *Vortt Expl. Co., Inc. v. Chevron U.S.A., Inc.*, 787 S.W.2d 942, 944 (Tex. 1990)).

Disgorgement is only available to "strip[] the defendant of a wrongful gain," *In re Longview Energy Co.*, 464 S.W.3d 353, 361 (Tex. 2015), which refers to the "net increase in the assets of the [defendant], to the extent that this increase is attributable to the underlying wrong."

Restatement (Third) of Restitution and Unjust Enrichment § 51 cmt. e (2011).  Because there is no such gain by Expedien, any award in this case "in excess of net gains results in a punitive sanction that the law of restitution normally attempts to avoid." *Longview*, 464 S.W.3d at 360.

### E.        No evidence to support exemplary damages.

There is no clear and convincing evidence that a vice principal of Expedien acted with either "malice" or "gross negligence," so at the very least, the claim for exemplary damages fails as a matter of law.  "Clear and convincing evidence" means the measure or degree of proof that produces a firm belief or conviction of the truth of the allegations sought to be established. Exemplary damages may be awarded against a company like Expedien for the acts of one of its agents only if Expedien authorized the doing and the manner of the act, or the agent was unfit and Expedien was reckless in employing him, or the agent was employed in a managerial capacity and was acting in the scope of employment, or Expedien or a manager of Expedien ratified or approved the act.  *See*, *e.g.*, *Bennett v. Reynolds*, 315 S.W.3d 867, 883-84 (Tex. 2010); *Hammerly Oaks, Inc. v. Edwards*, 958 S.W.2d 387, 391 (Tex. 1997).  There is no evidence of any conduct in this case that meets these criteria and rises to the level of malice or gross negligence.

"Malice" requires evidence of a specific intent by Expedien to cause substantial injury to ResMan.  Tex. Civ. Prac. & Rem. Code §§ 41.001(7), .003(a)(2).  There is no evidence, much less clear and convincing evidence, of such malicious intent by Expedien—especially under the principles set forth above.

"Gross negligence" requires evidence of an act or omission by Expedien, which when viewed objectively from the standpoint of Expedien at the time of its occurrence involved an extreme degree of risk, considering the probability and magnitude of the potential harm to others; and of which Expedien had actual, subjective awareness of the risk involved, but

nevertheless proceeded with conscious indifference to the rights, safety, or welfare of others. Tex. Civ. Prac. & Rem. Code §§ 41.001(11), .003(a)(3). There is no evidence, much less clear and convincing evidence, of such gross negligence by Expedien—especially under the principles set forth above.

Finally, Expedien renews its position that the claim for exemplary damages was not pleaded, and it does not try this claim by consent. Expedien acknowledges the Court's ruling to the contrary, Doc. 217 at 4, but respectfully preserves its objection for the record.

***

The tortious interference theory has numerous flaws. But its most fatal flaw is impossible to cure: this claim is displaced by TUTSA. JMOL is appropriate.

## III. Misappropriation of Trade Secrets.

To prove trade secret misappropriation under the DTSA or the TUTSA, ResMan must prove that it is the owner of one or more trade secrets; for each such trade secret, Defendants misappropriated that trade secret; and that the particular misappropriation caused damages to ResMan. *See RealPage, Inc. v. Enter. Risk Control, LLC*, 4:16-CV-00737, 2017 WL 3313729, at *9 (E.D. Tex. Aug. 3, 2017) (Mazzant, J.) (citing 18 U.S.C. § 1836(b)(1)); *StoneCoat of Texas, LLC v. ProCal Stone Design, LLC*, 4:17CV303, 2019 WL 4346538, at *21 & n.17 (E.D. Tex. Sept. 12, 2019) (Mazzant, J.); Tex. Civ. Prac. & Rem. Code § 134A.002. Again, there is no evidence of these elements.[3]

### A. No evidence of "trade secrets."

Information is a "trade secret" only if it comes within the statutory definition (which includes aspects of a software program) and if two conditions are satisfied:

---

[3] DTSA also requires evidence that the alleged trade secret was placed into interstate commerce, but that element is not contested in this case.

    (A)     The owner of the trade secret has taken reasonable measures under the circumstances to keep the information secret; and

    (B)     The information derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information.

18 U.S.C.A. § 1839(3); Tex. Civ. Prac. & Rem. Code § 134A.002-.004; *see also StoneCoat*, 426 F. Supp. 3d at 339-45, 347.

