# United States District Court

**EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | | |
|---|---|---|
| RESMAN, LLC, | § | |
| *Plaintiff*, | § | |
| | § | |
| | § | CIVIL ACTION NO. 4:19-CV-00402 |
| v. | § | Judge Mazzant |
| | § | |
| KARYA PROPERTY MANAGEMENT, | § | |
| LLC, and SCARLET INFOTECH, INC. | § | |
| D/B/A EXPEDIEN, INC. | § | |
| *Defendants*. | § | |

## <u>FINAL INSTRUCTIONS TO THE JURY</u>

MEMBERS OF THE JURY:

It is my duty and responsibility to instruct you on the law you are to apply in this case. The law contained in these instructions is the only law you may follow. It is your duty to follow what I instruct you the law is, regardless of any opinion that you might have as to what the law ought to be.

If I have given you the impression during the trial that I favor any party, you must disregard that impression. If I have given you the impression during the trial that I have an opinion about the facts of this case, you must disregard that impression. You are the sole judges of the facts of this case. Other than my instructions to you on the law, you should disregard anything I may have said or done during the trial in arriving at your verdict.

You should consider all of the instructions about the law as a whole and regard each instruction in light of the others, without isolating a particular statement or paragraph.

The testimony of the witnesses and other exhibits introduced by the parties constitute the evidence.  The statements of counsel are not evidence; they are only arguments.  It is important for you to distinguish between the arguments of counsel and the evidence on which those arguments rest.  What the lawyers say or do is not evidence.  You may, however, consider their arguments in light of the evidence that has been admitted and determine whether the evidence admitted in this trial supports the arguments.  You must determine the facts from all the testimony that you have heard and the other evidence submitted.  You are the judges of the facts, but in finding those facts, you must apply the law as I instruct you.

You are required by law to decide the case in a fair, impartial, and unbiased manner, based entirely on the law and on the evidence presented to you in the courtroom.  You may not be influenced by passion, prejudice, or sympathy you might have for the Plaintiff or the Defendants in arriving at your verdict.

## EVIDENCE

The evidence you are to consider consists of the testimony of the witnesses, the documents, and other exhibits admitted into evidence, and any fair inferences and reasonable conclusions you can draw from the facts and circumstances that have been proven.

Generally speaking, there are two types of evidence.  One is direct evidence, such as testimony of an eyewitness.  The other is indirect or circumstantial evidence.  Circumstantial evidence is evidence that proves a fact from which you can logically conclude another fact exists.  As a general rule, the law makes no distinction between direct and circumstantial evidence, but simply requires that you find the facts from a preponderance of all the evidence, or by clear and convincing evidence, both direct and circumstantial.

## DEMONSTRATIVE EVIDENCE

Certain exhibits have been presented to you as demonstratives.  They are a party's depiction used to describe something involved in this trial.  If your recollection of the evidence differs from the exhibit, rely on your recollection.

## WITNESSES

You alone are to determine the questions of credibility or truthfulness of the witnesses.  In weighing the testimony of the witnesses, you may consider the witness's manner and demeanor on the witness stand, the witness's feelings or interest in the case, if any, or any prejudice or bias about the case, that the witness may have, and the consistency or inconsistency of the witness's testimony considered in the light of the circumstances.  Has the witness been contradicted by other credible evidence?  Has the witness made statements at other times and places contrary to those made here on the witness stand?  You must give the testimony of each witness the credibility that you think it deserves.

Even though a witness may be a party to the action and therefore interested in its outcome, the testimony may be accepted if it is not contradicted by direct evidence or by any inference that may be drawn from the evidence, if you believe the testimony.

You are not to decide this case by counting the number of witnesses who have testified on the opposing sides.  Witness testimony is weighed; witnesses are not counted.  The test is not the relative number of witnesses, but the relative convincing force of the evidence.  The testimony of a witness is sufficient to prove a fact, even if a greater number of witnesses testified to the contrary, if after considering all of the other evidence, you believe that witness.

## EXPERT WITNESSES

When knowledge of technical subject matter may be helpful to the jury, a person who has special training or experience in that technical field is permitted to state his or her opinion on those technical matters. During trial, you heard testimony from the following individuals who expressed expert opinions:

1. Dr. Steven R. Kursh

2. Dr. Michael Brogioli

You are not required to accept the opinions of these experts.  As with any other witness, it is up to you to decide whether to rely on any expert.