ResMan claims that its ***entire*** property management software program is a trade secret. But ResMan has not even proved the threshold element of ownership.  Nick Olsen, a ResMan developer, testified that the ResMan Platform contains technology that ResMan has licensed from other companies—meaning ResMan does not own it.  There is no evidence identifying those aspects of the program that ResMan owns, which defeats its trade secret claim as a matter of law.  This omission is just the first of several legal barriers to the trade secret claim.

Allegations of a trade secret in a software program require particular care.  ResMan must "separate the trade secrets from the other information that goes into any software package." *IDX Sys. Corp. v. Epic Sys. Corp.*, 285 F.3d 581, 583–84 (7th Cir. 2002) (Easterbrook, J.); *see also InteliClear, LLC v. ETC Glob. Holdings, Inc.*, 19-55862, 2020 WL 6072880 (9th Cir. Oct. 15, 2020); *MAI Sys. Corp. v. Peak Computer, Inc.*, 991 F.2d 511, 522–23 (9th Cir. 1993). "Which aspects are known to the trade, and which are not? That's vital under the statutory definition." *Id*.  Thus, ResMan had the burden to identify the features of its software that are "trade secrets" without including matters of general knowledge in the trade or of special knowledge of persons skilled in the trade.  *TLS Mgmt. & Mktg. Services, LLC v. Rodriguez-Toledo*, 966 F.3d 46, 53 (1st Cir. 2020); *Stoneeagle Serv., Inc. v. Gillman*, 3:11-CV-2408-P, 2013 WL 12124328, at *2 (N.D. Tex. Aug. 19, 2013) (quoting *Dow Chem. Canada Inc. v. HRD Corp.*, 909 F. Supp. 2d 340, 346 (D. Del. 2012), *aff'd*, 587 Fed. Appx. 741 (3d Cir. 2014) (applying the UTSA)).

ResMan has failed to identify its trade secrets with sufficient particularity.  This Court previously ruled that, at a minimum, a plaintiff must "'identify specific groupings of information that contain trade secrets, identify the types of trade secrets contained in the groupings, and explain how the alleged trade secrets were maintained and treated as trade secrets.'"  Doc. 220 at 5, 6 (quoting *Vianet Group PLC v. Tap Acquisition, Inc.*, No. 3:14-CV-3601-B, 2016 WL 4368302, at *20 (N.D. Tex. Aug. 16, 2016)).  Thus, the Court already has established the legal rule that ResMan *cannot* claim trade secret protection for the entire ResMan Platform.

In its Order denying the Defendants' Motion for Partial Summary Judgment, the Court determined that Plaintiffs had identified "six different categories of alleged trade secrets" based on citations "to various places in [their expert's] Report that expand further upon those broad identifications."  Doc. 220 at 6–7.  Defendants renew their objection that Plaintiffs did not timely disclose these alleged trade secrets until after the close of discovery and should not be permitted to cure that deficiency. Defendants acknowledge the Court's ruling to the contrary, *id*. at 6, but respectfully preserve the objection for appeal.

In addition, Defendants do not concede that it is sufficient for a plaintiff merely to identify "categories" of alleged trade secrets.  Both the DTSA and the TUTSA require a plaintiff to establish a particular feature, or group of features, that satisfies the test for trade secret status.  ResMan has failed to do so in this case, as a matter of law.

Regardless, even if the "six different categories" referenced by the Court are sufficient to identify trade secrets, ResMan offered no evidence to prove that these categories satisfy the statutory test for trade secrets.  Absent competent evidence, ResMan failed to meet its burden to prove its trade secrets with specificity.

Indeed, having secured a favorable ruling at the summary judgment stage, ResMan ignored the Court's ruling at trial and resorted to its failed theory that the entire ResMan

Platform is a trade secret.  This Court already has rejected that precise argument, recognizing that the law requires greater specificity.  *Id*. at 5, 6.  Under the law of this case, therefore, Defendants are entitled to JMOL.

At trial, ResMan made no attempt to satisfy the test for trade secret status with respect to the six "categories" identified by this Court at summary judgment.  It admitted no evidence to distinguish these features from the workflows, features, and functions that "go[] into any [property management] software package."  *IDX Sys*, 285 F.3d at 583–84; *see also Imax Corp. v. Cinema Technologies, Inc.*, 152 F.3d 1161, 1164 (9th Cir. 1998).  Although its expert claimed that ResMan's "implementation" of publicly-known features is somehow a trade secret, he offered no analysis or substantive explanation to meet the legal test for trade secret status. Because there is no substantial evidence that these "categories" are distinguishable from matters of general knowledge in the trade or of special knowledge of persons skilled in the trade, *Tewari De-Ox Systems, Inc. v. Mountain States/Rosen, L.L.C.*, 537 F.3d 604, 610 (5th Cir. 2011), JMOL is appropriate on the trade secrets claim.