## IMPEACHMENT BY WITNESS'S INCONSISTENT STATEMENTS

In determining the weight to give to the testimony of a witness, consider whether there was evidence that at some other time the witness said or did something, or failed to say or do something, that was different from the testimony given at the trial.

A simple mistake by a witness does not necessarily mean that the witness did not tell the truth as he or she remembers it.  People may forget some things or remember other things inaccurately.  If a witness made a misstatement, consider whether that misstatement was an intentional falsehood or simply an innocent mistake.  The significance of that may depend on whether it has to do with an important fact or with only an unimportant detail.

## DEPOSITION TESTIMONY

Certain testimony has been presented to you through a deposition. A deposition is the sworn, recorded answers to questions a witness was asked in advance of the trial. Under some circumstances, if a witness cannot be present to testify from the witness stand, that witness's testimony may be presented, under oath, in the form of a deposition. Sometime before this trial,

attorneys representing the parties in this case questioned this witness under oath. A court reporter was present and recorded the testimony. The questions and answers have been shown to you during the trial.  This deposition testimony is entitled to the same consideration and is to be judged by you as to credibility and weighed and otherwise considered by you in the same way as if the witness had been present and had testified from the witness stand in court.

## INSTRUCTION REGARDING JUROR QUESTIONS

As I told you in my preliminary instructions, I have given you the opportunity to give me written questions anonymously after a witness testified when you had an important question of the witness that was strictly limited to the substance of the witness's testimony.  Remember that I asked you not to be offended if I did not present your question to be answered by the witness.  You should not speculate on the answer to any unasked question and you should not speculate on or consider any facts or events outside the testimony and exhibits you have heard and seen in this courtroom.

## LIMITING INSTRUCTIONS

When testimony or an exhibit is admitted for a limited purpose, you may consider that testimony or exhibit only for the specific limited purpose for which it was admitted.

## STIPULATIONS OF FACTS

A "stipulation" is an agreement. When there is no dispute about certain facts, the attorneys may agree or "stipulate" to those facts. You must accept a stipulated fact as evidence and treat that fact as having been proven here in court. Here the parties have stipulated to the following:

1. ResMan is a limited liability company with its principal place of business at 2901 Dallas Pkwy, Suite 200, Plano, Texas 75093

2. The ResMan Platform is a cloud-based SaaS platform hosted on Microsoft Azure servers and is used on properties in multiple states in the United States.

3. ResMan has been developing the ResMan Platform since 2008.

4. Since the first launch of the cloud-based version of the ResMan Platform in late 2012/early 2013, the ResMan Platform continues to be updated.

5. The ResMan Platform includes:

   a. At least 1,000 distinct URLs/screens;

   b. Core modules including: Leasing (which includes Prospects and Lead Management, Applicant, and Resident), Maintenance, Accounting (which includes Accounts Receivable, Accounts Payable, and Cash Management), Property Configuration, Administration, Reporting, and Tools (the "ResMan Platform Modules");

   c. Reporting capabilities which allow users the ability to generate over 200 reports; and

   d. A Knowledge Base, containing instructional information about how to use various features and functions in the ResMan Platform.

6. Karya is a Texas limited liability company with its principal place of business at 8901 Gaylord Drive, Suite 100, Houston, Texas 77024.

7. Karya has always—up to and including the present—managed its properties using property management software systems licensed from a property management software provider—specifically, ResMan, Entrata, Inc. ("Entrata"), RealPage, Inc. ("RealPage"), and/or AppFolio, Inc. ("AppFolio").

8. On July 18, 2017, Karya executed its first order form and became a ResMan customer. Karya then executed thirteen additional order forms between August 16, 2017 and February 4, 2019.  Karya's Chief Technology Officer Jeffrey Gomez was authorized to sign and did sign each of the fourteen ResMan order forms on behalf of Karya.

9. Expedien is a corporation with its principal place of business at 13710 Creek Lane, Houston, Texas 77077.  Expedien also maintains offices in Gurgaon, India.

10. In late 2017, Karya and Expedien initiated discussions about designing and developing a property management software system for Karya, which Defendants later named Arya.

11. The ResMan Platform cannot be accessed without a user ID and password.

12. Upon executing their first order form, ResMan customers, including Karya, are provided a user ID and password to access the ResMan Platform.

13. Once a customer, such as Karya, executes its first order form, that customer has the ability to create its own user IDs and passwords for accessing the ResMan Platform.