Importantly, each alleged trade secret must meet the statutory requirements; evidence of one trade secret does not entitle its owner to seek protection for other features of its products that do not satisfy the statutory requirements.

ResMan has introduced no evidence of any "trade secrets" that satisfy the legal requirements for protection.  In particular, ResMan's public disclosures of its Platform preclude it from claiming global "trade secret" status as a matter of law.  At the very least, the Court should enter judgment as a matter of law with respect to all features that were publicly disclosed, allowing ResMan to go forward only based on specific features that were not publicly disclosed. The publicly disclosed features include, but are not limited to, those disclosed—

(1)     in the 50-plus pages of ResMan source code that ResMan filed with the U.S. Copyright Office, disclosing approximately 100 services that form the ResMan Platform;

(2)     in the numerous videos ResMan published describing its software on platforms like Vimeo and YouTube available to the general public; and

(3)     to the thousands of prospective customers who were not required to sign confidentiality agreements via webinars, trade shows, and in-depth demos (either online or in-person).

Finally, there is no evidence that ResMan took "reasonable measures" to maintain the secrecy of any of its alleged trade secrets.  At the very least, the Court should enter judgment as a matter of law with respect to all features for which there is no evidence of reasonable precautions, allowing ResMan to go forward only based on specific features that were reasonably protected.

The evidence conclusively proves that ResMan—

(1)     broadly disclosed its Platform without confidentiality protections via demos to prospective customers (both online and in-person), trade shows, webinars, and publicly-available videos;

(2)     failed to inform customers that it considered the ResMan Platform to be confidential by, for example, requiring them to sign the MSA or providing notice on login to the Platform that it is confidential;

(3)     relied entirely on its over-500 customers (and their countless employees) to protect the confidentiality of its Platform;

(4)     failed to monitor customer usage or access to the Platform; and

(5)     failed to employ employees responsible for security of the Platform or to adopt a documented information security management program, risk management techniques, or assessment of threats, risks, and efficacy of controls.

Under these circumstances, there is no evidence that ResMan possesses any legally protected trade secrets, and the evidence conclusively proves otherwise.  Thus, the Court should enter judgment for Defendants on all of ResMan's claims for misappropriation of trade secrets.

Alternatively, if the Court believes ResMan has satisfied the criteria for trade secret status with respect to any particular feature or function of its Platform, the Court should allow the jury to consider only that particular feature or function (specifying it to the jury for its consideration in the verdict form) and should enter judgment for Defendants with respect to ResMan's other misappropriation claims.  A list of features and functions for which those criteria cannot possibly be satisfied as a matter of law includes, without limitation, the following:

- A2: system should post rent to resident ledge every month;
- A7: ability to check availability of unit;
- A10-A12: ability to add, delete, and edit employment and other income;
- A16: ability to initiate move-out;
- A21: ability to view lease information of a resident;
- A23-A24: ability to attach and delete documents;
- A25-A26: ability to print forms and documents;
- A27-A28: ability to view documents;
- A36-A37: ability to edit and view personal information for a resident;
- A38-A40: ability to add, delete, and view a pet's information;
- A41: ability to view resident's outstanding dues;
- A64: ability to look up or search resident;
- B7-B8, B11: ability to accept, decline, or cancel an application;
- B9 and B18: ability to approve or submit an application form;
- B12: ability to capture an applicant move in date;
- B28: ability to sign lease contract;
- B33: ability to print;
- C8: ability to publish reports in different formats (PDF, Excel, Word);
- F5 and F8: ability to accept, make changes to, or reject purchase order;
- H4: ability to view bills.

ResMan's expert admitted that these features are common to comprehensive property management platforms.  There is no evidence that any of them is a secret, nor is there any legally sufficient evidence that their "implementation" in the ResMan Platform is somehow distinctive or qualifies as a trade secret.  Therefore, ResMan's attempt to prove trade secret status for the entire ResMan Platform fails as a matter of law.  *See*, *e.g.*, *Sit-Up Ltd. v. IAC/InterActive Corp.*, No. 05-9292, 2008 WL 463884, at *8 (S.D.N.Y. Feb. 20, 2008) (holding software features that "are almost comic in their obviousness" are not trade secrets).  For these reasons, ResMan's

claim should be restricted to specific features that meet the statutory test for trade secret status; there is no evidence its entire Platform is a trade secret.