14. When customers log into the ResMan Platform, they access the cloud-based portions of the Platform, the servers upon which the Platform is hosted, and the network upon which the Platform runs.

15. In November 2017, Karya gave Expedien a user ID ("jagarwal") and password to access the ResMan Platform.

16. On January 8, 2018, Karya and its affiliated companies and Expedien executed a Master Services Agreement ("Karya-Expedien Master Services Agreement") to govern the design and development of Arya, effective as of December 19, 2017.

17. Swapnil Agarwal was authorized to sign and did sign the Karya-Expedien Master Services Agreement on behalf of Karya and its affiliated companies.  Jiten Agarwal was authorized

to sign and did sign the Karya-Expedien Master Services Agreement on behalf of Expedien.

18. Karya and Expedien executed their first Statement of Work under the Karya-Expedien Master Services Agreement on January 10, 2018.

19. On March 1, 2018, Karya gave Expedien a second user ID ("eteam") and password to access the ResMan Platform.

20. On March 5, 2018, Karya gave Expedien a third user ID ("nvarshney") and password to the ResMan Platform.

21. Karya's Chief Technology Officer Jeffrey Gomez distributed and directed the distribution of these additional user IDs and passwords to Expedien's Nishant Varshney.

22. Karya also provided access to the ResMan Platform to Expedien's independent contractor John Greene around March 2018.

23. Karya also provided access to the ResMan Platform to Expedien's independent contractor Malik Merchant around July 31, 2018.

24. Karya's CEO, Swapnil Agarwal, publicly announced that Karya was building the Arya software at the Multifamily Leadership Summit in Scottsdale, Arizona in November 2018. In attendance was ResMan's President, Elizabeth Francisco.

25. In December 2018, Karya publicly marketed the fact that it was working on Arya in a video posted to Karya's Facebook and LinkedIn pages.

**BURDEN OF PROOF**

There are two standards of proof that you will apply to the evidence, depending on the issue you are deciding.  On most issues, you must decide whether certain facts have been proven by a preponderance of the evidence.  A preponderance of the evidence means that the fact that is

to be proven is more likely true than not.  Let me give you an example.  Take the evidence and imagine that it is equally balanced on a scale, so that both sides of the scale are even.  Now take a feather and add it to one side of the scale, so that the scale tips ever so slightly in that direction. That is a preponderance of the evidence.

On other issues, you must use a higher standard and decide whether the fact has been proven by clear and convincing evidence, i.e. that you have been left with a clear conviction that the fact has been proven.  Proving a claim or defense by clear and convincing evidence, stated another way, means that is it highly probable that the facts are as the party contends.

These standards are different from what you may have heard about in criminal cases proceedings where a fact must be proven beyond a reasonable doubt.  On a scale of these various standards of proof, as you move from preponderance of the evidence, where the proof need only be sufficient to tip the scale in favor of the party proving the fact, to beyond a reasonable doubt, where the fact must be proven to a very high degree of certainty, you may think of clear and convincing evidence as being between the two standards.

## COMPENSATORY DAMAGES

Some of the instructions and questions on the verdict form ask you to decide the amount of damages, if any, that Defendants should be required to pay to ResMan.

You should not interpret the fact that I am giving instructions about ResMan's damages as an indication in any way that I believe that ResMan should or should not win this case. It is your task first to decide whether Defendants are liable. I am instructing you on damages only so that you will have guidance in the event you decide that Defendants are liable and that ResMan is entitled to recover money from Defendants. If you decide that a Defendant is liable to ResMan on any cause of action, then you must determine as to that cause of action an amount that is fair

compensation for all of ResMan's damages. These damages are called compensatory damages. The purpose of compensatory damages is to make ResMan whole—that is, to compensate ResMan for the damage it has suffered.

You may award compensatory damages only for injuries that ResMan proves were proximately caused by a Defendant's allegedly wrongful conduct. The damages that you award must be fair compensation for all of ResMan's damages, no more and no less. Compensatory damages are not allowed as a punishment and cannot be imposed or increased to penalize a Defendant. You should not award compensatory damages for speculative injuries, but only for those injuries that ResMan has actually suffered or that ResMan is reasonably likely to suffer in the future. If you decide to award compensatory damages, you should be guided by dispassionate common sense. Computing damages may be difficult, but you must not let that difficulty lead you to engage in arbitrary guesswork. On the other hand, the law does not require that ResMan prove the amount of its losses with mathematical precision, but only with as much definiteness and accuracy as the circumstances permit.