### B.    No evidence of misappropriation.

A person misappropriates a trade secret when any of the following occurs:

1.   The person acquires the trade secret and knows or has reason to know the trade secret was acquired through improper means;

2.   The person uses or discloses the trade secret without the owner's express or implied permission when—

    a.   The person acquired knowledge of the trade secret through improper means; or

    b.   At the time the person uses or discloses the trade secret, the person knows or has reason to know that the person's knowledge of the trade secret was:

        i.   Derived from or through a person who used improper means to acquire the trade secret;

        ii.   Acquired under circumstances giving rise to a duty to maintain the secrecy of or limit the use of the trade secret; or

        iii.   Derived from or through a person who owed a duty to the person seeking relief to maintain the secrecy of or limit the use of the trade secret.

*See* Tex. Civ. Prac. & Rem. Code § 134A.002(3)(A); 18 U.S.C. § 1839(5)(A); *Thoroughbred Ventures, LLC v. Disman*, 4:18-CV-00318, 2018 WL 3752852, at *5 (E.D. Tex. Aug. 8, 2018) (Mazzant, J.).

ResMan has the burden to prove misappropriation with respect to each alleged trade secret; evidence that one trade secret was misappropriated does not constitute evidence of misappropriate of another trade secret.  The evidence at trial has related to only two process flows—and even that evidence is insufficient.

Under these statutory standards, there is no evidence that any of ResMan's alleged trade secrets was misappropriated—and there is certainly not evidence that satisfies every disjunctive

statutory definition of misappropriation.  At a minimum, the Court should enter judgment against ResMan's claims under those parts of the statutory test that lack any support in the evidence. And at most, ResMan's claim should be limited to the two process flows identified by its expert at trial.

In addition, "improper means" includes misrepresentation and breach or inducement of a breach of a duty to maintain secrecy, to limit use, or to prohibit discovery of a trade secret.  Tex. Civ. Prac. & Rem. Code § 134A.002(2); 18 U.S.C. § 1839(6).  There is no evidence of any such conduct in this case.

Likewise, "proper means" includes discovery of the trade secret by independent development or any other means that is not improper.  Tex. Civ. Prac. & Rem. Code § 134A.002(4).  The evidence conclusively proves that Defendants independently developed most, if not all, of the features at issue in this case.  Thus, as a matter of law, Defendants did not misappropriate those features.

"Use" of a trade secret means commercial use by which the offending party seeks to profit from the use of the secret.  *Sw. Energy Prod. Co. v. Berry-Helfand*, 491 S.W.3d 699, 722 (Tex. 2016).  There is no evidence that Defendants made any commercial use of the alleged trade secrets, and the evidence introduced at trial conclusively proves the opposite.

Likewise, it is undisputed on this record that Karya did not acquire the alleged trade secrets "by" or "through" improper means, but through a contract.  Violation of a contractual obligation after lawful acquisition of trade secrets is not misappropriation as a matter of law. Thus, judgment as a matter of law should be entered on each of ResMan's theories based on improper acquisition by Karya (namely, parts 1, 2(a), and 2(b)(1) above).

### C. No evidence of causation.

There is no evidence that Defendants' conduct caused ResMan any damages.  Under any statutory remedy, ResMan may recover only for the damages caused by misappropriation.  Tex. Civ. Prac. & Rem. Code § 134A.004(a) (using the phrase "damages caused by misappropriation" with respect to all three methods of measuring damages); *see also* 18 U.S.C. § 1836(b)(3)(B) (same); *Lakeway Reg'l Med. Ctr., LLC v. Lake Travis Transitional LTCH, LLC*, No. 03-15-00025-CV, 2017 WL 672451, at *14 (Tex. App.—Austin Feb. 17, 2017, pet. denied) ("Without that causal link, [claimants] cannot succeed on a claim for misappropriation of trade secrets"); *StoneCoat*, 426 F. Supp.3d at 347.  Therefore, ResMan had to prove a causal link between the misappropriation and its damages.

Again, ResMan has the burden to prove causation with respect to each alleged trade secret; evidence that misappropriation of one trade secret caused damages does not constitute evidence that misappropriation of another trade secret likewise caused damages.