In answering questions about damages, answer each question separately. Do not increase or reduce the amount in one answer because of your answer to any other question about damages. Do not speculate about what a party's ultimate recovery may or may not be. ResMan's overall recovery, if any, will be determined by the court when it applies the law to your answers at the time of judgment.

**PRELIMINARY INJUNCTION**

You have heard evidence that I issued a preliminary injunction early in this lawsuit.  A preliminary injunction is a temporary remedy issued while the litigation is ongoing to maintain the status quo.

You are to decide the issues based on the evidence you have seen during the trial.  The fact that I granted a preliminary injunction should not affect your decision as to who should prevail on the issues presented to you in this case.

The preliminary injunction prohibits Defendants from selling or otherwise using Arya commercially while this case is pending.  After you render your verdict, I may or may not decide to make the injunction permanent.  You will not be asked whether a permanent injunction should be issued.  In answering the questions on the verdict form, do not speculate about what I may decide. Do not speculate on the effect any injunction may have on the issues you are being asked to decide.  Do not consider the effect of a permanent injunction on the amount of damages, if any, you decide to award.  I will determine ResMan's remedies, if any, when I apply the law to your answers after trial.

## PUNITIVE OR EXEMPLARY DAMAGES

For some causes of action, if you decide that either or both Defendants are liable to ResMan, you will be asked whether additional damages should be assessed against either Defendant. These damages are called "exemplary" or "punitive" damages.

You are not required to award punitive damages. If you do decide to award punitive damages, you must use sound reason in setting the amount. Your award of punitive damages must not reflect bias, prejudice, or sympathy toward any party. It should be presumed that ResMan has been made whole by compensatory damages, so punitive damages should be awarded only if a Defendant's misconduct is so reprehensible as to warrant the imposition of further sanctions to achieve punishment or deterrence.

## RESMAN'S CLAIMS AGAINST DEFENDANTS

ResMan has asserted three claims or causes of action against Defendants.  The causes of action are: (1) that Defendant Karya breached its contractual obligations to ResMan; (2) that Defendant Expedien tortiously interfered with the contractual relationship between ResMan and Karya; and (3) that both Defendants misappropriated ResMan's trade secrets in violation of Texas and federal law. You will be asked to decide whether Defendants are liable to ResMan on each of these causes of action, and, if so, the amount of damages ResMan should be awarded.

I will explain each cause of action separately.

## I.     Breach of Contract

ResMan has the burden of proving by a preponderance of the evidence that Karya breached the Master Subscription Agreement or "MSA" between ResMan and Karya.

### A.     Breach of Contract Elements

A contract is a legally binding agreement between two or more parties. Each party to the contract must perform according to the agreement's terms. A party's failure to perform a contractual duty constitutes a breach of contract. If a party breaches a contract and that breach causes injury or loss to another party, then the injured party may claim damages.

To establish breach of contract, ResMan must prove by a preponderance of the evidence that:

1.  A valid, enforceable contract existed between ResMan and Karya;

2.  ResMan performed, tendered performance, or was excused from performing its contractual obligations;

3.  Karya breached the contract; and

4.  Karya's breach caused damages to ResMan.

12

### B.       Compensatory Damages for Breach of Contract: Lost Profits

If you decide that ResMan has proved its claim against Karya for breach of the MSA, you must also decide how much money, if any, would reasonably compensate ResMan for the harm caused by the breach.

For Karya's failure to comply with the terms of the MSA, ResMan claims damages in the form of lost profits. "Lost profits" are the unpaid amount Karya would have paid ResMan under the MSA less the expenses ResMan saved by not continuing with the MSA.

ResMan must prove by a preponderance of the evidence the amount of profits it would have made had there been no breach of contract.  Lost profits need not be proven by a precise calculation, but must be proven by reasonable certainty and supported by objective facts, figures, or data.  Lost profits are not recoverable if they are dependent upon uncertain or changing market conditions, chancy business opportunities, promotion of untested products or entry into unknown or unviable markets, or on the success of a new and unproven enterprise.

In assessing lost profits, you should look to what the parties would have done in the absence of breach, not what the parties actually did in this case, to ensure that the parties to the contract secure the benefits of the bargain they made.