Under these requirements, there is no evidence that any misappropriation of ResMan's alleged trade secrets by Defendants has caused ResMan any damages.  As explained above, Karya has not sold, licensed, or internally made use of the Arya Platform, so any alleged misappropriation has not caused it any damages.

Finally, it is undisputed that ResMan updates its software program weekly—which means that any information obtained by Defendants regarding that program quickly became obsolete. There is no evidence that Defendants' access to details of the ResMan Platform that were already obsolete caused ResMan any harm.

### D. No evidence of damages, disgorgement, or royalty.

There is no evidence of any damages, any benefit subject to disgorgement, or any basis for a reasonable royalty.

Again, ResMan has the burden to prove damages, a basis for disgorgement, or a basis for a reasonable royalty with respect to each alleged trade secret; evidence that might support a remedy with respect to one trade secret is not evidence that the remedy is appropriate with respect to another trade secret.

First, there is no evidence that ResMan suffered any actual damage or loss with respect to any alleged trade secret.  In particular, there is no evidence to prove lost profits, for the reasons discussed above—and ResMan has failed to allege, must less provide evidence of, any other form of damages.  *See* § I.D.1.

Second, there is no evidence that either Defendant received any benefit that would be a proper basis for disgorgement or restitution with respect to any alleged trade secret.  In particular, there is no evidence that Expedien received any benefit from ResMan that could be subject to disgorgement or restitution.  *See* § II.D.  Likewise, because the evidence conclusively proves that Karya did not use the ResMan Platform to build Arya, the evidence is legally insufficient to prove that Karya received any benefit that could be subject to disgorgement or restitution.

Third, there is no evidence to support a reasonable royalty with respect to any alleged trade secret.  Defendants understand that ResMan has abandoned any claim for a royalty, and in any event, there is no evidence to support such a claim.  A "reasonable royalty" is defined as the amount the parties would have agreed to as a fair price for licensing the Defendants to put the trade secret to the use the Defendant intended at the time the misappropriation took place.  *Univ. Computing Co. v. Lykes-Youngstown Corp.*, 504 F.2d 518, 539 (5th Cir. 1974).  ResMan has the burden to prove what the value of the misappropriated secret would be to a party who believed it could utilize the secret to its advantage, provided the party does in fact put the idea to

26

commercial use.  *Id*. at 536, 539; *StoneCoat*, 426 F. Supp.3d at 348 (quoting *Sw. Energy Prod*.,

491 S.W.3d at 711).  This evidence cannot be speculative.  *Id*. at 349.

Factors that may influence what the parties would have agreed to pay as a reasonable

royalty include the following:

1.  The resulting and foreseeable changes in the parties' competitive posture;

2.  Prices past purchasers or licensees may have paid;

3.  The total value of the trade secret to ResMan, including ResMan's development costs
    and the importance of the trade secret to ResMan's business;

4.  The nature and extent of the use the Defendants intended for the trade secret; and

5.  Whatever other unique factors in the particular case that might have affected the
    parties' agreement, such as the ready availability of alternative processes.

*Univ. Computing Co.*, 504 F.2d at 539.  There is no evidence of any of the factors and no

evidence to support a reasonable royalty for any alleged trade secret.

The jury must have sufficient evidence to determine the value a reasonably prudent

investor would pay for the trade secret. *StoneCoat*, 426 F. Supp. 3d at 349.  The plaintiff cannot

recover "without offering evidence to show the actual profit made by [the] defendant."  *Id.* at 351

(quoting *MGE UPS Sys., Inc. v. GE Consumer & Indus., Inc.*, 622 F.3d 361, 369 (5th Cir.

2010)).  The plaintiff must also provide a "means of distinguishing revenue the defendant gained

from other sources from revenue gained through misappropriation of [plaintiff's] trade secrets"

as well as "a calculation of profits from the relevant portion of revenue."  *Id.* (quoting same)

(brackets omitted).  There is no evidence to meet these tests.

In particular, ResMan has "not presented evidence that provides any means of

distinguishing revenue [Defendants] gained from other sources from revenue gained through [the

alleged] misappropriation of [the ResMan Platform], let alone a calculation of profits from the

relevant portion of revenue." *Id.* at 352.  Indeed, as discussed above, there is no evidence Karya

27

has received *any* revenue from the alleged misappropriation.   This is a legal barrier to any royalty remedy.