## II.      Tortious Interference with Contract

### A.       Elements of Tortious Interference with Contract

To prove tortious interference with contract, ResMan must prove by a preponderance of the evidence:

1. The existence of a contract subject to interference;

2. An act of interference by Expedien that was willful and intentional;

3. Expedien's act was a proximate cause of ResMan's damage; and

4.   Actual damage or loss occurred.

"Interference" occurred if you find that Expedien knowingly induced Karya to breach the MSA or that Expedien knowingly caused the MSA to be more difficult to fulfill or of less or no value.  Merely entering into a contract or relationship with Karya or being a willing participant in the conduct in question is not tortious interference.

For interference to be intentional, the interfering party must have actual knowledge of the contract in question or knowledge of facts and circumstances that would lead a reasonable person to believe in the existence of the contract.  To find intentional interference, you must find that Expedien had the intent to interfere and not just to do the particular acts done.  It is not necessary that Expedien had an intent to injure ResMan, ResMan must prove that Expedien desired to interfere with the contract or acted with the belief that interference is substantially certain to result.

"Proximate cause" means a cause that was a substantial factor in bringing about an event, and without which cause such event would not have occurred. In order to be a proximate cause, the act or omission complained of must be such that a person using the degree of care required of him would have seen that the event, or some similar event, might reasonably result therefrom. There may be more than one proximate cause of an event.

### B.      Compensatory Damages for Tortious Interference with Contract

If you decide that ResMan has proved its claim against Expedien for tortious interference with contract, you must also decide how much money, if any, would reasonably compensate ResMan for the harm caused by the interference.

### i.   Lost Profits

For Expedien's tortious interference with contract, ResMan claims damages in the form of lost profits. "Lost profits" are the unpaid amount Karya would have paid ResMan under the MSA less the expenses ResMan saved by not continuing with the MSA.

ResMan must prove by a preponderance of the evidence the amount of profits it would have made had there been no breach of contract.  Lost profits need not be proven by a precise calculation, but must be proven by reasonable certainty and supported by objective facts, figures, or data. Lost profits are not recoverable if they are dependent upon uncertain or changing market conditions, chancy business opportunities, promotion of untested products or entry into unknown or unviable markets, or on the success of a new and unproven enterprise.

In assessing lost profits, you should look to what the parties would have done in the absence of breach, not what the parties actually did in this case.

### ii.   Unjust Enrichment

The law does not allow a person to profit by wrongdoing at the expense of another.  "Unjust enrichment" is an equitable principle holding that one who receives benefits unjustly should make restitution for those benefits.  A party may be liable under a theory of unjust enrichment when it receives a benefit from another by means of an undue advantage.  You may also hear this remedy referred to as "disgorgement."  "Disgorgement" is the act of giving up something that was unjustly obtained.  If you find that Expedien benefitted from its interference with the MSA, then you may award the monetary value that you attribute to those benefits as the measure of ResMan's damages. It may include any money that Expedien made by interfering with the MSA.

The "unjust enrichment" subject to disgorgement is not the whole of the gain realized by Expedien but only the amount of the gain that is attributable to Expedien's interference.  When a

benefit or advantage has been realized in part as a result of misconduct and in part as a result of legitimate business activities, you may award as disgorgement only that portion of the gain that is attributable to the misconduct.  If Expedien would have realized the gain in any event, or if the gain was the result of alternative causes, it is not attributable to misconduct.

### C.       Exemplary Damages for Tortious Interference with Contract

You may also award ResMan exemplary damages for Expedien's interference with the contract. To award exemplary damages for this claim, you must find by clear and convincing evidence that the harm caused by Expedien's interference was the result of malice or gross negligence.

"Clear and convincing evidence" means the measure or degree of proof that produces a firm belief or conviction of the truth of the allegations sought to be established.

"Malice" means a specific intent by Expedien to cause substantial injury to ResMan.

"Gross negligence" means an act or omission by Expedien,

1. Which when viewed objectively from the standpoint of Expedien at the time of its occurrence involved an extreme degree of risk, considering the probability and magnitude of the potential harm to others; and

2. Of which Expedien had actual, subjective awareness of the risk involved, but nevertheless proceeded with conscious indifference to the rights, safety, or welfare of others.

"Exemplary damages" means an amount that you may in your discretion award as a penalty or by way of punishment.