To recover royalty damages, a plaintiff must also establish "a causal link between the improper use of trade secrets and the plaintiff's damages." *Lakeway Reg'l Med. Ctr., LLC v. Lake Travis Transitional LTCH, LLC*, 03-15-00025-CV, 2017 WL 672451, at *14 (Tex. App.— Austin Feb. 17, 2017, pet. denied).   Here, there is no legally sufficient evidence that the alleged misappropriation has caused ResMan damages.   Accordingly, it cannot recover royalty damages.

Finally, it is undisputed that ResMan updates its software program weekly—which means that any information obtained by Defendants regarding that program quickly became obsolete. There is no evidence of a reasonable royalty that would be paid for access to details of the ResMan Platform that were already obsolete.

### E.   No evidence of willful and malicious misappropriation for purposes of exemplary damages.

There is no evidence of willful and malicious misappropriation for purposes of awarding exemplary damages.

"Willful and malicious misappropriation" means intentional misappropriation resulting from the conscious disregard of the rights of the owner of the trade secret.   Tex. Civ. Prac. & Rem. Code §§ 134A.002(7), 004.   There is no such evidence here—certainly not any "clear and convincing evidence" as required to support exemplary damages under TUTSA.

## IV.   Injunctive Relief.

To secure a permanent injunction, ResMan must meet the four requirements for injunctive relief:

    (1)      success on the merits;

    (2)      the failure to grant the injunction will result in irreparable injury;

(3)      the injury outweighs any damage that the injunction will cause the opposing party; and

(4)      the injunction will not disserve the public interest.

*United Motorcoach Ass'n, Inc. v. City of Austin*, 851 F.3d 489, 493 (5th Cir. 2017).

Any injunction must "state its terms specifically" and must "describe in reasonable detail—and not by referring to the complaint or other document—the act or acts restrained or required."  Fed. R. Civ. P. 65(d)(1)(B)-(C).  This requires every injunction to be narrowly tailored to the precise act warranting an injunction.  *See O'Donnell v. Harris County*, 892 F.3d 147, 163 (5th Cir. 2018)*; OCA-Greater Houston v. Texas*, 867 F.3d 604, 616 (5th Cir. 2017).

Because the scope of any injunction must be narrowly tailored to redress the irreparable harm that results from any contractual violation or theft of trade secrets, ResMan's failure to prove harms attributed to particular breaches of the MSA or particular trade secrets that have been misappropriated precludes an injunction.  Additionally, ResMan cannot satisfy the requirements for injunctive relief.

First, for the reasons explained, ResMan cannot succeed on the merits of any of its claims.  To the extent ResMan succeeds on any claim(s), injunctive relief must be narrowly tailored to that successful claim.

Second, there is no evidence that ResMan has suffered an irreparable injury.  There is no evidence that remedies available at law, such as monetary damages, would be inadequate to compensate for such an injury.

Third, considering the balance of hardships based on the evidence at trial, equitable relief is not warranted.

Fourth, based on the evidence at trial, the public interest would be disserved by a permanent injunction.

## CONCLUSION

Judgment as a matter of law should be granted.

Dated: March 17, 2021                      Respectfully submitted,

*/s/ Michael Richardson*

    Michael Richardson – Lead Attorney
    State Bar No. 24002838
    mrichardson@hmglawfirm.com
HILLIARD MARTINEZ GONZALES LLP
719 S. Shoreline Blvd.
Corpus Christi, Texas 78401
Telephone: (361) 882-1612
Facsimile:  (361) 882-3015

    Seepan V. Parseghian
    State Bar No. 24099767
    sparseghian@beckredden.com
BECK REDDEN LLP
1221 McKinney St., Suite 4500
Houston, Texas 77010-2010
Telephone No. (713) 951–3700
Facsimile No. (713) 951–3720

    Richard A. Sayles
    State Bar No. 17697500
    dsayles@bradley.com
    Mark D. Strachan
    State Bar. No. 19351500
    mstrachan@bradley.com
BRADLEY ARANT BOULT CUMMINGS LLP
4400 Renaissance Tower
1201 Elm Street
Dallas, Texas 75270
Telephone No. (214) 939-8700
Facsimile No. (214) 939-8787
**ATTORNEYS FOR DEFENDANTS KARYA PROPERTY MANAGEMENT, LLC AND SCARLET INFOTECH, INC.**

**CERTIFICATE OF SERVICE**

The undersigned certifies that a true and correct copy of the foregoing document has been served upon all counsel of record via electronic mail on March 17, 2021.

*/s/ Michael E. Richardson*
Michael E. Richardson