Factors to consider in awarding exemplary damages, if any, are:

1. The nature of the wrong;

2. The character of the conduct involved;

3. The degree of culpability of the wrongdoer;

4. The situation and sensibilities of the parties concerned;

5. The extent to which such conduct offends a public sense of justice and propriety; and

6. The net worth of Defendant.

### III.   Misappropriation of Trade Secrets

#### A.   Elements of Trade Secret Misappropriation

To prove trade secret misappropriation, ResMan must prove the following by a preponderance of the evidence:

1. ResMan is the owner of one or more trade secrets;

2. Defendants misappropriated one or more such trade secrets; and

3. The misappropriation caused damages to ResMan

#### B.   Trade Secrets

A "trade secret" means all forms and types of information, including business, scientific, technical, economic, or engineering information, and any formula, design, prototype, pattern, plan, compilation, program device, program, code, device, method, technique, process, procedure, financial data, or list of actual or potential customers or suppliers, whether tangible or intangible and whether or how stored, compiled, or memorialized physically, electronically, graphically, photographically, or in writing if:

A. The owner of the trade secret has taken reasonable measures under the circumstances to keep the information secret; and

B.   The information derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information.

Although section (A) of this definition requires the trade secret owner to take reasonable precautions to maintain the secrecy of its trade secrets, secrecy need not be absolute.  Even where the holder of a trade secret voluntarily discloses the trade secret without the benefit of a confidentiality agreement, the requisite secrecy is retained if the disclosure occurs in a context that would not ordinarily occasion public exposure, and in a manner that does not carelessly exceed the imperatives of a beneficial transaction.  Limited disclosure of confidential information does not compromise the secrecy required for trade secret protection when the owner of the information discloses it to businesses with whom it was dealing or seeking to deal, rather than the public generally, and the disclosures were made to further the owner's economic interests.

In section (B) of this definition, the requirement that information is "not generally known" and "not readily ascertainable through proper means" does not mean information is a trade secret unless it is generally known to the public.  Information is readily ascertainable if it is available in trade journals, reference books, or published materials.  Information that is public knowledge or generally known in an industry cannot be a trade secret.  In addition, information that is generally known or readily available by independent investigation is not a trade secret

A trade secret can exist in a combination of characteristics and components each of which, by itself, is in the public domain, if the unified process, design or operation of those characteristics and components in unique combination affords a competitive advantage and is a protectable secret.  Secret modifications of a known process or device can be trade secrets, especially where they are

18

developed through hard work and expense, but a simple and obvious change in an existing device or process is not a trade secret.

The fact that a trade secret is of such a nature that it can be discovered by experimentation or other means does not deprive its owner of the right to protection from those who would acquire the trade secret by unfair means, but matters of general knowledge in an industry cannot be appropriated by anyone as a trade secret.  The ease with which competitors may lawfully acquire or duplicate a particular piece of information is relevant to that information's status as a trade secret.

ResMan must identify the information it alleges to be trade secrets with a reasonable degree of precision and specificity that is particular enough to separate the trade secret from matters of general knowledge in the trade or of special knowledge of persons skilled in the trade.

### C.   Misappropriation

A person misappropriates a trade secret when any of the following occurs:

1.  The person acquires the trade secret and knows or has reason to know the trade secret was acquired through improper means; or

2.  The person uses or discloses the trade secret without the owner's express or implied permission when—

    a.  The person acquired knowledge of the trade secret through improper means; or

    b.  At the time the person uses or discloses the trade secret, the person knows or has reason to know that the person's knowledge of the trade secret was:

        i.  Derived from or through a person who used improper means to acquire the trade secret;

    ii. Acquired under circumstances giving rise to a duty to maintain the secrecy of or limit the use of the trade secret; or

    iii. Derived from or through a person who owed a duty to the person seeking relief to maintain the secrecy of or limit the use of the trade secret.

Improper means include misrepresentation, and breach or inducement of a breach of a duty to maintain secrecy, to limit use, or to prohibit discovery of a trade secret.

"Proper means" includes discovery of the trade secret by independent development or any other means that is not improper.

A duty to maintain secrecy may be imposed by a contract stating a duty of confidence.

"Use" of the trade secret means use by which the offending party seeks to profit from the use of the secret.  "Use" of a trade secret includes any exploitation of the trade secret that is likely to result in injury to the trade secret owner or enrichment to Defendants. "Use" includes relying on the trade secret to assist or accelerate research or development, marketing products that embody the trade secret, or soliciting customers through the use of information that is a trade secret. Although you may consider the degree of similarity between the two products as one factor in deciding whether misappropriation occurred, "use" does not require that the Defendants copied ResMan's information, only that Defendants used the information for their own purposes.

### D. Compensatory Damages for Misappropriation of Trade Secrets: Unjust Enrichment

If you find that Defendants misappropriated any of ResMan's trade secrets, you must then determine the damages, if any, caused by Defendants' misappropriation of that trade secret. ResMan seeks damages measured by Defendants' unjust enrichment, if any, caused by misappropriation.

ResMan must prove a causal link between the misappropriation and its damages.  Any monetary remedy must be limited to the period of time the information would have remained unavailable to Defendants in the absence of misappropriation.

The law does not allow a person to profit by wrongdoing at the expense of another.  "Unjust enrichment" is an equitable principle holding that one who receives benefits unjustly should make restitution for those benefits.  A party may be liable under a theory of unjust enrichment when it receives a benefit from another by means of an undue advantage.  You may also hear this remedy referred to as "disgorgement."  "Disgorgement" is the act of giving up something that was unjustly obtained.  If you find that Defendants benefitted from a trade secret belonging to ResMan, then you may award the monetary value that you attribute to those benefits as the measure of ResMan's damages.  It may include any money that Defendants made by using ResMan's trade secrets.  It may also include any costs that Defendants avoided by taking a "shortcut" using ResMan's information.

The "unjust enrichment" subject to disgorgement is not the whole of the gain realized by Defendants but only the amount of the gain that is attributable to misappropriation.  When a benefit or advantage has been realized in part as a result of misconduct and in part as a result of legitimate business activities, you may award as disgorgement only that portion of the gain that is attributable to the misconduct.  If the Defendants would have realized the gain in any event, or if the gain was the result of alternative causes, it is not attributable to misconduct.

### E.    Exemplary Damages—Misappropriation of Trade Secrets

ResMan seeks exemplary damages for Defendants' misappropriation of ResMan's trade secrets, if any. "Exemplary damages" means damages awarded as a penalty or by way of punishment.

To award exemplary damages against a Defendant, you must find willful and malicious misappropriation by a preponderance of the evidence.

"Willful and malicious misappropriation" means intentional misappropriation resulting from the conscious disregard of the rights of the owner of the trade secret.

Exemplary damages, if any, are assessed against each Defendant individually. In determining the amount of exemplary damages, if any, you may consider evidence relating to the following:

1. The nature of the wrong;

2. The character of the conduct involved;

3. The degree of culpability of the wrongdoer;

4. The situation and sensibilities of the parties concerned;

5. The extent to which such conduct offends a public sense of justice and propriety; and

6. The net worth of Defendants.

### DUTY TO DELIBERATE; NOTES

It is now your duty to deliberate and to consult with one another in an effort to reach a verdict. Each of you must decide the case for yourself, but only after an impartial consideration of the evidence with your fellow jurors. During your deliberations, do not hesitate to reexamine your own opinions and change your mind if you are convinced that you were wrong. But do not give up on your honest beliefs because the other jurors think differently, or just to finish the case.

Remember at all times, you are the judges of the facts. You have been allowed to take notes during this trial. Any notes that you took during this trial are only aids to memory. If your memory differs from your notes, you should rely on your memory and not on the notes. The notes

are not evidence.  If you did not take notes, rely on your independent recollection of the evidence and do not be unduly influenced by the notes of other jurors.  Notes are not entitled to greater weight than the recollection or impression of each juror about the testimony.

When you go into the jury room to deliberate, you may take with you a copy of this charge, the exhibits that I have admitted into evidence, and your notes. You must select a jury foreperson to guide you in your deliberations and to speak for you here in the courtroom.

Your verdict must be unanimous.  After you have reached a unanimous verdict, your jury foreperson must fill out the answers to the written questions on the verdict form and sign and date it.  After you have concluded your service and I have discharged the jury, you are not required to talk with anyone about the case.

If you need to communicate with me during your deliberations, the jury foreperson should write the inquiry and give it to the court security officer.  After consulting with the attorneys, I will respond either in writing or by meeting with you in the courtroom.  Keep in mind, however, that you must never disclose to anyone, not even to me, your numerical division on any question.

You may now proceed to the jury room to begin your deliberations.

**SIGNED this 18th day of March, 2021.**

AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE